**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FASTCASE, INC.<br>729 15th St NW Suite 500<br>Washington, DC 20005, United States<br><br>      Plaintiff,<br><br>v.<br><br>ALEXI TECHNOLOGIES INC.<br><br>      Defendant. | C.A. No. 25-4159<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Fastcase, Inc. ("Fastcase" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendant Alexi Technologies Inc. ("Alexi" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1.    Fastcase is a legal publishing and research technology company founded in 1999. It has spent decades building one of the industry's most comprehensive and innovative legal research databases. In 2023, Fastcase merged with vLex, LLC ("vLex") and became part of the vLex Group, which was acquired by Clio, Inc on November 10, 2025.

2.    Alexi is a legal tech company that began as a research institution. Formerly known as "Alexsei," Alexi was founded in 2017 and initially operated with a team of research attorneys who used a passage-retrieval AI system to help prepare legal memoranda for clients.

3.    In late 2021, the Parties entered into a Data License Agreement (the "Agreement") under which Fastcase granted Alexi limited access to Fastcase's proprietary and highly curated case law database. The license was expressly restricted to "internal research purposes"—*i.e.*,

research performed by Alexi's own staff lawyers in preparing client memoranda. Alexi agreed that it would not (a) use Fastcase data for any commercial purpose, (b) use the data to compete with Fastcase, or (c) publish or distribute Fastcase data in any form.

4.      Fastcase's database is the product of decades of work and millions of dollars in investment, resulting in one of the most sophisticated legal-research databases in the industry. That effort includes extensive text and metadata tagging, specialized structuring into HTML, and proprietary formatting and harmonization processes that require significant technical expertise and sustained investment. Fastcase entrusted Alexi with access to this highly valuable, unique proprietary compilation solely for the narrow internal research Purpose defined in the Parties' Agreement. The uniqueness and economic value of the Fastcase Data—and the trust Fastcase placed in Alexi when providing it—underscore the seriousness of Alexi's subsequent misuse.

5.      The Parties initially explored a deeper partnership. In 2022, Alexi sought to integrate its passage-retrieval AI system with Fastcase's database so Alexi customers could directly access Fastcase case law. That partnership never materialized. Instead, in 2023, Fastcase proceeded with its merger with vLex and expanded its own research offerings.

6.      Alexi began pivoting into direct competition. On information and belief, beginning in 2023 and accelerating thereafter, Alexi expanded its use of Fastcase data beyond the license's narrow internal-use limitations, using that data to build and scale its own legal research platform.

7.      Alexi ultimately removed the "internal research" component entirely and began publishing and distributing Fastcase-sourced case law directly to its users—in clear violation of the Agreement's core restrictions. Alexi also began holding itself out as a full-scale legal-research alternative to incumbent providers, including Fastcase.

8.    Alexi acted knowingly and deliberately. On information and belief, Alexi used Fastcase's proprietary database—acquired under a limited, internal-use license—to shortcut the massive investment required to build a comprehensive commercial legal-research platform. In doing so, Alexi used Fastcase's data for the very commercial and competitive purposes the Agreement expressly forbids.

9.    Alexi further misused Fastcase's intellectual property. To bolster its own credibility and suggest an affiliation that does not exist, Alexi has used Fastcase's trademark and service mark in promotional materials and product interfaces, implying that Fastcase data appears in Alexi's product with Fastcase's authorization.

10.    Alexi also misappropriated Fastcase's compilation trade secrets. By extracting the economic value of Fastcase's curated, structured, and technically harmonized legal-research database—work it could not replicate itself—Alexi has appropriated Fastcase's decades of investment while simultaneously damaging Fastcase's market position and goodwill.

11.    Fastcase brings this action to hold Alexi accountable for its contractual breaches, trademark infringement, and misappropriation of Fastcase's proprietary compilation, and to protect Fastcase's intellectual property and competitive position in the legal-research market.

## PARTIES, JURISDICTION, AND VENUE

12.    Plaintiff Fastcase, Inc. is a Delaware corporation with its principal place of business in Washington, D.C.

13.    Defendant Alexi Technologies Inc. is a Canadian corporation headquartered in Toronto, Ontario.

14.     This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the Parties are citizens of different countries and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     This Court also has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1121 because Fastcase asserts federal claims arising under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

16.     This Court has personal jurisdiction over Alexi. Alexi purposefully directed its conduct toward the United States and this District by, among other things: (a) entering into the Agreement with Fastcase, a company headquartered in Washington, D.C.; (b) repeatedly accessing Fastcase's servers located in the United States; (c) using Fastcase's trademark, name, and logo in commercial materials targeting U.S. consumers; and (d) causing direct injury to Fastcase in this District. Exercising jurisdiction over Alexi comports with due process and the District of Columbia's long-arm statute. *See* D.C. Code § 13-423(a); *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (D.C.'s long-arm statute "is 'given an expansive interpretation' that is 'coextensive with the due process clause.'" (quotation omitted)); *Wilson v. Wilson*, 785 A.2d 647, 650 (D.C. 2001) ("[E]ven a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here." (quotation omitted)).

17.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Fastcase's claims occurred here. Fastcase is headquartered in Washington D.C.; its performance under the Agreement occurred here; Fastcase manages the collection of its data in this District; and the economic and reputational injuries it has suffered have been felt here.

18.     Alternatively, venue is proper under 28 U.S.C. §§ 1391(b)(3) and (c)(3) because Alexi is a foreign entity subject to suit in any judicial district. *E.g.*, *Tower Labs., Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 325 (D.D.C. 2018).

19.     Further, the Agreement includes a District of Columbia choice-of-law provision, stating that it "shall be governed by and construed in accordance with the laws of the District of Columbia, without regard to its conflict of law rules." Agreement § 12.5, attached hereto as Ex. A. Although this provision does not control jurisdiction or venue, it underscores the Parties' expectation that disputes arising from the Agreement would be adjudicated in a court applying District of Columbia law.

## FACTUAL BACKGROUND

### *Fastcase and Alexi occupied different roles in the legal-technology space.*

20.     For more than two decades, Fastcase has been recognized as one of the legal industry's most innovative and respected research-technology companies. Fastcase built one of the largest online law libraries in the world and is widely regarded as a pioneer in delivering comprehensive primary-law content, advanced search capabilities, and cutting-edge legal-research tools to lawyers, law firms, corporate legal departments, and public-sector institutions across the United States.

