**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FASTCASE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALEXI TECHNOLOGIES INC.,<br><br>Defendant. | ) | Civil Action No. 1:25-cv-04159-RJL<br><br>**(PUBLIC REDACTED VERSION)** |

**DEFENDANT ALEXI TECHNOLOGIES INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65, Defendant Alexi Technologies Inc. ("Alexi") hereby moves the Court for a temporary restraining order and a preliminary injunction against Plaintiff Fastcase, Inc. ("Fastcase"), that would return the parties to the status quo that existed immediately prior to Fastcase filing this lawsuit, until Fastcase's claims are resolved by this Court, [REDACTED]

## INTRODUCTION

This lawsuit was filed by Fastcase to pressure Alexi into amending the parties' Agreement and to harm Alexi's business and goodwill. In 2021, Fastcase granted Alexi access to its database of primary caselaw under the Agreement. Alexi, in turn, used the Data in connection with its internal process to generate legal research memos for its customers. Alexi's process for creating its memos involves the use of AI models, both to summarize the raw case files that Fastcase provides, and to provide a narrative-style answer based on that Data. Fastcase, fully aware of

Alexi's use of the Data in connection with the development of its generative AI models, worked with Alexi pursuant to the Agreement for almost four years.

Everything changed in October 2025, shortly after Fastcase's owner, vLex LLC, agreed to be acquired by Clio, Inc. Following the initial announcement of the deal, Clio gave Alexi assurances that it would not disrupt Alexi's services and receipt of the Data. [REDACTED] Fastcase sent a notice in which it fabricated claims that the Agreement had been breached, alleging that Alexi's use of the Data—which had not changed since the beginning of the parties' relationship, and had never before been objectionable to Fastcase—was inconsistent with the Agreement's terms. On Thanksgiving Eve, Fastcase filed this lawsuit. [REDACTED]

[REDACTED]

Alexi plainly satisfies the four-factor test for a temporary restraining order and injunctive relief. Most importantly, Alexi is not asking Fastcase to do anything new, but rather to continue what it was doing up to and even after filing the lawsuit. In addition, Fastcase's claims are flawed as a matter of fact and law. Alexi's use of the Data to generate legal research memos, using its AI models, is consistent with the terms of the Agreement as well as the parties' course of conduct since the Agreement was executed four years ago. All of Fastcase's other claims are premised on the alleged breach of contract, and thus they all fail for the same reason: Alexi did not infringe on Fastcase's registered marks or misappropriate any proprietary data, as its conduct at all times fell within the bounds of the Agreement.

The remaining preliminary injunction factors—irreparable harm to Alexi if injunctive relief is not granted, the balance of the equities, and the public interest—squarely favor Alexi on this issue.

For these reasons, and as explained below, Alexi's motion for a temporary restraining order and a preliminary injunction should be granted.

## BACKGROUND

Alexi, formerly known as Alexsei, is a Canada-based legal technology company that was founded in 2017 to provide research assistance to law firms through its AI-powered platform. As its flagship product, Alexi provides its clients (largely law firms and in-house counsel) with legal research memos, which are generated using AI tools to apply caselaw to the factual prompts given

by its clients. Fastcase is a legal research company that was founded in 1999. Fastcase merged with vLex in 2023, in large part to "accelerate the development of AI tools for lawyers."[1] Clio, Inc. paid $1 billion on November 10, 2025 to acquire the merged companies, creating what Clio's founder, Jack Newton, described as the "world's most powerful legal intelligence platform."[2]

Alexi generates research memos using its proprietary AI-powered platform.

For almost four years, Fastcase provided Alexi that primary material in the form of its database of caselaw. Alexi's founder and CEO, Mark Doble, contacted Fastcase in the fall of 2019 to discuss purchasing access to that database. Ex. 1 at 3-4 (Nov. 22, 2019 Email from M. Doble to E. Walters) (mentioning that the company was "preparing [its] launch in the US and [was] looking to get some advice on data acquisition, go-to-market, and also potential distribution

---

[1] *Legal tech disruptors vLex and Fastcase merge to form world's largest global law library*, vLex (Apr. 4, 2023), https://vlex.com/blog/vlex-fastcase?__hstc=65416241.bd0756fa73b840175f62643ecc610f42.1764979905814.1764979905814.1764979905814.1&__hssc=65416241.1.1764979905814&__hsfp=4113775001.

