# EXHIBIT A
# FILED UNDER SEAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FASTCASE, INC.<br><br>　　　Plaintiff,<br><br>v.<br><br>ALEXI TECHNOLOGIES INC.<br><br>　　　Defendant. | C.A. No. 1:25-CV-04159-RJL |

**DECLARATION OF ED WALTERS IN SUPPORT OF PLAINTIFF FASTCASE, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR TEMPRORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Ed Walters, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I submit this declaration in support of Plaintiff Fastcase, Inc.'s ("Fastcase") opposition to Defendant Alexi Technologies Inc.'s ("Alexi") Motion for Temporary Restraining Order and Preliminary Injunction. I am over 18 years of age. The facts stated herein are based on my personal knowledge, and I could competently testify to them if called.

*Background and Fastcase Experience*

2. I co-founded Fastcase in 1999 and served as its Chief Executive Officer from 1999 until 2023. Fastcase is a legal technology company and online legal research platform that provides access to case law, statutes, regulations, and other primary law. It also offers tools and a legal-research platform for simplifying and speeding up legal research. Fastcase partners with numerous bar associations and licenses its full 50-state corpus—around 15 million documents—to third parties, including through a search-and-access API.

3. Fastcase's legal research platform provides comprehensive access to primary-law materials within a unified research environment. The platform includes judicial opinions, statutes,

regulations, court rules, and constitutional provisions, all organized and searchable through the system's integrated interface. Fastcase supports multiple research methods, including Boolean searching and citation lookup, and it allows users to filter and organize results across jurisdictions and content types. The platform also includes proprietary research-enhancement tools such as Authority Check and the Cert Citator, which identifies negative treatment and analyzes citation patterns, as well as visualizations like the Interactive Timeline and other analytics that assist users in evaluating the relevance and interpretive weight of authorities. As early as 2018, Fastcase also offered a product called AI Sandbox, in which it worked with law firms to use early versions of AI and Fastcase Data to create new products.

4. Fastcase maintains an extensive, curated, metadata-enriched database of American law, which we have spent decades developing. Fastcase has developed a proprietary process to update the database daily from thousands of sources. It transforms daily updates of judicial opinions, statutes, regulations, court rules and more from thousands of different PDF and Microsoft Word formats into a uniform and proprietary XML document standard that captures key information such as the authoring judge, the date, the jurisdiction, the docket number, and more. The process also involves adding HTML formatting into the primary law sources for display in software. Online, the opinions look like the originals issued from the courts, but each opinion is highly enriched and contains proprietary formatting. The process is highly technical and complex. Fastcase's mission is to democratize the law, and it licenses this data to third parties through negotiated data agreements. In 2023, Fastcase merged with vLex and became part of the vLex Group. I served as Chief Strategy Officer of vLex from April 2023 to November 2025. vLex was recently acquired by Themis Solutions, Inc. (d/b/a Clio) in November 2025, and following the acquisition, I became Clio's Vice President of Legal Innovation and Strategy.

*Initial Understanding of Alexi's Business Model*

5. I first met Alexi's CEO, Mark Doble, in late 2019. He contacted me seeking advice regarding ██████████████████████████████████████████████ ██████████████████████████████████ I connected him with Joe Patz Vineyard, then a Fastcase employee involved in licensing. No agreement resulted.

6. Based on these early interactions, I understood Alexi to be a human-supported memo-writing service. My understanding was that Alexi employed a team of licensed attorneys who used internal software tools—including narrow-purpose AI—to draft legal research memoranda for corporate legal departments and law firms. I understood Alexi's AI as a tool to assist its lawyers, not as software used by end users. I also understood that Alexi aimed to build a proprietary corpus of lawyer-written memoranda that it could later market or distribute. I believed that this corpus of memoranda generated by Alexi's lawyers would be the firm's central value proposition. I believed that Alexi wanted Fastcase to be one potential pathway for distributing its memo database.

7. At the time, nothing in Alexi's communications suggested a consumer-facing large language model ("LLM") chatbot or anything resembling what the industry now considers generative AI. As far as I knew, that paradigm simply did not exist in 2019.

*Negotiation and Execution of the Data License Agreement.*

8. In late 2021, Mr. Doble again contacted me about licensing Fastcase data. As before, I connected him with my team. I was not involved in the subsequent negotiations and do not recall reviewing any drafts of the agreement before it was presented to me for final approval and signature.

