**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FASTCASE, INC. <br><br> Plaintiff, <br><br> v. <br><br> ALEXI TECHNOLOGIES INC. <br><br> Defendant. | Case No. 25-cv-4159 <br><br> **STIPULATION & PROPOSED ORDER RE: DISCOVERY OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION & PAPER COPIES FOR PRELIMINARY PROCEEDINGS** |

**STIPULATED ORDER REGARDING THE PRODUCTION OF**
**DOCUMENTS, ELECTRONICALLY STORED INFORMATION & PAPER COPIES**
**FOR PRELIMINARY PROCEEDINGS**

To expedite the flow of discovery material to, and to facilitate the consistent formatting of Documents produced during, the preliminary injunction proceedings in this Case, and with the understanding that this order will be superseded by a subsequent order, Plaintiff and Defendant (individually, "Party" collectively, "Parties"), by and through their respective counsel hereby stipulate and agree to the terms of this Stipulated Order Regarding the Production of Documents, Electronically Stored Information, and Paper Copies for Preliminary Proceedings ("Preliminary ESI Order"):

IT IS HEREBY STIPULATED, subject to the approval of the Court that:

1. This Preliminary ESI Order shall govern the production of Documents and electronically stored information ("ESI") by the Parties during the preliminary injunction proceedings in the above captioned litigation ("this Action"), according to the Parties' Joint Proposal for Expedited Schedule and Discovery Plan, ECF No. 39 ("Discovery Plan").

1

2.   This Preliminary ESI Order shall also govern productions made by any third party who is subpoenaed in this Action according to the Discovery Plan unless otherwise agreed to by the issuing Party and the third party. Productions received from third parties shall be produced to the other Parties in the format that such Documents and/or information was produced by the third parties, unless the Parties agree otherwise.

3.   The production specifications in this Preliminary ESI Order apply only to Documents produced during the preliminary injunction proceedings according to the terms of the Discovery Plan. The Parties agree that, following the preliminary injunction proceedings, a fulsome ESI order will be negotiated and presented to the Court to govern the terms of the underlying action, which will supersede this Preliminary ESI Order at such time. The Parties further agree than any Documents produced subject to this Preliminary ESI Order and that are otherwise produced in the underlying action following the preliminary injunction proceeding, whether affirmatively or in response to a responsive to requests for production, will be reproduced under the later governing order to the extent that the Documents do not comply with the later order.

4.   The terms and specifications of this Preliminary ESI Order shall apply to productions made after the Parties have agreed to the terms contained therein, without regard to the date the Court so-orders this Preliminary ESI Order.  In the event that the Parties file competing versions of this Preliminary ESI Order, the Parties agree to proceed under the terms that are not in dispute and to abide by the Court's final, so-ordered Preliminary ESI Order. The Parties agree to meet and confer to the extent that the Receiving Party requests that the Documents be produced in a format other than as described in this Preliminary ESI Order.

5.  To the extent a technical term is not defined herein, those technical terms shall be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

6.  To the extent additional obligations or rights not addressed in this Preliminary ESI Order arise under local rules or applicable state and federal statutes, those rules and/or statutes shall control.

A.  **Definitions:**

1.  "Document" or "Documents" shall include ESI, Email, and Paper Records.

2.  "Electronically stored information" or "ESI," as used herein has the same meaning as contemplated by the Federal Rules.

3.  "Email" or "Emails" is used in its broadest sense, to the full extent permitted by Rules 26 and 34 of the Federal Rules of Civil Procedure ("Federal Rules") and shall mean email or other digital messaging platforms used for formal internal or external employee communications in the ordinary course of business (e.g. Outlook, Gmail, Slack).

4.  "Family" means Email and all related attachments.

5.  "Paper Records" or "Hard Copy Documents" means Documents existing in paper form at the time of collection.

6.  "Native Format" means and refers to an electronic Document's associated file structure defined by the original creating application. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

7.  "Metadata" refers to application and system information of a Document that contains data about the Document, as opposed to describing the content of a Document, as the term is

described and used in "The Sedona Conference Glossary: E- Discovery and Digital Information Management," Fifth Ed., February 2020.

8. "Optical Character Recognition" or "OCR" means the process of recognizing and creating a Document containing visible text within an image.

9. "Producing Party" means a Party that requested Documents that are the subject of this Preliminary ESI Order.

10. "Receiving Party" means a Party that requested the Documents that are the subject of this Preliminary ESI Order.

B. **Scope of Collection:** For purposes of the preliminary proceedings in this Action, the parties' obligation to collect ESI shall be limited to Emails and targeted custodial or company Documents, either in the form of Paper Records or in the form of ESI from central and personal files.

C. **Paper Records:** Paper records will be scanned or otherwise converted into electronic form. In scanning paper Documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., paper Documents should be logically unitized).

D. **Objective Coding Fields**: The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; and (6) source location/custodian.

E. **OCR Text Files**: Document-level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the Document

with which it is associated.  The text files will not contain the redacted portions of the Documents.

F.  **ESI:**  The Parties will produce responsive, complete families of ESI in TIFF format according to the following specifications:

1.  All TIFF formatted Documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11-inch page size, except for Documents requiring different resolution or page size.

