**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FASTCASE, INC.<br><br>        Plaintiff,<br>v.<br>ALEXI TECHNOLOGIES INC.<br>        Defendant.<br><br>ALEXI TECHNOLOGIES INC.<br>        Counterclaim Plaintiff,<br>v.<br><br>FASTCASE, INC., VLEX, LLC, &<br>THEMIS SOLUTIONS INC.,<br>        Counterclaim Defendants. | C.A. No. 1:25-cv-04159<br><br>**ALEXI TECHNOLOGIES INC.'S MOTION FOR EXPEDITED & PHASED CONTRACT CLAIM DISCOVERY** |

**INTRODUCTION**

Defendant/Counterclaim Plaintiff Alexi Technologies Inc. hereby withdraws its motion for a preliminary injunction, Dkt. 14, because Alexi has made drastic, short-term sacrifices in its business to avoid insolvency and keep its doors open.[1]  In lieu of further preliminary injunction proceedings, Alexi respectfully requests that the Court order expedited discovery to resolve liability over the dueling contract claims between Alexi and Plaintiff/Counterclaim Defendant Fastcase, Inc.[2]  Alexi attaches its proposed Expedited Discovery Schedule as Exhibit A.  Good cause exists for expedited discovery into the parties' contract claims for two primary reasons.

---

[1] Alexi withdraws its preliminary injunction motion without prejudice.  As described in this motion, Alexi still faces a longer-term threat of irreparable harm that may necessitate emergency relief if Alexi's business conditions continue to worsen.

[2] Alexi asserted counterclaims against Fastcase and its parent companies, vLex, LLC, and Themis Solutions Inc. (doing business as Clio).  Dkt. 48.  As Clio now owns Fastcase, and many

***First***, Alexi and Fastcase have offered differing interpretations of the Data Licensing Agreement ("Agreement") at the heart of this case. Resolving which party breached the Agreement is a pivotal threshold issue—for both sides—that could negate or narrow the remaining issues and provide the basis for resolving the case without further judicial intervention. Expedited discovery into the Agreement would entail targeted discovery into extrinsic evidence and course of dealing, similar to what the parties already agreed to provide under the Court-ordered discovery schedule for Alexi's renewed motion for the preliminary injunction. Dkts. 38, 39. That approach will provide the most "just, speedy, and inexpensive" method, Fed. R. Civ. P. 1, for litigating this case for all concerned.

***Second***, although Alexi has taken painful steps to avoid short-term insolvency, it still faces the longer-term threat of irreparable harm if Clio can drag resolution of the contract dispute out for years, as it has signaled it intends to do. Alexi has now laid off two-thirds of its staff and cut all non-core expenses, including its marketing budget (the primary mechanism for attracting new customers) by 90 percent. So long as Clio's lawsuit and breach allegations loom over Alexi, it cannot attract investors—the lifeblood of a tech startup—innovate, grow its business, or bring new customers to its platform. In short, Alexi cannot live in this limbo for many months on end. After several meet and confers between counsel negotiating expedited discovery into the contract claims, Clio did an about-face and proposed a phased discovery schedule that would push summary judgment briefing to ***March 2027***—delaying resolution of the breach allegations far beyond when the Agreement itself expires on January 1, 2027. Such an unreasonably prolonged timeline to resolve a discrete dispute over contract interpretation—regardless of whether it

---

of the Fastcase executives involved in the contract dispute are now Clio executives, we refer interchangeably to the Plaintiff/Counterclaim Defendants as Clio and Fastcase in this motion.

results in a holding in Alexi's favor—could very well be a death knell for Alexi and waste the Court and the parties' resources.

Under Federal Rule of Civil Procedure Rule 26(d) and the Court's inherent powers to manage discovery, the Court should enter Alexi's proposed Expedited Discovery Schedule.

## BACKGROUND

1.     On November 26, 2025, Fastcase filed its complaint against Alexi, alleging claims for breach of contract and under trademark and trade secret law.  Dkt. 1.  Alexi then moved for a temporary restraining order and preliminary injunction. Dkt. 14.  On December 18, 2025, this Court denied Alexi's motion for a temporary restraining order, finding that Alexi did not make the requisite showing that it will suffer irreparable harm without access to Fastcase's data updates, while deferring ruling on the preliminary injunction.  Dkt. 28.