21.     Fastcase has invested substantial resources in developing its proprietary research platform and comprehensive database of primary-law content and in building the strength, goodwill, and brand recognition associated with its legal research products and its "Fastcase" marks.

22.     Upon information and belief, Alexi—formerly known as "Alexsei"—was founded in 2017 as a research institution that specialized in producing legal research memoranda for clients.

Alexi was affiliated with the University of Toronto's Rotman School of Management Creative Destruction Lab through 2020.

23.    Upon information and belief, by 2019 Alexi began incorporating artificial intelligence ("AI") tools into its work. At that time, Alexi's AI served primarily as a *passage-retrieval* system—that is, a tool for identifying potentially relevant and up-to-date case law from across the web.

24.    Upon information and belief, Alexi's service relied heavily on human lawyers. Staff attorneys reviewed and finalized every memorandum before delivery, verified the passages assembled by Alexi's AI, conducted additional internal research as needed, and approved the final product provided to clients.

25.    Upon information and belief, any content drafted by Alexi's staff lawyers was then fed back into Alexi's database and AI system. This process allowed Alexi to promise—and regularly provide—24-hour turnaround on legal research memoranda.

26.    Upon information and belief, this business model remained in place in 2021. For example, in June 2021 Alexi described its service as providing legal memoranda using "artificial intelligence … supported by 6 full time lawyers conducting legal research."[1]

27.    Upon information and belief, Alexi's then-CEO Mark Doble confirmed in 2021 that Alexi's work product was not purely AI-generated but depended substantially on human labor. Doble explained that Alexi employed "six full-time lawyers" as "quality-assurance lawyers" who

---

[1] NickJrishwain, *Mark Doble CEO of Legal Research Memos Startup Alexsei, Inc. - Legal-TechLIVE - Episode 117*, YOUTUBE (June 8, 2021), https://www.youtube.com/watch?v=WoNAOpwamXw [https://perma.cc/2C7T-GWJQ] at 6:57.

reviewed and completed memoranda and acknowledged that in some cases "human lawyers come in and do everything," including performing "full human research."[2]

28.    Upon information and belief, Doble further stated that although Alexi sometimes "would lose money" on memoranda requiring extensive human work, the losses were strategic because "long-term, this content goes back into the AI" and improved Alexi's system when similar questions arose.[3] He also noted that Alexi supplemented its dataset with "synthetic data generation," confirming that Alexi's model was continually expanded and refined using human-generated legal analysis.[4]

29.    Upon information and belief, during this period Alexi sold legal memoranda for approximately $225 to $300 each, depending on volume, and its estimated cost of production was roughly $200 per memorandum.[5]

30.    Accordingly, when the Parties began working together in 2021, Alexi's service differed significantly from Fastcase's. Alexi offered a 24-hour custom-memorandum service using passage-retrieval technology and human lawyer review. Fastcase, by contrast, provided an online law library platform with primary and secondary sources, advanced search tools, and comprehensive research functionality for end users.

### Fastcase and Alexi enter a restricted license for "internal research."

31.    In October 2021, Doble approached Fastcase seeking a data-licensing arrangement that would give Alexi access to Fastcase's comprehensive primary-law database. Doble proposed

---

[2] *See id.* at 7:50.

[3] *See id.* at 6:40.

[4] *See id.* at 8:35.

[5] *See id.* at 12:45.

beginning with a small base fee that would scale as Alexi grew and even floated the possibility of equity or a revenue-share component.

32.     Fastcase expressed willingness to explore a relationship but made clear from the outset that any license would include strict limitations designed to protect Fastcase's data assets. Fastcase emphasized that "supporting the legal tech ecosystem is an important part of who we are," but that any licensing arrangement would be tightly scoped.

33.     From the first discussions, Fastcase unmistakably communicated that Alexi's use would be narrowly circumscribed. Fastcase explicitly stated: "License restrictions include bulk sale, [and] content cannot be made available through [a] traditional legal research product like Fastcase." Alexi was therefore on clear notice that it could not make Fastcase's data directly available to its customers or incorporate it into any commercial legal-research product. Doble responded that these restrictions "fit[] perfectly with what we're looking for."

34.     On December 6, 2021, the Parties executed the Agreement. *See* Ex. A.

35.     The Agreement identified Fastcase as a "legal publishing company that provides an advanced online legal research system for research over a comprehensive multi-million dollar federal and state database of primary law," and Alexi as "a research institution." *Id*. at 1. The Agreement's stated purpose was to "license to [Alexi] substantial portions of [Fastcase's] database of primary law for [Alexi's] legal memos." *Id*.

36.     The Agreement defined the licensed material as "Fastcase Data," *see id*. § 1.2, and granted Alexi a limited, non-exclusive, non-transferrable, non-assignable, royalty-free, perpetual license to that data solely for the Agreement's defined "Purpose." *Id*. § 1.7.

37.    The Agreement defined "Purpose" to mean "***internal research purposes***." *Id.* (emphasis added). It further stated: "In no event can the data be used for commercial purposes or for any purpose which is competitive with Fastcase." *Id.*

38.    Section 2.2 reinforced these restrictions: Alexi agreed it would not use the Fastcase Data "in a way which is inconsistent with the Purpose," and that it would not "sell, license, publish, copy, or otherwise distribute any part of the Fastcase Data." *Id.* § 2.2. These restrictions "survive the termination of [the] Agreement." *Id.* § 12.1.

39.    These limitations were fundamental to the Parties' deal. Fastcase's database is a uniquely curated, highly structured compilation of federal and state case law, judicial opinions, and statutory materials (the "Fastcase Compilation" or "Compilation"). Fastcase has invested millions of dollars over decades to build and maintain this proprietary resource, continuously ingesting, structuring, tagging, and harmonizing vase bodies of primary-law data into specialized HTML formats and metadata frameworks. This work requires substantial unique technical expertise, proprietary systems, and sustained editorial judgment.