[2] Bob Ambrogi, *Clio Completes Historic $1 Billion vLex Acquisition*, LawSites (Nov. 10, 2025), https://www.lawnext.com/2025/11/clio-completes-historic-1-billion-vlex-acquisition-announces-500-million-series-g-at-5-billion-valuation-plus-exclusive-interview-with-ceo-and-cfo.html.

partnership opportunities”).

From the start, Alexi highlighted its need to access Fastcase’s database to train the “retrieval” model. as well as the potential that Alexi would continue improving its capabilities as the company continued to grow. As the company continued to grow, Alexi agreed to “slic[e] up [its] data into manageable pieces” to “bring [Alexi’s] *computer generated* legal memo technology to the US market with Fastcase’s expansive US source law database.” Ex. 3 at 3 (Jan. 13, 2021 Email from J. Vineyard to M. Doble) (emphasis added);

The parties began negotiating a data licensing agreement in earnest in October 2021. Alexi understood that restriction to allow the company “programmatic” access to Fastcase’s database, so

that Alexi's software programs could convert the raw text files that Fastcase provided internally, and search the resulting data to generate research memos. Doble Decl. ¶¶ 4-5. Indeed, while the Agreement was being negotiated, Alexi offered to pay Fastcase for separate licenses that would authorize access to the Data for human users, in addition to the "programmatic access" Alexi bargained for, but Fastcase said that additional licensing was unnecessary. *Id.* ¶ 6. The parties agreed, however, that the restriction on "bulk sale" prevented Alexi from providing its customers direct access to Fastcase Data, either by selling the data in bulk or by providing access directly through a search tool.

The Agreement was executed on December 6, 2021. Its terms reflected the parties' shared understanding:

The Agreement prohibits use of the Data for "commercial purposes" or for "any purpose which is competitive with Fastcase," which Alexi understood to prevent it from selling the data in bulk or otherwise providing direct access. *Id.* ¶ 1.7; *see also id.* ¶ 2.2 (restrictions to Agreement prohibit Alexi from "sell[ing], licens[ing], publish[ing], copy[ing], or otherwise distribut[ing]" the Data). The Agreement provides either party the right to terminate for cause "after 30 days written notice to the other party of a material breach of any term or condition of this Agreement that is not cured." *Id.* ¶ 5.2.

The parties operated according to the Agreement for almost four years without objection.

And in 2022 and 2023, the parties discussed the possibility of entering into a formal partnership. Although both parties indicated interest in the opportunity, a formal agreement never materialized.

Nonetheless, the parties proceeded to adhere to the terms of the Agreement without issue for over two more years. That changed in the summer of 2025, when Fastcase, which had merged with vLex, was acquired by Clio, Inc. Days after the acquisition was announced, vLex's Chief Strategy Officer, Ed Walters, reassured Doble via email that "[t]here shouldn't be any changes to your data delivery, and you'll continue working with the same vLex team until the transaction closes later this year." Ex. 8 at 4 (June 30, 2025 Email from E. Walters to M. Doble).

Rather than engage with Alexi's concerns, Fastcase purported to terminate the Agreement and initiated this action on the same day.

## LEGAL STANDARD

The substantive legal standard is the same for both a preliminary injunction and a temporary restraining order. *Sterling Com. Credit--Michigan, LLC v. Phoenix Indus. I, LLC,* 762 F. Supp. 2d 8, 13 (D.D.C. 2011) (comparing Fed. R. Civ. P. 65(b)(1) and 65(a)(1)). A party seeking

either a preliminary injunction or a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The movant must make a "clear showing" that they are "entitled to such relief" sought by the TRO. *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 80 (D.D.C. 2020). As outlined below, Alexi can make a clear showing of all four factors required to obtain a TRO.