9. When reviewing the Data License Agreement ("Agreement"), I understood its requirement that Fastcase Data be used solely for "internal research purposes" (Agreement § 1.7) to mean use by Alexi's human lawyers in the process of preparing legal memoranda. I also understood that Alexi might engage in internal R&D or experimentation, but that no user-facing product would be trained on or powered by Fastcase Data. This understanding was codified by the Agreement's express prohibition on using Fastcase Data "for commercial purposes or for any purpose which is competitive with Fastcase." *Id.*

10. This understanding aligned completely with my prior knowledge of Alexi's business model. I believed Fastcase Data would support only internal legal research performed by Alexi's attorneys, and that Alexi would commercialize only the human-generated work memoranda produced from that work.

11. I did not contemplate, and never had any reason to contemplate, that Alexi would train a **consumer-facing** AI system on Fastcase Data. Creating a user-facing commercial product was expressly prohibited under the Agreement, and at the time, generative AI training on full legal corpora was neither an industry practice nor something ever raised in our licensing discussions. It would not have been understood by me to fall within "internal research purposes."

*Discovery of Alexi's New Business Model.*

12. Until late 2025, I continued to believe Alexi operated the human-supported memo service described above. In late 2025, I learned for the first time that Alexi had added a new offering: a direct, user-facing AI chatbot, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Until that point, I had understood Alexi to be operating only its human-supported memo service—the business model discussed in 2019 and at the time the Agreement was executed. The introduction of a consumer-facing,

-4-

Fastcase-trained chatbot was entirely new to me and was not something I had ever contemplated under the Agreement.

13. I subsequently reviewed Alexi's more recent public materials and product demonstrations, which show that Alexi had begun promoting a broader AI-driven legal research system capable of retrieving, analyzing, and summarizing primary-law authorities in response to user prompts. These demonstrations reflect a platform that accepts natural-language legal questions, identifies and ranks relevant cases, applies jurisdictional filters, displays lists of authorities, and generates narrative legal analysis with embedded citations—all of which go well beyond the memo-support model I understood at the time of contracting. These are direct competitors to the Fastcase legal research service and obviously prohibited by the plain language of our license agreement.

14. Based on my review of Alexi's current offerings, I understand that Alexi has substantially pivoted in its business model. It now provides not only its original human-supported memo service—but also a materially different product: a direct, consumer-facing generative AI legal research tool. This new product appears to have emerged after the public release of ChatGPT in November 2022—*i.e.*, the "ChatGPT moment." A user-facing generative AI research tool of this kind did not exist in the legal industry when the Agreement was executed and was not something I would have reasonably foreseen or understood to fall within Alexi's licensed use.

15. A public-facing AI legal research service trained on Fastcase Data and responding to user prompts with Fastcase-derived text is not "internal research." It is, in substance, a commercial, user-facing legal-research application that competes directly with Fastcase's own products already on the market. For example, the chatbot provides lists of relevant authorities in response to user queries, akin to Fastcase's traditional legal research platform that allows users to

find on-point cases. It also analyzes whether authorities are out of date or abrogated, much like Fastcase's own Authority Check product and Cert citator. At bottom, Alexi has pivoted its business model and is now using Fastcase Data to power a competing, consumer-facing, legal research product.

16. I would not have signed the Agreement had I understood that Alexi intended to train or power a consumer-facing generative AI legal research product using Fastcase Data. Such a use would have required a different licensing framework entirely and would have been priced at a significantly higher level ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ That license similarly proscribes narrow uses and restricts the licensee from competitive uses.

17. In my view, after the ChatGPT moment, Alexi pivoted, expanding its business by introducing a new, user-facing generative AI research product, while continuing to rely on Fastcase Data under an Agreement not designed, negotiated, or priced for such uses. It used the data in ways that were unforeseen, unforeseeable, unauthorized, and directly competitive with Fastcase's offerings.

18. Had Alexi intended to expand beyond its internal memo-support service and launch a consumer-facing generative AI legal-research tool trained on Fastcase Data, it should have amended the data license agreement to include pricing and usage restrictions appropriate for that new and materially different use.

19. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on December 15, 2025 in Washington, D.C.

                                                                              Ed Walters