2.  Each imaged version of an electronic Document will be created directly from the original electronic Document and will be imaged in black and white. An image load file, in standard Opticon format, showing the Bates number endorsed onto the lower right corner of each page but not obscuring the content on any page and the appropriate unitization of the Documents, will accompany all Document images.

3.  All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the Native Format electronic Document (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction.  To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.  In the case of Documents with redacted text, OCR'ed text of the redacted Documents may be provided in lieu of extracted text.  OCR software should be set to the highest quality setting during processing.  For Documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

4.  Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES0000000l.TXT).

5. Metadata associated with each Document will be produced, to the extent it is available.  In the case of emails, the corresponding text file shall include all Metadata that is reasonably available (e.g. "To" "From" "CC" and "BCC" fields, the subject line of the email, and the names of any attachments). No Party shall be required to manually populate any Metadata fields that do not exist as a Document is maintained in the ordinary course of business.

6. Native Format Production of Documents:

    a. Unless redactions have been applied to the Document, the Parties will produce the following ESI types in Native Format:

        i. Excel spreadsheets (.xls, .xlsx, .xlsm, .xlsb, .csv file formats)

        ii. Audio/video multimedia files

        iii. Animations

        iv. PowerPoint or comparable presentations.

**G. Redacted Documents:**

1. The Parties reserve the right to withhold Documents and/or redact any information covered by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, rule, or statute prior to producing Documents in this Action.  To the extent a Party redacts such information, the redaction must be labeled with the specific type(s) of privilege, rule or statute being asserted.

2. Documents withheld and information redacted on the basis of any other privilege or protection need not be logged in first instance.  To the extent a Receiving Party requests additional information regarding specific redactions, the Producing Party agrees to promptly meet and confer to provide sufficient basis for the Receiving Party to validate its protection claim.

H. **De-NISTing Documents:** Common system and program files as defined by the NIST library need not be processed, reviewed or produced.

I. **Production Media and Load File:** The Parties shall produce Documents electronically via a secure File Transfer Protocol ("FTP") rather than through physical media (e.g., CD, DVD, or hard drive). The produced Documents shall be password protected and/or encrypted. Productions should be produced in a document-level-database load file in standard Concordance (DAT) file format. The total number of image files referenced in the image load file should match the total number of images in the production delivery. This section is subject to the Parties' vendors being able to process the data; if not, the Parties will meet and confer.

J. **Parent-Child Relationships for ESI Documents:** Parent-child relationships shall be preserved to the extent possible. Attachments are to be produced contemporaneously and sequentially immediately after the parent document. Links within a document are not considered attachments. A Document stored on an external location accessible through a hyperlink in an E-Mail, Instant Message, or Document (whether or not that location is on the public internet, a private cloud, or a local server) need not be produced as Family to the document containing such hyperlink as a matter of course.

K. **Miscellaneous Provisions**.

1. Except as to the formatting for production agreed to herein, all Documents shall be produced as kept and maintained by the producing Party in the ordinary course of business.

2. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with these specifications. No Party may seek relief from the Court concerning compliance with these specifications unless it has conferred with the other Party.

3.  Nothing in these specifications shall be interpreted to require disclosure of irrelevant or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents. All productions are subject to the forthcoming Stipulated Protective Order to be entered by the Court in this Action.

4.  Any practice or procedure set forth herein may be varied by agreement of the Parties or Court order.  Should any Party subsequently determine in good faith that it cannot proceed as required by this Preliminary ESI Order or that the Preliminary ESI Order requires modification, the Parties will meet and confer to resolve any dispute at least fourteen (14) days before seeking Court intervention.

[Remainder of Page Left Intentionally Blank]

**APPROVED AND AGREED TO:**

/s/ Paul N. Harold
Paul N. Harold (D.C. Bar No. 1032578)
1700 K. Street NW, Fifth Floor
Washington, DC 20006-3814
Telephone: (202) 973-8800
PHarold@wsgr.com

Jess M. Krannich (*pro hac vice*)
Paul J. Sampson (D.C. Bar No. 1010457)
Rebecca J. Nelson (*pro hac vice*)
Andrew P. Follett (*pro hac vice*)
Isabella Ang (*pro hac vice*)
95 S State Street, Suit 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510
JKrannich@wsgr.com
PSampson@wsgr.com
RNelson@wsgr.com
AFollett@wsgr.com
IAng@wsgr.com

*Counsel for Plaintiff Fastcase, Inc.*

/s/ Joshua Hafenbrack
Joshua Hafenbrack (D.C. Bar No. 1017128)
Benjamin Rudofsky (DC Bar. No. 1029844)
Allie Dodd (*pro hac vice*)
Melissa Iannuzzi (*pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Stret NW
Washington, DC 20036
Telephone: (202) 282-5017
Fax: (202) 282-5100

Johanna Rae Hudgens (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
jhugdens@winston.com

*Counsel for Defendant Alexi Technologies Inc.*

**SO ORDERED.**

Dated:_____        _____

                          HON. RICHARD J. LEON, U.S. DISTRICT JUDGE