2.     On December 29, 2025, the Court entered the parties' agreed-upon discovery plan for the renewed preliminary injunction motion, which was set to conclude with a hearing on March 5, 2026.  Dkt. 39.  The discovery plan included narrowly targeted discovery aimed at extrinsic and course-of-dealing evidence related to Fastcase's contract breach claim.  Under that plan, both parties had served discovery requests, agreed to produce documents related to the contract dispute, and served deposition notices.

3.     On January 16, 2026, Alexi filed its answer and counterclaims to the Fastcase complaint. Dkt. 48.  Alexi brought counterclaims against Fastcase and its owners—Clio and vLex—for breach of contract (the mirror image of Fastcase's breach claim), as well as claims for breaching the implied covenant of good faith and fair dealing, tortious interference, and violating Section 7 of the Clayton Act, 15 U.S.C. § 18, through Clio's acquisition of vLex/Fastcase.

4.      On January 20, 2026, prior to the parties' scheduled meet and confer on the discovery requests related to the preliminary injunction motion, Alexi informed Fastcase that it intended to withdraw its motion for preliminary injunction.  The next day, counsel met and conferred regarding Alexi's proposal for phased and expedited discovery into the parties' opposing threshold contract claims, after which Alexi sent its proposed Expedited Discovery Schedule.  Clio's counsel followed up on January 23, 2026, requesting a further meet-and-confer the following Monday, January 26, 2026.  On that meet and confer, Clio's counsel expressed openness to expedited discovery into the parties' dueling contractual claims, while stating they wanted to build more time into the schedule to allow for expert discovery over the contract breach question.[3]

5.      On the evening of January 27, 2026, Clio's counsel sent a revised schedule that sought to expand the scope of the initial phase of discovery significantly—to include not just discovery into the Agreement but *all* of Fastcase's claims— and extend that first phase of discovery into mid-2027, far beyond the expiration date of the Agreement.[4]

6.      This motion followed.

## ARGUMENT

Good cause exists for the Court to enter Alexi's proposed Expedited Discovery Plan, because expedited resolution of the parties' opposing contract claims will promote the just and

---

[3] Alexi does not believe that expert discovery is necessary to resolve liability over a contract dispute, but in the interests of compromise, Alexi would have been willing to entertain a reasonable extension of the schedule to allow for expert reports at Fastcase's request.

[4] Pursuant to Local Civil Rule 7(m), Alexi certifies that its counsel conferred in good faith with counsel for Clio/Fastcase regarding the Expedited Discovery Plan on January 21 and 26-27, 2026. Counsel discussed the scope, timing, and burden of the proposed expedited discovery, and the parties were unable to reach agreement.

efficient litigation and resolution of this case, conserve judicial and party resources, and avoid compounding business harm to Alexi.

Under Federal Rule of Civil Procedure 26(d) and this Court's inherent power to manage its docket this Court may authorize expedited discovery. *E.g.*, *Disability Rts. Council v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006). "This district has applied a 'good cause' standard" to determine whether expedited discovery is warranted, *Malibu Media, LLC v. Doe*, 308 F. Supp. 3d 235, 237 (D.D.C. 2018); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (noting the good-cause standard is best suited to "the Court's broad discretion in handling discovery") (quoting *Guttenberg v. Emery*, 26 F.Supp.3d 88, 97–98 (D.D.C.2014)); *see also In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005).