40.    The resulting Fastcase Compilation derives independent economic value from its confidential structure, organization, and metadata, which are not generally known or readily ascertainable. Fastcase licenses access to this Compilation as part of its subscription offerings and entrusted Alexi with this multi-million-dollar proprietary asset only under a tightly restricted license and solely for the limited internal-research Purpose defined in the Agreement. Fastcase retained exclusive ownership of all Fastcase Data, and the Agreement's confidentiality, non-distribution, and non-commercial-use provisions were expressly designed to preserve the secrecy, integrity, and competitive significance of this highly curated Compilation.

41.     Fastcase also takes substantial measures to maintain the secrecy and confidentiality of the Fastcase Data. The Agreement was expressly structured to preserve that confidentiality and to prevent licensees from converting Fastcase's proprietary Compilation into competing commercial products.

42.     Consistent with this goal, Section 6 of the Agreement imposed stringent confidentiality obligations, requiring Alexi to hold all Fastcase Data and related information in strict confidence, prohibiting disclosure without Fastcase's written consent, mandating commercially reasonable data-security practices, and requiring immediate notice of any unauthorized access or misuse.

43.     These confidentiality terms, together with the narrowly defined Purpose and the express prohibitions on commercial, competitive, or distributive use, reflect Fastcase's ongoing efforts to safeguard the value, secrecy, and competitive significance of its Compilation. The Parties agreed that breach of these provisions would cause irreparable harm.

### *Fastcase and Alexi consider a partnership.*

44.     In August 2022, Doble contacted Fastcase to explore a broader collaboration between the Parties. Fastcase invited Doble to provide a formal proposal and partnership roadmap for its consideration.

45.     Over the following months, the Parties discussed several possible integrations. These included incorporating Alexi's memoranda as secondary content within the Fastcase platform, enabling Alexi memoranda to surface alongside Fastcase search results, and building an "Ask Alexi" API feature within Fastcase that would allow users to pose legal questions directly through the platform.

46.     Doble also proposed providing Fastcase with API endpoints for creating or retrieving Alexi memoranda and raised the possibility of Fastcase acquiring Alexi. Doble emphasized that "by combining forces with a major publisher—with their comprehensive access to primary law and wide distribution channels—together we have the potential to become the next big leader in the space."

47.     Although the Parties executed NDAs and exchanged company information in a data room, no partnership ultimately materialized. Instead, in mid-2023, Fastcase merged with vLex, a leading legal technology company, and became part of the vLex Group, a comprehensive research platform comparable to LexisNexis.

*48.*     Following the merger, Fastcase continued operating under the Fastcase name, and the Agreement with Alexi remained in full force and effect.

### *Alexi begins competing with Fastcase's core services.*

49.     After a broader partnership failed to materialize, Doble continued to promote the idea that combining Alexi's AI platform with "comprehensive access to primary law and wide distribution channels" would create "the next big leader" in legal research. With Fastcase declining to enter such a partnership, Alexi appears to have begun pursuing that vision unilaterally.

50.     As of late August 2023, Alexi's public-facing business model still resembled the model in place when the Agreement was executed. Alexi described its service as enabling "the production of comprehensive, high-quality research memos … [c]ombined with the expertise and oversight of our in-house team of research lawyers." [6] This matched Fastcase's understanding at

---

[6] Daniel Diamond, *How Lawyers View AI Legal Software in 2023*, Alexi, Aug. 1, 2023, https://www.alexi.com/blog/how-lawyers-view-ai-legal-software-in-2023 [https://perma.cc/B3TB-SEV5].

the time: Alexi's staff lawyers conducted internal research and relied on Alexi's internal AI to help produce legal memoranda—not to deliver primary law directly to end users.

51.    Beginning in 2024, however, Alexi's service offering began to change. Alexi appears to have shifted away from its lawyer-in-the-loop model and its limited passage-retrieval tools, and instead sought to position itself as a direct competitor to incumbent legal research platforms such as Fastcase—all while continuing to rely on Fastcase Data.

52.    In early 2024, a legal technology influencer reviewed Alexi's platform, noting a critical limitation: "If you're actively litigating, you're likely still going to need a legal research tool," including "the ability to search through individual cases and to [shepardize] those cases."[7]

53.    Doble publicly reposted and endorsed this review, writing: "*Alexi is increasingly a legitimate alternative to incumbent legal research providers*. Our relative weaknesses include access to additional content (primary & secondary) and primary law meta-data (e.g. shepardizing). *Both are easily solvable in the next 3-6 months*. … Software and intelligence is and will continue to be the ultimate differentiating factor, and *it's where Alexi has a very clear advantage*."[8]

54.    Through these statements, Doble positioned Alexi as a direct competitor to traditional legal research platforms, including Fastcase, and publicly articulated Alexi's intent to add features comparable to full-featured primary-law research tools within months.

55.    In June 2024, Alexi raised approximately $11 million USD in a Series A financing. On information and belief, Alexi used this influx of capital to transform its product into a platform

---

[7] Matt Margolis, LinkedIn (March 8, 2024), https://www.linkedin.com/feed/update/urn:li:activity:7171968813222064128/ [https://perma.cc/P67X-QF8W].

[8] Mark Doble, LinkedIn (March 10, 2024), https://www.linkedin.com/posts/mark-doble_alexi-is-increasingly-a-legitimate-alternative-activity-7172578286508736512-8laJ/ [https://perma.cc/F3WW-TEBX].

that competed directly with established research providers—including Fastcase and the vLex Group.

56.    Throughout this period, the Agreement remained unchanged. It had been negotiated when Alexi was a "research institution" relying on human "research lawyers," and Alexi never informed Fastcase that it was changing its service model or intending to enter the same market Fastcase occupied.

57.    On information and belief, despite the Agreement's strict prohibition on using Fastcase Data for any commercial or competitive purpose beyond internal research, Alexi began commercializing Fastcase Data: deploying it to train and power its own legal-research system, marketing that system as a competitor, and providing end users with direct access to Fastcase-sourced case law.

58.    For example, in an October 2024 public demonstration, Alexi's Director of Revenue presented an updated platform that no longer offered 24-hour lawyer-generated memoranda and no longer involved any human internal research. Instead, Alexi relied entirely on an AI chat interface that enabled end users to generate their own "bespoke" legal memoranda. The Director stated that Alexi's model was "trained on over 30 million pairs of questions and answers that are derived from caselaw,"[9] confirming that Alexi had used Fastcase Data not for internal research but to train and operate a commercial legal-research product.