## ARGUMENT

### I. Alexi is Likely to Succeed on the Merits of Fastcase's Claims.

A. *Alexi's Use of Fastcase Data was Consistent with the Agreement.*

The "likelihood of success on the merits" is the "most important factor" to be considered when deciding a motion for preliminary injunctive relief. *See Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Fastcase claims that Alexi breached Sections 1.1 and 2.2 of the Agreement by: (1) using Fastcase Data to develop Alexi's AI models and improve the research memo creation process; (2) marketing, offering, and selling an AI-powered platform that competes with Fastcase; (3) publicly distributing, publishing, and displaying caselaw from Fastcase-sourced to Alexi's end-users; (4) integrating the Data into Alexi's platform and enabling users to access the Data through its product; and (5) leveraging Fastcase's marks in product interfaces in a way that violates the restrictions and confidentiality provisions of the Agreement. *See* ECF No. 1 ¶ 84. Alexi is likely to succeed in defending against these allegations because its use of the Data was well within the parties' understanding of the Agreement's terms.

To prevail on a breach of contract claim, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4)

damages caused by breach." *Delk v. PNC Bank, N.A.*, 749 F. Supp. 3d 77, 95 (D.D.C. 2024) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. Cir. 2009)). Here, the Agreement is a valid contract, and Alexi does not dispute that each party owed obligations under that contract. On the third prong, however, Fastcase cannot show that Alexi breached the duties that it owed under the Agreement.

Alexi's use of Fastcase Data was wholly consistent with the Agreement's terms. Section 1.7 of the Agreement defines the "Purpose" of the license as follows:

> [T]he limited purpose for which [Alexi] may use the Fastcase Data, namely for *internal research purposes*. In no event can the data be used for commercial purposes or for any purpose which is competitive with Fastcase.

ECF No. 1-1 ¶ 1.7 (emphasis added).

Section 2.2 addresses the "Restrictions" of the Agreement:

> Alexsei agrees that it will not use the Fastcase Data at any time in a way which is inconsistent with the Purpose. Alexsei may not sell, license, publish, copy, or otherwise distribute any part of the Fastcase Data, and may not permit any Employee or other third party to this Agreement without written consent from Fastcase, if any, to sell, license, publish, copy, or otherwise distribute any part of the Fastcase Data. The Fastcase Data must be maintained at all times only on servers controlled by Alexsei or by third party approved by Fastcase.

*Id.* ¶ 2.2.

Alexi has only ever used the Data for internal research purposes consistent with Sections 1.7 and 2.2. Section 1.7's authorization to use the Data for "internal research purposes" refers to Alexi's process of engineering "programmatic" access to Fastcase's Data under the Agreement. *See* Doble Decl. ¶ 5.

Simply stated, Fastcase's Data never leaves Alexi's internal processes. Rather, the Data is used by Alexi to develop its products, *i.e.*, the proprietary AI models that facilitate the drafting of legal research memos. Fastcase's data is never licensed, copied, sold, or otherwise distributed to customers by Alexi in connection with that process. For nearly four years, Alexi used Fastcase's Data, with Fastcase's knowledge and consent, in precisely the way envisioned by Sections 1.7 and 2.2. *Clevinger v. Advoc. Hldgs., Inc.*, No. CV-23-1159 (JMC), 2023 WL 4535467 (D.D.C. June 30, 2023), *dismissed*, No. 23-7089, 2023 WL 5664054 (D.C. Cir. Aug. 30, 2023) (finding plain meaning of agreement to support movant's interpretation of agreement to grant a preliminary injunction); *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz*, 298 F. Supp. 2d 27, 33 (D.D.C. 2002) (no likelihood of success on the merits where plaintiff provided "no proof" that the alleged breaches occurred).

Beyond the plain meaning of the Agreement, Fastcase and Alexi's mutual understanding of "internal research purposes" does not suggest that Alexi breached the Agreement.[4]

[4] The Agreement does not contain an integration clause, which means that extra-contractual statements are relevant to interpreting the Agreement's terms. *See Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 201 (D.D.C. 2016) ("cases interpreting District of Columbia law require the court



Alexi specifically reminded Fastcase of its intent to use the Data to enable software access in January of 2021, when Alexi inquired about a new offer "to allow [Alexi] to bring [its] *computer generated* legal memo technology to the US market with Fastcase's expansive US source law database." Ex. 3 at 3-4 (Jan. 4, 2021 Email from M. Doble to C. Jack) (emphasis added). Fastcase responded by attempting to accommodate Alexi's needs by scaling the Data for Alexi as it grew, going as far as to offer to "slic[e] up [its] data into manageable pieces[.]" *See id.* at 1 (Jan. 13, 2021 Email from J. Vineyard to M. Doble).