Good cause exists when the need for expedited discovery, in consideration with the administration of justice, outweighs the prejudice to the responding party. *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1049–50 (N.D. Iowa 2008) (collecting district court cases). To determine whether good cause exists to expedite discovery into a particular claim or issue, courts apply a reasonableness standard.[5] "Under the reasonableness test, courts consider the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances." *Disability Rights Council*, 234 F.R.D. at 6. As non-exhaustive "guidelines" for

---

[5] Courts in this District and elsewhere have rejected the *Notaro* test for expedited discovery that was tied to a showing of immediate irreparable harm, because the reasonableness approach is "more suited to the application of the Court's broad discretion in handling discovery." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014); *New Mexico v. Musk*, 770 F. Supp. 3d 192, 198 (D.D.C. 2025) ("In this district, courts favor the reasonableness test because it better reflects their broad discretion over discovery matters."); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002) (rejecting *Notaro* because, among other reasons, it "would not accommodate expedited discovery in circumstances even where such discovery would facilitate case management and expedite the case with little or no burden to the defendant, simply because the plaintiff would not suffer 'irreparable injury,'" a result "inconsistent not only with Rule 26(d) . . . but also the overarching mandate of Rule 1").

the exercise of its broad discretion when evaluating whether expedited discovery is reasonable under the circumstances, courts consider, *inter alia*: (1) the breadth or scope of the discovery requests; (2) the purpose for requesting the expedited discovery; and (3) the burden on the opposing party to comply with the request.  *Attkisson*, 113 F. Supp. 3d at 162.

Each of these considerations weighs in favor of Alexi's Expedited Discovery Plan.

## A.     Alexi Seeks Targeted Discovery Over the Parties' Opposing Contract Claims

Alexi's Expedited Discovery Plan is narrowly tailored to the limited universe of information necessary to resolve liability over the parties' opposing contract breach claims.  The Expedited Discovery Plan is limited in scope and timing to the extrinsic and course-of-dealing evidence necessary to resolve the parties' competing claims over breach of the Agreement.[6] Under that plan, the parties would conduct targeted document discovery and depositions between February and May 2026; file partial cross-motions for partial summary judgment in May 2026; and set a hearing on those motions in early July 2026 (or at the Court's direction).  Importantly, the discovery plan is a modest expansion of the discovery that the parties already agreed to undertake in connection with the preliminary injunction proceedings.  *See supra* Section C.

This Court has endorsed expedited and issue-specific discovery in lieu of a preliminary injunction under similar circumstances.  *E.g.* Notice of Withdrawal of Motion for a Preliminary Injunction & Motion for Expedited Briefing Schedule, *Ass'n for Cmnty. Aff. Plans v. U.S. Dep't of Treas.*, ECF No. 28, 18-c-02133 (D.D.C. Nov. 7, 2018) (allowing plaintiffs to withdraw preliminary injunction and proceed to expedited decision on the merits due to time sensitive

---

[6] Alexi has included, within the scope of its Expedited Discovery Plan, Alexi's counterclaims that Fastcase violated the duty of good faith and fair dealing and that Clio and vLex induced Fastcase to breach the agreement, *see* Dkt. 48, ¶¶ 174–80, 192–96, because those claims are inextricably intertwined with the question of breach.

nature of the dispute and because "the parties' briefing on the merits [was] likely to be substantially similar to their preliminary injunction briefing," the schedule "would not impose an undue burden on either party").

Here, the parties' competing contract claims are well-suited for expedited discovery and early motions for summary judgment because they raise discrete, threshold questions about the proper interpretation of the Agreement—which involve questions of law that this Court may resolve on summary judgment by construing the Agreement and after targeted discovery into relevant extrinsic evidence. *E.g. Tillery v. D.C. Contract Appeals Bd*., 912 A.2d 1169, 1176 (D.C. 2006) (questions of whether contract provisions are ambiguous and contract interpretation questions are questions of law); *B & H Nat'l Place, Inc. v. Beresford*, 850 F. Supp. 2d 251, 257–59 (D.D.C. 2012) (resolving contract dispute on summary judgment).