59.    The demonstration also showed that Alexi's platform directly displayed Fastcase Data. During the demonstration, the Director clicked on a case cited in an AI-generated memorandum, and Alexi's system immediately pulled the case's full text for the user[10]:

---

[9] HeyCounsel, *Alexi Demo (HeyCounsel Demo Day)*, YouTube (Oct. 15, 2024), https://www.youtube.com/watch?v=vgr9kEOVek0 [https://perma.cc/8FFH-66LN] at 3:09.

[10] *Id*. at 8:16.



60.    The interface displayed a button stating, "View this document on Fastcase," explicitly linking to Fastcase—something Fastcase had rejected during prior partnership discussions—and leveraging Fastcase's trademark and service mark without authorization.[11]

61.    These features were developed and commercialized in direct violation of the Agreement's exclusive "internal research" limitation and its express prohibition on using Fastcase Data for "commercial purposes" or for purposes "competitive with Fastcase." Ex. A § 1.7.

62.    These features also violated the Agreement's prohibition on "publish[ing]" or "distribut[ing] any part of the Fastcase Data," *id*. § 2.2, and directly contradicted Fastcase's express instruction during negotiations that "content cannot be made available through [a] traditional legal research product like Fastcase."

63.    In the same October 2024 demonstration, Alexi's Director of Revenue acknowledged that Alexi had moved far beyond its 2017 passage-retrieval tool and now acted as

---

[11] *Id.*

a wrapper on top of third-party AI models using Fastcase Data[12]—a clear admission that Alexi was using the data for commercial and competitive purposes outside the license's scope.

64.    Around the same time, Alexi announced a major expansion of its platform to include document analysis, case-management tools, and other litigation and transactional products—capabilities typical of full-scale legal-research providers.

65.    In a late 2024 interview, Doble confirmed that "human lawyers" were no longer "in the loop" and no longer performed internal research for memoranda, further marking Alexi's shift away from the licensed use Fastcase had authorized.[13]

66.    A subsequent public demonstration in May 2025 reaffirmed this transformation. Alexi's Director of Revenue again showcased direct access to Fastcase Data and continued to use Fastcase's registered marks within its platform.[14]



---

[12] *Id* at 10:00.

[13] The Geek in Review, *Harnessing AI for Litigation: Mark Doble on Alexi's Next Evolution*, YouTube (Dec. 16, 2024), https://www.youtube.com/watch?v=9dYucOxZowA [https://perma.cc/964Y-4EEJ] at 11:10.

[14] LawSites: How it Works, *LawNext Product Demo of Alexi Key Features*, YOUTUBE (May 1, 2025), https://www.youtube.com/watch?v=3R7BIs1y_f8 [https://perma.cc/3PRN-TMFK0].

67.    Today, Alexi positions itself as a full-service legal-research and workflow platform for litigation and transactional practices, targeting mid-market and enterprise firms—the same segment served by Fastcase and vLex.

68.    At *no point* during this transformation did Alexi notify Fastcase of its changing service model, its expanding use of Fastcase Data, or its intent to compete directly with Fastcase. Nor did Alexi seek to renegotiate the Agreement to authorize its new uses. Instead, Alexi continued to rely on the internal-use license while using Fastcase Data to build, train, power, and market a direct competitor.

### *Fastcase discovers Alexi's breach and takes action.*

69.    On June 30, 2025, Clio announced that it had signed a definitive agreement to acquire vLex for $1 billion—described as "one of the most significant transactions in legal technology history," combining Clio's legal-technology suite with "the world's most comprehensive global legal research platform."[15]

70.    On October 27, 2025, vLex—acting on behalf of Fastcase—sent Alexi a written Notice of Material Breach. The notice explained that Alexi was using Fastcase Data for improper "commercial" and "competitive" purposes in violation of the Agreement, and demanded that Alexi cure its breach within 30 days, as required by Section 5.2 of the Agreement.

71.    Later that same day, Doble responded on behalf of Alexi, denying any breach or wrongdoing.

72.    On November 3, 2025, Alexi's counsel sent a further letter rejecting Fastcase's notice and affirmatively admitting that Alexi had used the Fastcase Data to train and power its

---

[15] *Clio Completes Landmark $1B vLex Acquisition and Announces $500M Series G Funding Round at $5B Valuation*, Clio, Nov. 10, 2025, https://www.clio.com/about/press/clio-completes-landmark-1b-vlex-acquisition-series-g-5b-valuation/ [https://perma.cc/W2QS-XMTQ].

generative AI models. In the letter, Alexi's counsel asserted that Fastcase's allegation of material breach "appears to be premised on the notion that it was contrary to the Agreement for Alexi to use the Fastcase Data (as defined in the Agreement) as training data to produce legal research memos for Alexi's customers. That is clearly not the case." Counsel further stated that "[t]he intention of the Agreement was never to preclude Alexi from using Fastcase Data as source material for Alexi's generative AI product; that is exactly what Alexi was paying Fastcase nearly a quarter million dollars for annually."

73.    In this correspondence, Alexi not only denied breaching the Agreement but also expressly affirmed that it had used Fastcase Data as training data for Alexi's commercial generative AI product—conduct that is prohibited by the Agreement's plain terms, which limit Alexi's use to "internal research purposes," bar any "commercial" or "competitive" use, and forbid any "publish[ing]" or "distribut[ing]" of Fastcase Data. Despite receiving the Notice of Material Breach, Alexi stated that it intended to continue using the Fastcase Data "as it had been," and it has done so.

74.    Accordingly, Alexi has refused to cease its unauthorized use of Fastcase Data. Alexi continues to use Fastcase Data for commercial and competitive purposes, continues to publish and disclose Fastcase Data to end users, continues to use Fastcase's marks without authorization, and continues to misappropriate Fastcase's Compilation.

75.    30 days have passed since Fastcase (through vLex) first provided written notice of material breach under Section 5.2 of the Agreement, and Alexi has failed and refused to cure.

76.    In conjunction with the filing of this Complaint, Fastcase has terminated the Agreement for cause pursuant to Section 5.2.