Finally, while negotiating the Agreement, Alexi offered to compensate Fastcase for separate licenses that would authorize access for human users in addition to the "programmatic access" Alexi requested, but Fastcase said that no separate license was needed. Doble Decl. ¶ 6.

These exchanges show that Fastcase understood internal research to mean that Alexi—an AI company—would be using the Data internally to develop its AI models. *See DC2NY, Inc. v. Acad. Bus, LLC*, No. CV 18-2127 (RC), 2020 WL 1536219, at *14 (D.D.C. Mar. 31, 2020) (noting that the parties' mutual understanding of the contract's requirements play a role in interpreting the

to make a factual determination whether an integration clause precludes a party from reasonably and materially relying on extra-contractual statements or omissions").

agreement). It follows that, based on the above communications, Alexi never used the Data in a manner that was inconsistent with the Agreement. Alexi has never attempted to provide access to the data via "bulk sale" or anything of the sort. It has only used the Data to develop its proprietary AI models, all of which are used internally. Both parties understood that Alexi's actions were consistent with the terms of the Agreement, and Fastcase's assertions that the Agreement was breached are unfounded. *Cf. Beacon Assocs., Inc. v. Apprio, Inc.*, 308 F. Supp. 3d 277, 284-85 (D.D.C. 2018) (granting preliminary injunction and reinstating the contract where there was no evidence of material breach).

The parties' course of conduct after the Agreement was executed confirms their understanding of how Alexi would use the Data.

*B. Alexi's Use of Fastcase's Marks Was Authorized.*

Fastcase's Trademark Infringement and Unfair Competition claims fail because Alexi's use of the Marks is permitted by the express terms of the Agreement. *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 212 (D.D.C. 2014) (noting that claims of trademark infringement, false designation of origin, and unfair competition are analyzed the same when alleged simultaneously).

To show Alexi infringed on the Marks, Fastcase needs to demonstrate "(1) that it owns a valid trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark." *Fernandez v. Jones*, 653 F. Supp. 2d 22, 29 (D.D.C. 2009). There is no dispute that Fastcase owns a valid trademark. However, Alexi has not used the Marks in a way that "acquired a secondary meaning" or that would cause "a likelihood of confusion" among consumers. In the example cited in the Complaint, Alexi explicitly noted that the document was "cited" by Alexi in its own research memo and directly linked the document to Fastcase's website. Nowhere on the document does it suggest Alexi is associated with Fastcase, or that this product is associated with the Fastcase Marks. *Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury*, 193 F. Supp. 2d 6, 19-20 (D.D.C. 2001) (no likelihood of success for trademark infringement where defendant did not use marks "in any meaningful sense whatsoever"). Instead, Alexi's conduct suggests the opposite: that Alexi pointed consumers directly to Fastcase as the source of the caselaw cited in the research memo, a product that is separate from the memo itself. Notably, aside from its conclusory assertions, Fastcase does not explain how Alexi's reference to its Data was likely to cause consumer confusion. *See Fed'n Internationale De Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 72 (D.D.C. 2003) (finding no likelihood of success where plaintiff "adduced

virtually no evidence, direct or otherwise, indicating the degree of consumer association).[6] Accordingly, Alexi is likely to succeed in defending against Fastcase's Trademark Infringement and Unfair Competition claims.

### *C. Alexi's Use of Fastcase Data Does Not Amount to a Misappropriation of Fastcase's Trade Secrets.*

A trade secret is defined as "all forms and types of business, scientific, technical, economic, or engineering information, including plans, methods, techniques, processes, procedures, programs, or codes if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value from not being generally known to others who could obtain economic value from its disclosure or use." *Trilogy Fed., LLC v. Civitas DX LLC,* No. 24-CV-2713 (BAH), 2025 WL 436850, at *3 (D.D.C. Feb. 9, 2025). Information that is "generally known" or "readily ascertainable to the public" cannot constitute a trade secret. *Id.*

As a preliminary matter, Fastcase's "data compilation" is arguably not a trade secret. Fastcase acknowledges as much, noting that the "individual court decisions or statutes" that make up its raw data feed "may be publicly available." ECF No. 1 ¶ 114. Moreover, Alexi only has access to those underlying (publicly-available) court decisions and statutes in connection with the Agreement, and not the programming that Fastcase uses to make its daily feed. Doble Decl. ¶¶ 4, 7. In other words, Alexi cannot access the "proprietary compilation" Fastcase uses to create its