Courts routinely resolve contract claims at the summary judgment stage, even when, as here, the parties disagree on the proper interpretation. *Whiting v. AARP*, 701 F. Supp. 2d 21 (D.D.C. 2010), *aff'd,* 637 F.3d 355 (D.C. Cir. 2011); *Silver v. Am. Safety Indem. Co.*, 31 F. Supp. 3d 140, 146–48 (D.D.C. 2014); *Washington Props., Inc. v. Chin, Inc*., 760 A.2d 546, 550 (D.C. Cir. 2000); *Katopothis v. Windsor-Mount Joy Mut. Ins. Co.*, 905 F.3d 661, 668 (D.C. Cir. 2018). Even if the Court finds the disputed provisions ambiguous, it still may resolve contract interpretation questions as a matter of law at the summary-judgment stage "if extrinsic evidence demonstrates that only one view of the contract is reasonable." *Holland v. Freeman United Coal Mining Co.*, 574 F. Supp. 2d 116, 130 (D.D.C. 2008) (citation modified) (quoting *Farmland Indus., Inc. v. Grain Bd. of Iraq*, 904 F.2d 732, 736 (D.C. Cir. 1990)).

Accordingly, with narrowly targeted expedited discovery, the parties can entirely resolve—or at minimum substantially narrow and streamline—the key threshold issue in the case, namely, which party breached the Agreement.[7]

**B.      Expedited Discovery Will Promote Efficiency and Mitigate the Risk of Substantial and Mounting Business Harm to Alexi**

Alexi has a strong purpose supporting the Expedited Discovery Plan for two reasons: (1) expedited discovery in these circumstances is the most efficient mechanism for litigating this case, for not just Alexi but for both parties; and (2) expedited discovery will avoid substantial business harm to Alexi.

First**,** the parties' contract claims, based on differing interpretations of the same Agreement, are a "pivotal" threshold issue for both sides.  Ann. Manual Complex Lit. § 11.422 (4th ed. 2025) ("For effective discovery control, initial discovery should focus on matters . . . that appear pivotal.").  By providing a procedure for litigating and resolving at the outset which party breached the Agreement, the Expedited Discovery Plan will substantially narrow the issues in dispute.  The parties' other claims hinge, in whole or in part, on the question of which party breached the Agreement.[8]  For example, Clio's IP claims—under trademark and trade secret law—depend on Clio first proving that Alexi's access was not authorized under the Agreement.  *See, e.g.*, *Strobos v. RxBio, Inc.*, 251 F. Supp. 3d 221, 232 (D.D.C. 2017) (trade

---

[7] Even if material factual disputes prevent the Court from resolving the contract claims on summary judgment, expedited discovery is still the most efficient procedure.  It will allow the parties to discover the relevant extrinsic evidence and the Court to rule on questions of law about the meaning of the Agreement, teeing up any remaining factual disputes for the jury.

[8] Alexi's Clayton Act claim is an exception, because that claim turns on whether, post-merger, Clio will have the ability and incentive to foreclose rivals from a critical input (the Fastcase comprehensive primary-law database).  That claim does not depend on the resolution of the contract breach claims, although resolving the breach allegation is still relevant and resolving it may narrow the issues for the antitrust claim as well.

secret misappropriation must be without consent); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1307 (11th Cir.1998) (same for trademark infringement).  If Alexi proves that its use of the Fastcase caselaw data was permitted under the Agreement, then Fastcase's IP claims fail; conversely, if Fastcase proves that Alexi breached the Agreement, that will remove contractual authorization as a defense to the IP claims.  Damages discovery likewise will be substantially narrowed and streamlined by the predicate ruling on the contract breach.  By phasing and expediting discovery of the contract claims, both parties can avoid needless and expensive litigation over issues that may be moot.

In addition, the resolution of the contract breach claims may provide an inflection point that could allow the parties to resolve the case.  Ann. Manual Complex Lit. § 11.422 ("As the litigation proceeds, this initial discovery may render other discovery unnecessary or provide leads for further necessary discovery.  Initial discovery may also be targeted at information that might facilitate settlement discussions or provide the foundation for a dispositive motion.").  As one example, before Clio's lawsuit, Alexi was in serious discussions for an acquisition, based in part on the valuable "backfile" purchase option in the Agreement.  Dkt. 48, ¶¶ 121–22.  If Alexi prevails in showing that it was Fastcase—not Alexi—that breached the Agreement, that will clear up the cloud of uncertainty created by Clio's lawsuit and allow Alexi to proceed with a potential acquisition.