## FIRST CLAIM FOR RELIEF
### *(Breach of Contract)*

77.     Fastcase incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

78.     On December 6, 2021, Fastcase and Alexi entered into a valid and enforceable Data License Agreement supported by adequate consideration and containing clear terms governing Alexi's permitted use of Fastcase Data, as well as corresponding limitations, obligations, and remedies.

79.     Under Section 1.7 of the Agreement, Alexi was granted only a limited, non-exclusive, non-transferable license to use Fastcase Data solely for Alexi's "internal research purposes" (the "Purpose").

80.     The Agreement unambiguously provides that "[i]n no event can the data be used for commercial purposes or for any purpose which is competitive with Fastcase."

81.     Section 2.2 further requires that Alexi "will not use the Fastcase Data at any time in a way which is inconsistent with the Purpose," and bars Alexi from "sell[ing], licens[ing], publish[ing], copy[ing], or otherwise distribut[ing] any part of the Fastcase Data."

82.     Fastcase fully performed its obligations under the Agreement, including providing Alexi with access to Fastcase Data.

83.     Notwithstanding the Agreement's clear and unambiguous restrictions, Alexi has materially breached—and continues to materially breach—the Agreement by using Fastcase Data for commercial and competitive purposes expressly prohibited by Sections 1.7 and 2.2.

84.     These breaches include, without limitation:

        a.  using Fastcase Data to train, develop, and operate Alexi's commercial generative AI legal-research product;

b.  marketing, offering, and selling a legal-research platform that competes directly with Fastcase;

c.  publicly distributing, publishing, and displaying Fastcase-sourced case law to Alexi's end users;

d.  integrating Fastcase Data into Alexi's user-facing platform, thereby enabling users to access Fastcase Data directly through Alexi's product; and

e.  leveraging Fastcase's marks in product interfaces in a manner that suggests integration or affiliation, in violation of the Agreement's use restrictions and confidentiality protections.

85.  Alexi has publicly described itself as "a legitimate alternative to incumbent legal research providers," and has marketed capabilities—such as case law access and metadata functionalities—that inherently rely on prohibited use of Fastcase Data.

86.  Alexi's breaches are further confirmed by its own written admissions. In response to Fastcase's Notice of Material Breach, Alexi's counsel asserted that "Fastcase's allegation of material breach appears to be premised on the notion that it was contrary to the Agreement for Alexi to use the Fastcase Data … as training data … [t]hat's clearly not the case," and further stated that "the intention of the Agreement was never to preclude Alexi from using Fastcase Data as source material for Alexi's generative AI product." These statements constitute express acknowledgements that Alexi has used Fastcase Data for prohibited commercial and competitive purposes.

87.  Alexi further declared that it "intended to continue using the Fastcase Data as it had been," thereby repudiating the Agreement's core restrictions and refusing to cure its breaches.

88.     Public demonstrations of Alexi's product show full-text case law derived from Fastcase Data and identify Fastcase as the source, confirming that Alexi is distributing, publishing, and commercially exploiting the Fastcase Data in violation of Sections 1.7 and 2.2. *See supra* ¶¶ 59, 66.

89.     Alexi's unauthorized use of Fastcase Data is material, deliberate, willful, and ongoing. Alexi's commercial research platform would not exist in its current form without its extensive and improper use of Fastcase Data.

90.     As a direct and proximate result of Alexi's breaches, Fastcase has suffered and continues to suffer damages, including loss of licensing value, competitive injury, market displacement, diversion of business opportunities, harm to goodwill, and diminution of the economic value of its proprietary data, in an amount to be proven at trial.

91.     Alexi's conduct has caused, and will continue to cause, irreparable harm to Fastcase, including loss of control over its proprietary Compilation, erosion of competitive position, and impairment of contractual and intellectual property rights, for which monetary damages are inadequate.

92.     Fastcase is therefore entitled to injunctive relief prohibiting Alexi from further commercial, competitive, distributive, or derivative use of Fastcase data.

93.     Fastcase seeks all available remedies for Alexi's breaches, including compensatory damages, disgorgement of Alexi's revenues and profits attributable to its improper use of Fastcase Data, injunctive relief, attorney's fees and costs to the extent allowed by law, and all further relief the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### *(Trademark Infringement of Registration Nos. 2,917,596 and 4,462,387*
### *(15 U.S.C. § 1114))*

94.     Fastcase incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

95.     Fastcase has, at all relevant times, used the "Fastcase" trademarks in commerce in connection with its legal-research products, software, and related services.

96.     Fastcase owns U.S. Trademark Registration No. 4,462,387 for the mark "Fastcase," first used in commerce on or about January 25, 2010, covering "[d]ownloadable application software for portable devices, namely, mobile phones and handheld computers, in the fields of law and legal research; downloadable e-books in the fields of law and legal research." A true and correct copy of the trademark registration certificate is attached as Ex. B.

97.     The USPTO issued Registration No. 4,462,387 on January 7, 2014, and it remains active, valid, and in full force and effect. *Id.*

98.     Fastcase has continuously and prominently used the "Fastcase" trademark since 2010 on its software, websites, applications, digital research tools, and promotional materials. A representative screenshot of Fastcase's use of its trademark is included below:



99.    Fastcase owns U.S. Service Mark Registration No. 2,917,596 for the mark "Fastcase," first used in commerce on or about May 16, 2002, covering online legal-research services, search-engine technology, and related publishing and information-retrieval services.[16] A true and correct copy of the registration certificate is attached as Ex. C.

---

[16] A complete list of Fastcase's Goods and Services as listed on the USPTO's website are as follows: (1) "licensing of search engines and search engine interface technology," (2) "electronic legal publishing services, namely, publication of federal and state case law, federal, state and local statutes, codes, legislation, regulations and rules, legal treaties and legal forms, federal and state court rules and orders, administrative law opinions, agency memoranda, opinions and rulings, legal journals, periodicals and articles, state public records, court dockets, legal news, [research memoranda,] filings made with federal, state and agencies, and other legal research materials of others via the Internet," and "providing information in the field of law via the Internet; online legal research services; computer-assisted research services; providing an online interactive database in the fields of law, and digital legal information over the Internet; computer services, namely, providing online research materials and resources in the field of law; providing electronic commerce services, namely, electronic transmission and reception of legal forms, research materials and documents via the Internet." *See* USPTO, Fastcase, Service Mark Registration No. 2,917,596 https://tsdr.uspto.gov/#caseNumber=75856152&caseSearcType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch  [https://perma.cc/J74Y-T76Q].