---

[6] The factors for assessing a likelihood of confusion are (1) the strength of plaintiff's mark; (2) the degree of similarity between plaintiff's and defendant's marks; (3) proximity of the products being sold; (4) likelihood that the plaintiff will "bridge the gap" between the products being sold; (5) evidence of actual confusion; (6) defendants good faith in using the mark; (7) the quality of defendant's products; and (8) the sophistication of the relevant consumer market. *Fed'n Internationale De Football Ass'n v. Nike, Inc*., 285 F. Supp. 2d 64, 72 (D.D.C. 2003). Because Fastcase fails to present evidence as to any one of these factors, Alexi does not address each in turn. Alexi maintains that Fastcsae will not be able to marshal any support for these factors to warrant a finding of likelihood of success on the merits.

daily feed, much less misappropriate it. Instead, Alexi only has access to the caselaw contained in the feed that is produced – similar to how a ChatGPT user may access a database of articles when reviewing ChatGPT's answer to a prompt. *See generally id.* More to the point, the Complaint does not explain how Alexi uses the "data compilation" in a way that misappropriates it, or how that use differs from Alexi's conversion of Fastcase's raw case files. *Am. Petroleum Inst. v. Technomedia Int'l, Inc.*, 699 F. Supp. 2d 258, 266 (D.D.C. 2010) (no likelihood of success for misappropriation of trade secrets where plaintiff failed to plead what defendant wrongfully used or disclosed).

Second, under District of Columbia law, no misappropriation of trade secret exists unless the disclosure or use of the trade secret is "without express or implied consent." *Am. Petroleum Inst.*, 699 F. Supp. 2d at 264 (citing D.C. Code § 36-401(2)(B)); *see also Strobos v. RxBio, Inc.*, 251 F. Supp. 3d 221, 232 (D.D.C. 2017) (noting that it is critical that the party bringing the claim must prove the misappropriation occurred without its consent). As already discussed, Fastcase has provided Data to Alexi in connection with the Agreement since 2021. Fastcase authorized Alexi's use of its trade secrets pursuant to that Agreement, to the extent any trade secrets exist. *Am. Petroleum*, 699 F. Supp. 2d at 264 (no misappropriation of trade secrets where the plaintiff provided its trade secret to defendant in connection with a license agreement). Fastcase cannot show that they did not know of, and consent to, Alexi's use of its Data throughout their relationship. *See Strobos*, 251 F. Supp. 3d at 232-233 (finding no misappropriation where the claimant "implicitly consented" to the sharing of the information). Alexi is thus likely to succeed on the merits of Fastcase's trade secrets claims.

**III. The Remaining Factors Favor Preliminary Injunctive Relief.**

The remaining preliminary injunction factors underscore the need for injunctive relief.

A. *Alexi Will Suffer Irreparable Harm If the Requested Relief Is Not Granted.*

B. *Fastcase Will Not Suffer Irreparable Harm If the Requested Relief Is Granted.*

Because Alexi's use of the Data was consistent with the Agreement, Fastcase cannot show that it will be harmed

C. *Enjoining Fastcase* *Serves The Public Interest.*

Finally, enjoining Fastcase serves the public interest by preserving the status quo. *Beacon*, 308 F. Supp. 3d at 291 (finding that granting an injunction to preserve the "last uncontested status which preceded the pending controversy" served the public interest).

## CONCLUSION

For the foregoing reasons, Alexi respectfully requests that its motion be granted, and that the Court enjoin Fastcase [REDACTED]

Dated: December 10, 2025

Respectfully submitted,

*/s/ Jon M. Talotta*

Jon M. Talotta (DC Bar No. 473626)
HOGAN LOVELLS US LLP
8350 Broad Street, 17th Floor
Tysons, VA 22102
Tel: (703) 610-6100
Fax: (703) 610-6200
jon.talotta@hoganlovells.com

Peter J. Martinez (*Pro Hac Vice Forthcoming*)
HOGAN LOVELLS US LLP
100 International Drive, Suite 2000
Baltimore, MD 21202
Tel: (410) 659-2700
Fax: (410) 659-2701
peter.martinez@hoganlovells.com

*Counsel for Defendant Alexi Technologies Inc.*