Second, not only are the contract issues pivotal, but expedited discovery is especially appropriate here because resolving them expeditiously is critical for Alexi's business to survive as a tech startup.  Although Alexi has taken drastic steps to avoid short-term insolvency and withdrawn its preliminary injunction motion, Alexi still faces substantial and mounting business harm that provides good cause for expedited discovery into the contract issues. *Ent. Tech. Corp.*

9

*v. Walt Disney Imagineering*, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003) ("Whether or not a preliminary injunction hearing is pending, then, has become one factor to be evaluated among many, rather than an outcome determinative fact.").

Since the Court issued its December 18 Order, Dkt. 28, Alexi has laid off two-thirds of its employees, Dkt. 48 ¶ 125, and cut non-core operating expenses to the bone—including eliminating 90% of the marketing budget that Alexi uses to reach and acquire new customers. Nevertheless, Alexi is now facing business harms that will compound the longer that Fastcase's contract breach claim remains unresolved. Up until Fastcase's lawsuit, Alexi was engaging in serious discussions with potential acquirers, *id.* ¶¶ 117–22, pursuing Series B funding, and working on a pipeline of deals with an increasing number of law firm customers to use Alexi's tools, including its U.S. law legal analysis memos. The cloud of litigation and Fastcase's breach allegations have severely impaired all of those efforts—and Alexi expects that an increasing number of existing and potential clients will drop the service or not sign up due to this litigation and Fastcase's ongoing refusal to provide the daily data updates required under the Agreement on the basis that clients will be unwilling to spend time and money adopting Alexi's service knowing there is a possibility that Alexi's U.S. legal analysis memos will no longer exist in its current form. And what is more, ███████████████████████████████████
████████████████████████████████████████████████████████████
█████████████████████████████████████████████

In short, so long as there is an unresolved claim that Alexi has breached its Agreement with Fastcase (notwithstanding that it is unfounded) and Fastcase withholds the required daily

---

9 ██████████████████████████████████████████████████████████████████████

data updates, Alexi cannot grow its business or attract investments it needs to survive as a tech startup, and it faces a looming threat of irreparable harm that could jeopardize its entire business.

### C.    The Counterclaim Defendants Will Face No Prejudice from Expedited Discovery

Finally, the Expedited Discovery Plan will not prejudice Clio.  On the contrary, Clio will **benefit** from expedited discovery, as prompt resolution of the threshold contract issue "is in the best interest of all parties."  *Musk*, 770 F. Supp. 3d at 203.  Clio does dispute that the contract breach claims are a pivotal threshold issue for both sides.  And Clio brought this lawsuit in the first place and has alleged (without basis) that Alexi is using the Fastcase caselaw data in a way that violates the Agreement and Fastcase's IP rights—it presumably has an interest in resolving the core contractual authorization issue as quickly as possible.

The Expedited Discovery Plan is also a minimal expansion of the discovery the parties were preparing to conduct in connection with the renewed preliminary injunction motion.   And now, under the plan, the parties can litigate that contract breach issue on the merits—rather than doing so provisionally with respect to the preliminary injunction and then all over again in the underlying case.  In sum, the Expedited Discovery Plan not only won't prejudice Clio—it is more efficient for both parties and for the Court.

### CONCLUSION

For the foregoing reasons, Alexi respectfully requests that the Court enter the Expedited Discovery Plan attached to this motion as Exhibit A.

Dated: January 29, 2026

Respectfully submitted,

*/s/ Joshua Hafenbrack*
Joshua Hafenbrack (DC Bar No. 1017128)
Benjamin L. Rudofsky (DC Bar No. 1029844)
Allie A. Dodd (*Pro Hac Vice*)
Melissa A. Iannuzzi (*Pro Hac Vice*)
WINSTON & STRAWN LLP
1901 l Street NW
Washington D.C. 20036
Telephone: (202) 282-5000
jhafenbrack@winston.com
brudofsky@winston.com
adodd@winston.com
miannuzzi@winston.com

Johanna Rae Hudgens (*Pro Hac Vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6734
jhudgens@winston.com
*Counsel for Defendant/Counterclaim-Plaintiff,
Alexi Technologies Inc.*