100.    The USPTO issued Registration No. 2,917,596 on January 11, 2005, and it has been duly renewed and remains valid, subsisting, and in full force and effect. *See* Ex. C.

101.    Fastcase has continuously used its "Fastcase" service mark since 2002 in connection with its online legal-research platform, websites, marketing materials, platform interfaces, promotional items, online research products, and other commercial offerings. *See supra* ¶ 98.

102.    Through decades of continuous nationwide use, extensive marketing, and widespread industry recognition, the "Fastcase" marks have come to uniquely identify Fastcase as the source of its goods and services.

103.    Legal professionals, consumers, and industry participants recognize the "Fastcase" marks as identifying Fastcase's legal-research products and as distinguishing them from competing products.

104.    Without Fastcase's consent or authorization, Alexi has used, reproduced, displayed, and distributed the "Fastcase" marks in its platform interfaces, public presentations, promotional materials, and commercial advertising:



105.    Alexi has deliberately used the "Fastcase" marks in ways that suggest Alexi's products originate from, incorporate, are affiliated with, or are sponsored or approved by Fastcase.

106.    Alexi's unauthorized use of the "Fastcase" marks appears in materials designed to advertise, promote, and sell Alexi's competing AI-driven legal-research platform.

107.    Alexi's use of Fastcase's registered marks in connection with directly competing legal-research products is likely to cause—and has caused—consumer confusion as to source, sponsorship, affiliation, or endorsement.

108.    Although Alexi previously sought a commercial partnership with Fastcase, no such partnership was ever formed. Alexi's continued presentation of Fastcase's marks within its platform and marketing materials falsely implies a partnership or affiliation that does not exist.

109.    Upon information and belief, Alexi's conduct is knowing, willful, and intentional, undertaken with full awareness of Fastcase's rights and with the deliberate aim of trading on Fastcase's reputation, goodwill, and established brand identity.

110. Alexi's unauthorized use of Fastcase's registered trademarks in commerce constitutes willful and deliberate infringement in violation of the Lanham Trademark Act, including but not limited to 15 U.S.C. § 1114(1).

111. As a direct and proximate result of Alexi's infringement, Fastcase has suffered and continues to suffer irreparable harm, including loss of control over its marks, dilution of brand value, reputational injury, customer confusion, and diversion of business opportunities.

112. Fastcase is entitled to injunctive relief, recovery of Alexi's profits, compensatory and treble damages, attorneys' fees, costs, and all other remedies authorized by 15 U.S.C. §§ 1116–1117.

### THIRD CLAIM FOR RELIEF
*(Misappropriation of Trade Secrets (18 U.S.C. § 1836 et seq.))*

113. Fastcase incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

114. Fastcase owns and maintains a proprietary compilation of legal materials, including its curated, structured, harmonized, indexed, and technically engineered database of federal and state caselaw, judicial opinions, and statutory materials (the "Fastcase Data Compilation" or "Compilation"). This Compilation constitutes a trade secret under 18 U.S.C. § 1839(3).

115. Although individual court decisions or statutes may be publicly available in isolation, the Fastcase Data Compilation itself is not. Fastcase transforms these disparate sources into a fundamentally new, proprietary, and highly engineered data asset through extensive structuring, harmonization, metadata tagging, normalization, and continuous editorial refinement. This transformation yields a deeply curated compilation that is far more functional and valuable than the underlying materials alone. In its selection, arrangement, and technical construction, the

Compilation is analogous to a compilation copyright. It cannot be replicated without substantial expertise, specialized systems, and years of sustained investment.

116.    The Compilation is not generally known, is not readily ascertainable by proper means, and derives independent economic value specifically from its confidential structure, organization, and metadata—the very elements Alexi exploited to accelerate its competing commercial platform.

117.    Fastcase has devoted decades of engineering, editorial, and resource investment to build and refine the Compilation. On information and belief, digitizing even a *portion* of the underlying primary-law materials (*e.g.*, the U.S. caselaw portion) would cost between $5 million and $10 million USD, without including the far more substantial work required to normalize, structure, harmonize, and maintain those materials as part of a functional research database.

118.    These characteristics give the Compilation substantial independent economic value, enable Fastcase to license access to its data as part of a subscription model, and provide a competitive advantage in the legal-research market.

119.    Fastcase has taken—and continues to take—reasonable measures to maintain the secrecy and value of the Compilation, including:

> a.  requiring licensees, partners, and counterparties to enter confidentiality, non-use, and restricted-use agreements, including the Agreement with Alexi;
>
> b.  limiting access to the Compilation to authorized subscribers or licensees under express contractual restrictions that prohibit commercial, competitive, or distributive use;
>
> c.  implementing commercially reasonable technical and security protections; and

d.  expressly stating in the Agreement that Fastcase retains sole ownership of the Compilation and that Alexi may use the data only for "internal research purposes" and may not "sell, license, publish, copy, or otherwise distribute" any Fastcase Data. Ex. A §§ 1.7, 2.2.

120.    Alexi obtained access to the Fastcase Data exclusively by virtue of its Agreement with Fastcase, which imposed clear duties to maintain confidentiality and to limit all use to the narrowly defined internal-research Purpose. *Id.*

121.    Despite these restrictions, Alexi misappropriated the Compilation by using Fastcase Data to train, develop, refine, and commercialize Alexi's publicly offered AI-driven legal-research products, including products marketed in direct competition with Fastcase.

122.    Alexi's misappropriation included using Fastcase's confidential Compilation and metadata structure to train large-scale generative AI models, power user-facing legal-research features, generate outputs incorporating Fastcase Data, and provide end users with direct access to the content of the Fastcase Compilation.

123.    Alexi's misuse went far beyond any internal research contemplated by the Agreement and directly leveraged Fastcase's confidential Compilation to accelerate Alexi's commercial platform and displace Fastcase in the market.

124.    Alexi's conduct constitutes "misappropriation" under 18 U.S.C. § 1839(5). Alexi acquired the Fastcase Data under circumstances giving rise to a clear duty to maintain its secrecy and restrict its use, and Alexi used the Compilation without consent and in breach of that duty.

125.    Alexi acted knowingly, willfully, and maliciously. In response to Fastcase's Notice of Material Breach, Alexi expressly admitted that it used Fastcase Data as "training data" and asserted—incorrectly—that such use was "clearly not" prohibited by the Agreement and was

"exactly what Alexi was paying Fastcase nearly a quarter million dollars for annually." These statements confirm Alexi's deliberate and unauthorized use of Fastcase's trade secrets for commercial and competitive purposes.

126.    By the actions alleged herein, Alexi violated the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

127.    As a direct and proximate result of Alexi's misappropriation, Fastcase has suffered and continues to suffer substantial harm, including loss of licensing revenue, competitive injury, market displacement, unjust enrichment to Alexi, erosion of goodwill, and diminution of the value of Fastcase's proprietary Compilation.

128.    Alexi's ongoing misuse of Fastcase's trade secrets will continue to cause irreparable injury unless enjoined. Monetary damages alone cannot fully remedy the harm caused by ongoing unauthorized use in a competing commercial research platform.

129.    Fastcase is entitled to injunctive relief, compensatory damages, exemplary damages for willful and malicious misappropriation, and recovery of its reasonable attorney's fees and costs pursuant to 18 U.S.C. § 1836(b)(3).

## FOURTH CLAIM FOR RELIEF
### *(Misappropriation of Trade Secrets (D.C. Code Ann. § 36-401 et seq.))*

130.    Fastcase incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

131.    Fastcase owns and maintains a proprietary compilation of legal materials, including its curated, structured, harmonized, indexed, and technically engineered database of federal and state caselaw, judicial opinions, and statutory materials (the "Fastcase Data Compilation" or "Compilation"). The Compilation constitutes a trade secret within the meaning of the D.C. Uniform Trade Secrets Act ("DCUTSA"), D.C. Code Ann. § 36-401 *et seq.*

132.    Although individual court decisions or statutes may be publicly available in isolation, the Fastcase Compilation as a whole is not. Its value derives from Fastcase's unique selection, arrangement, metadata schemas, normalization processes, cross-referencing, engineering, and continuous editorial refinement.

133.    The Compilation is not generally known, is not readily ascertainable by proper means, and derives independent economic value specifically from its confidential structure and organization. Fastcase has invested decades of engineering resources and substantial financial expenditures to build and maintain the Compilation. On information and belief, digitizing even a portion of the underlying primary-law materials (e.g., U.S. caselaw) would cost between $5 million and $10 million USD, not including the far more substantial effort required to normalize, harmonize, and maintain the Compilation.

134.    The Compilation's structure, metadata, and technical capabilities give Fastcase a significant competitive advantage in the legal-research market and enable Fastcase to license access to its data and operate a subscription-based business model.

135.    Fastcase has taken—and continues to take—reasonable measures to maintain the secrecy and value of the Compilation, including but not limited to:

   a.   requiring licensees, partners, and counterparties to enter confidentiality, non-use, and restricted-use agreements, including the Agreement with Alexi;

   b.   limiting access to the Compilation to authorized subscribers or licensees under express contractual restrictions that prohibit commercial, competitive, or distributive use;

   c.   implementing commercially reasonable technical and security protections; and

d.   expressly stating in the Agreement that Fastcase retains sole ownership of the Compilation and that Alexi may use the data only for "internal research purposes" and may not "sell, license, publish, copy, or otherwise distribute" any Fastcase Data. Ex. A, §§ 1.7, 2.2.

136.    Alexi obtained access to the Fastcase Data exclusively by virtue of its Agreement with Fastcase, which imposed clear duties to maintain confidentiality and to limit all use to the narrowly defined internal-research Purpose. *Id*.

137.    Despite these restrictions, Alexi misappropriated the Compilation by using Fastcase Data to train, develop, refine, and commercialize Alexi's publicly offered AI-driven legal-research products, including products marketed in direct competition with Fastcase.

138.    Alexi's misappropriation included using Fastcase's confidential Compilation and metadata structure to train large-scale generative AI models, power user-facing legal-research features, generate outputs incorporating Fastcase Data, and provide end users with direct access to the content of the Fastcase Compilation.

139.    Alexi's misuse went far beyond any internal research contemplated by the Agreement and directly leveraged Fastcase's confidential Compilation to accelerate Alexi's commercial platform and displace Fastcase in the market.

140.    Alexi's conduct constitutes "misappropriation" under D.C. Code Ann. § 36-401(2). Alexi acquired the Fastcase Data under circumstances giving rise to a clear duty to maintain its secrecy and restrict its use, and Alexi used the Compilation without consent and in breach of that duty.

141.    Alexi acted knowingly, willfully, and maliciously. In response to Fastcase's Notice of Material Breach, Alexi expressly admitted that it used Fastcase Data as "training data" and

asserted—incorrectly—that such use was "clearly not" prohibited by the Agreement and was "exactly what Alexi was paying Fastcase nearly a quarter million dollars for annually." These statements confirm Alexi's deliberate and unauthorized use of Fastcase's trade secrets for commercial and competitive purposes.

142.    By the actions alleged herein, Alexi violated D.C. Code Ann. § 36-401 *et seq.*

143.    As a direct and proximate result of Alexi's misappropriation, Fastcase has suffered and continues to suffer substantial harm, including loss of licensing revenue, competitive injury, market displacement, unjust enrichment to Alexi, erosion of goodwill, and diminution of the value of Fastcase's proprietary Compilation.

144.    Alexi's ongoing misuse of Fastcase's trade secrets will continue to cause irreparable injury unless enjoined. Monetary damages alone cannot fully remedy the harm caused by ongoing unauthorized use in a competing commercial research platform.

145.    Fastcase is entitled to injunctive relief, compensatory damages, exemplary damages for willful and malicious misappropriation, and recovery of its reasonable attorney's fees and costs pursuant to D.C. Code Ann. §§ 36-401-402.

### FIFTH CLAIM FOR RELIEF
*(False Designation of Origin and Unfair Competition in Violation of the Lanham Act (15 U.S.C. § 1125(a)))*

146.    Fastcase incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

147.    Fastcase owns all rights, title, and interest in the "Fastcase" trademarks and service marks. Through continuous use since 2002 (services) and 2010 (goods), extensive advertising, and widespread marketplace recognition, the "Fastcase" marks have come to signify Fastcase as the exclusive source of its legal-research products and services and to embody substantial goodwill.

148.    Without Fastcase's consent, Alexi has used Fastcase's marks in commerce on its platform interfaces, in product demonstrations, and in promotional and advertising materials:



149.    Alexi's unauthorized use of Fastcase's marks falsely suggest to consumers, legal professionals, and industry participants that Fastcase endorses, sponsors, authorizes, or is affiliated with Alexi's competing legal-research platform—even though no such relationship exists and Fastcase has expressly declined to form a partnership with Alexi.

150.    Alexi's use of the "Fastcase" marks in connection with its competing commercial products constitutes a false designation of origin and a false or misleading representation of affiliation, connection, or sponsorship within the meaning of 15 U.S.C. § 1125(a)(1)(A).

151.    Alexi's conduct is likely to cause—and already has caused—consumer confusion, mistake, and deception as to (a) the origin of Alexi's products, (b) whether Alexi's products incorporate or are powered by Fastcase's proprietary services with authorization, and (c) whether Fastcase has partnered with, approved, or is otherwise associated with Alexi.

152.     Alexi's actions were undertaken deliberately and with the intent to trade on Fastcase's reputation, goodwill, and established market position, and to lend undeserved legitimacy to Alexi's competing AI-driven research results.

153.     As a direct and proximate result of Alexi's conduct, Fastcase has suffered and will continue to suffer irreparable injury, including loss of control over its brand, dilution of goodwill, damage to reputation, loss of customer trust, and diversion of business opportunities.

154.     Fastcase is entitled to injunctive relief, recovery of Alexi's profits, compensatory and treble damages for willful violations, corrective advertising, attorneys' fees, and costs, pursuant to 15 U.S.C. §§ 1116–1117.

## JURY DEMAND

**155.**     Pursuant to Federal Rule of Civil Procedure 38, Fastcase demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Fastcase respectfully requests that the Court enter judgment in its favor and award the following relief:

156.     Judgment for Fastcase on all causes of action asserted herein.

157.     On Fastcase's First Cause of Action, Fastcase respectfully requests:

    a.  A declaration that Alexi materially breached the Data License Agreement by, among other things:

        i.  using Fastcase Data for commercial purposes;

        ii.  using Fastcase Data for purposes competitive with Fastcase;

        iii.  selling, publishing, copying, distributing, or otherwise making Fastcase Data available to end users; and

      iv. using Fastcase Data in ways inconsistent with the Agreement's defined internal-research Purpose.

b. A permanent injunction enjoining Alexi and its officers, directors, agents, employees, representatives, affiliates, successors, assigns, and all persons acting in concert with them, from:

      i. accessing, using, reproducing, analyzing, or retaining any Fastcase Data for any purpose;

      ii. commercializing any product, service, model, dataset, training corpus, or output derived in whole or in part from the Fastcase Data; and

      iii. offering, marketing, selling, or supporting any product or service incorporating or developed using Fastcase Data.

c. An award of compensatory damages in an amount to be proven at trial.

d. An order of disgorgement requiring Alexi to account for and disgorge all revenues, profits, cost savings, and other benefits derived from its unauthorized use of Fastcase Data.

e. An order requiring return and destruction of all Fastcase Data in Alexi's possession, custody, or control, including all copies, derivatives, embeddings, model weights, datasets, or training artifacts incorporating or derived from Fastcase Data, together with a certification of complete purge and destruction.

158. On Fastcase's Second and Fifth Causes of Action, Fastcase respectfully requests:

a. A permanent injunction prohibiting Alexi, and all persons acting in concert with it, from:

     i.  displaying, using, or reproducing the "Fastcase" marks, name, logo, or any confusingly similar designation in any advertisement, marketing, demonstration, user interface, or commercial communication; and

    ii.  representing or implying that Alexi's products or services are affiliated with, sponsored by, endorsed by, or sourced from Fastcase.

b.  An award of monetary relief under 15 U.S.C. §§ 1114, 1125(a), and 1117, including but not limited to:

    iii.  Fastcase's actual damages;

    iv.  Alexi's profits attributable to the infringement;

    v.  treble damages for willful infringement;

    vi.  Fastcase's costs of suit; and

    vii.  Fastcase's reasonable attorney's fees.

159. On Fastcase's Third and Fourth Causes of Action, Fastcase respectfully requests:

a.  A permanent injunction restraining Alexi and its officers, agents, employees, affiliates, successors, assigns, and all persons acting in concert with them, from directly or indirectly using, disclosing, transmitting, reproducing, commercializing, retaining, or otherwise exploiting any Fastcase Data, any compilation derived from Fastcase Data, or any trade-secret information contained therein.

b.  An award of monetary relief available under 18 U.S.C. § 1836(b)(3)(B)–(D) and D.C. Code § 36-403(a)–(b), including but not limited to: compensatory damages, damages for unjust enrichment, and exemplary damages for willful and malicious misappropriation, together with Fastcase's reasonable attorneys' fees and costs.

2.    Such other and further relief as the Court deems just, proper, and equitable.

DATED: November 26, 2025          WILSON SONSINI GOODRICH & ROSATI

*/s/ Paul N. Harold*
Paul N. Harold (D.C. Bar No. 1032578)
WILSON SONSINI GOODRICH & ROSATI
1700 K. Street NW, Fifth Floor
Washington, DC 20006-3814
Telephone: (202) 973-8800
PHarold@wsgr.com

Jess M. Krannich (*pro hac vice* forthcoming)
Paul J. Sampson (D.C. Bar No. 1010457)
Rebecca J. Nelson (*pro hac vice* forthcoming)
Andrew P. Follett (*pro hac vice* forthcoming)
WILSON SONSINI GOODRICH & ROSATI
95 S State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510
JKrannich@wsgr.com
PSampson@wsgr.com
RNelson@wsgr.com
AFollett@wsgr.com

*Counsel for Plaintiff Fastcase, Inc.*