**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FASTCASE, INC.<br><br>Plaintiff,<br><br>v.<br><br>ALEXI TECHNOLOGIES INC.<br><br>Defendant. | C.A. No. 1:25-CV-04159-RJL<br><br>**ALEXI TECHNOLOGIES INC.'S ANSWER AND AMENDED COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED** |
| ALEXI TECHNOLOGIES INC.<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>FASTCASE, INC., VLEX, LLC, & THEMIS SOLUTIONS INC.,<br><br>Counterclaim Defendants. | |

Pursuant to Federal Rules of Civil Procedure 8(b), 8(c) and 13, Defendant and Counterclaim Plaintiff Alexi Technologies Inc. ("Alexi"), answers this Complaint from Plaintiff and Counterclaim Defendant Fastcase, Inc. ("Fastcase") and asserts the following Affirmative Defenses and Counterclaims.

## ANSWER

## NATURE OF THE ACTION

1. Alexi admits Fastcase merged with vLex in 2023, which was acquired by Clio, Inc. in November 2025. Alexi otherwise lacks information sufficient to admit or deny these allegations, and so denies them.

2. Alexi admits that it is a legal technology company founded in 2017 that uses artificial intelligence to prepare legal memoranda for its customers and has employed a team of research attorneys. Alexi otherwise denies the allegations in this paragraph.

3. This paragraph contains legal conclusions to which no response is required. Alexi admits that the Parties entered into a Data License Agreement in late 2021 and denies the allegations in this paragraph that purport to characterize the Agreement, which speaks for itself. Otherwise, denied.

4. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph about the Fastcase database, and so denies them. Alexi denies the allegations in this paragraph that purport to characterize the Agreement, which speaks for itself, and denies that is misused Fastcase data.

5. Alexi admits that, after entering into the Agreement in December 2021, the Parties explored a deeper partnership in 2022. Alexi denies that its technology is or was a so-called "passage-retrieval AI system." Alexi admits that Fastcase and vLex merged. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegation that Fastcase "expanded its own research offerings" and therefore denies it.

6. Denied.

7. Denied.

8. Denied.

9. Denied.

10. Denied.

11. Denied.

**PARTIES, JURISDICTION, AND VENUE**

12. Admitted.

13. Admitted.

14. This paragraph contains legal conclusions to which no response is required. Otherwise, admitted.

15. This paragraph contains legal conclusions to which no response is required. Otherwise, admitted.

16. This paragraph contains legal conclusions to which no response is required. Alexi denies that it has caused injury to Fastcase in this District and denies that it has engaged in any conduct in violation of the Agreement or law. Alexi admits that this Court has personal jurisdiction over Alexi.

17. This paragraph contains legal conclusions to which no response is required. Alexi lacks information sufficient to admit or deny the allegation that "Fastcase manages the collection of its data in this District," and so denies it. Alexi denies that Fastcase has suffered economic or reputational injuries as a result of Alexi's conduct. Alexi admits venue is proper in this district.

18. This paragraph contains legal conclusions to which no response is required. Alexi admits it is a foreign corporation.

19. This paragraph contains legal conclusions to which no response is required. Alexi admits that the Agreement, which speaks for itself, includes the quoted provision.

## FACTUAL BACKGROUND

### *Fastcase and Alexi occupied different roles in the legal-technology space.*

20. Alexi lacks sufficient information to admit or deny these allegations, and so denies them.

21. Alexi lacks sufficient information to admit or deny these allegations, and so denies them.

22. Denied.

23. Denied.

24. The allegations in this paragraph lack sufficient particularity, including as to time frame, for Alexi to respond, and so Alexi denies them. Alexi admits that, in 2019, human lawyers reviewed the legal memoranda generated by AI before they were sent to law firm clients. Alexi denies that its service "relied heavily" on human lawyers.

25. Denied.

26. The allegations in this paragraph are vague with respect to "this business model" and thus lack sufficient particularity for Alexi to respond, and so Alexi denies them. The second sentence in this paragraph quotes one statement from a video, which speaks for itself. Otherwise, denied.

27. This paragraph quotes one portion of an interview, which speaks for itself. Alexi denies that Alexi's work product "depended substantially on human labor" as of 2021 and denies that Mr. Doble "confirmed" as much.

28. This paragraph quotes from and characterizes an interview, which speaks for itself. Otherwise, denied.

29. To the extent this paragraph is based on and characterizes an interview, the interview speaks for itself. Otherwise, the allegations in this paragraph are vague with respect to "this period" and thus lack sufficient particularity for Alexi to respond, and so Alexi denies them. Otherwise, denied.

30. Alexi admits that its service differs significantly from Fastcase's and that one of its offered products is legal research memoranda. Alexi admits that Fastcase provides an online law library platform with primary and secondary sources, where users can conduct searches. Alexi denies the remainder of allegations in this paragraph.

***Fastcase and Alexi enter a restricted license for "internal research."***

31. The allegations in this paragraph about a "small base fee" lack sufficient particularity for Alexi to respond, and so Alexi denies them. Otherwise, admitted.

32. This paragraph purports to quote from a document, which speaks for itself. Admitted that, in 2021, Fastcase's CEO stated in part that "supporting the legal tech ecosystem is an important part of who we are." Otherwise, denied.

33. This paragraph quotes from a document, which speaks for itself. Otherwise, denied.

34. Admitted.

35. This paragraph quotes portions of the Agreement, which speaks for itself. Otherwise, denied.

36. This paragraph quotes portions of the Agreement, which speaks for itself. Otherwise, denied.

37. This paragraph quotes portions of the Agreement, which speaks for itself. Otherwise, denied.

38. This paragraph quotes portions of the Agreement, which speaks for itself. Otherwise, denied.

39. Alexi denies that undefined "limitations" were "fundamental to the Parties' deal." Alexi otherwise lacks sufficient knowledge to admit or deny the allegations, and so denies them.

40. This paragraph contains legal conclusions to which no response is required, and purports to characterize the Agreement, which speaks for itself. Otherwise, Alexi lacks sufficient knowledge to admit or deny the allegations, and so denies them.

41. This paragraph contains legal conclusions to which no response is required. Alexi lacks sufficient knowledge to admit or deny the allegations, and so denies them.

42. This paragraph contains legal conclusions to which no response is required and purports to characterize the Agreement, which speaks for itself. Otherwise, denied.

43. This paragraph contains legal conclusions to which no response is required and purports to characterize the Agreement, which speaks for itself. Otherwise, Alexi lacks sufficient knowledge to admit or deny the allegations, and so denies them.

***Fastcase and Alexi consider a partnership.***

44. Admitted.

45. Admitted.

46. This paragraph appears to quote from a document, which speaks for itself. Otherwise, denied.

47. Alexi admits that the additional partnership between Alexi and Fastcase that the parties contemplated in 2022 never materialized and that Fastcase subsequently merged with vLex in 2023. Alexi lacks information sufficient to admit or deny the allegations that vLex is "a leading global technology company" and "a comprehensive research platform comparable to LexisNexis" and so denies them.

48. Alexi admits that the Agreement remained in force. Otherwise, Alexi lacks sufficient knowledge to admit or deny the allegations, and so denies them.

***Alexi begins competing with Fastcase's core services.***

49. This paragraph appears to purport to quote from a document or recording, which speaks for itself. The allegations in this paragraph lack sufficient particularity for Alexi to respond, and so Alexi denies them.

50. This paragraph appears to purport to quote from a document, which speaks for itself. Alexi denies that it used only "internal AI" as of 2023 and denies any implication that, after 2023, it changed its "business model" or began to "deliver primary law directly to end users."

Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations regarding "Fastcase's understanding at the time" and therefore denies them. Otherwise, Alexi denies the allegations in this paragraph.

51. Denied.

52. This paragraph quotes one statement from a LinkedIn post, which speaks for itself. Otherwise, denied.

53. This paragraph quotes statements from a LinkedIn post, which speaks for itself. Denied that Mr. Doble "endorsed" the LinkedIn review quoted in paragraph 52.

54. Denied.

55. Alexi admits that it "raised approximately $11 million USD in a Series A financing" and that Alexi competes with vLex, which is not a party to the Agreement, for certain products or services. Otherwise, denied.

56. Admitted that the Agreement between Alexi and Fastcase did not change between 2021 and 2024. Otherwise, denied.

57. Denied.

58. This paragraph quotes from a recording, which speaks for itself. Otherwise, denied.

59. This paragraph characterizes a video recording, which speaks for itself. Otherwise, denied.

60. This paragraph characterizes a video recording, which speaks for itself. Otherwise, denied.

61. Denied.

62. Denied.

63. Denied.

64. The allegations in this paragraph are vague with respect to "around the same time" and "document analysis, case-management tools, and other litigation and transactional products" and thus lack sufficient particularity for Alexi to respond. Alexi states that it offers a number of features that do not use Fastcase data. Alexi denies any implication that these features violate the Agreement.

65. This paragraph purports to quote from a recording of an interview, which speaks for itself. Otherwise, denied.

66. This paragraph purports to quote from a recording, which speaks for itself. Otherwise, denied.

67. Denied.

68. Denied.

***Fastcase discovers Alexi's breach and takes action.***

69. This paragraph purports to quote from a document, which speaks for itself. Alexi admits that Clio announced its acquisition of vLex and Fastcase in June 2025. Otherwise, Alexi lacks information sufficient to admit or deny these allegations, and so denies them.

70. Alexi admits that it received a document entitled "Notice of Material Breach" from vLex on October 27, 2025. Otherwise, this paragraph quotes from a document, which speaks for itself, and so denies the remaining allegations in this paragraph.

71. Admitted.

72. Alexi admits that its counsel sent a response letter on November 3, 2025. This paragraph includes selected quotes from that document, which speaks for itself. Otherwise, denied.

73. This paragraph quotes from a document, which speaks for itself, and contains legal conclusions to which no response is required. To the extent a response is required, denied.

74. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

75. Alexi admits that 30 days have passed since it received Fastcase's letter alleging material breach. Otherwise, this paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Alexi denies that it has "failed" and "refused" to "cure" the alleged breach, as Alexi has not violated the Agreement.

76. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Alexi admits that Fastcase has purported to terminate the Agreement for cause but denies that its termination was valid or effective.

## FIRST CLAIM FOR RELIEF
***(Breach of Contract)***

77. Alexi repeats and incorporates by reference its Answers to paragraphs 1-76.

78. Alexi admits that the Agreement is valid and enforceable. Otherwise, this paragraph contains legal conclusions to which no response is required.

79. This paragraph references and quotes from the Agreement, which speaks for itself. Otherwise, this paragraph contains legal conclusions to which no response is required, and denies the remaining allegations in this paragraph.

80. This paragraph quotes from the Agreement, which speaks for itself. Otherwise, this paragraph contains legal conclusions to which no response is required, and denies the remaining allegations in this paragraph.

81. This paragraph appears to purport to quote from the Agreement, which speaks for itself. To the extent that a response is required, denied.

82. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

83. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

84. This paragraph and subparagraphs contains legal conclusions to which no response is required. To the extent that a response is required, denied.

85. This paragraph appears to purport to quote from a document, which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

86. This paragraph quotes from a document, which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, denied.

87. This paragraph quotes from a document, which speaks for itself, and contains legal conclusions to which no response is required. To the extent that a response is required, denied.

88. Denied.

89. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

90. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

91. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

92. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

93. Alexi denies the factual allegations underlying this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

## SECOND CLAIM FOR RELIEF
***(Trademark Infringement of Registration Nos. 2,917,596 and 4,462,387 (15 U.S.C. § 1114))***

94. Alexi repeats and incorporates by reference its Answers to paragraphs 1-93.

95. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

96. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

97. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

98. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

99. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

100. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

101. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

102. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

103. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

104. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

105. The allegations in this paragraph lack sufficient particularity for Alexi to respond, and Alexi denies them. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

106. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Alexi denies that it engaged in any "unauthorized use of the 'Fastcase' marks." Otherwise, the allegations in this paragraph lack sufficient particularity for Alexi to respond, and so Alexi denies them.

107. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

108. Alexi states that the parties entered into the Agreement. Otherwise, the allegations in this paragraph lack sufficient particularity for Alexi to respond, and so Alexi denies them. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

109. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

110. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

111. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

112. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

**THIRD CLAIM FOR RELIEF**
***(Misappropriation of Trade Secrets (18 U.S.C. § 1836 et seq.))***

113. Alexi repeats and incorporates by reference its Answers to paragraphs 1-112.

114. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

115. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

116. Alexi denies the factual allegations in this paragraph. Otherwise, Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

117. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

118. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

119. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and subparagraphs and therefore denies them.

120. Alexi admits that the Parties entered into an agreement regarding certain Fastcase primary-caselaw data. This paragraph contains legal conclusions and purports to characterize the Agreement, which speaks for itself. Otherwise, denied.

121. Alexi denies the factual allegations in this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

122. Alexi denies the factual allegations in this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

123. Alexi denies the factual allegations in this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

124. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

125. Alexi denies the factual allegations in this paragraph. This paragraph quotes from and characterizes a document, which speaks for itself, and contains legal conclusions to which no response is required. To the extent that a response is required, denied.

126. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

127. Alexi denies the factual allegations in this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

128. Alexi denies the factual allegations in this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

129. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

## FOURTH CLAIM FOR RELIEF

***(Misappropriation of Trade Secrets (D.C. Code Ann. § 36-401 et seq.))***

130. Alexi repeats and incorporates by reference its Answers to paragraphs 1-129.

131. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

132. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

133. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

134. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

135. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and subparagraphs and therefore denies them.

136. Alexi admits that the Parties entered into an agreement regarding certain Fastcase primary-caselaw data. This paragraph purports to characterize the Agreement, which speaks for itself. Otherwise, denied.

137. Alexi denies the factual allegations in this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

138. Alexi denies the factual allegations in this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

139. Alexi denies the factual allegations in this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

140. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

141. This paragraph quotes from a document, which speaks for itself, and contains legal conclusions to which no response is required. To the extent that a response is required, denied.

142. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

143. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

144. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

145. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

**FIFTH CLAIM FOR RELIEF**
***(False Designation of Origin and Unfair Competition in Violation of the Lanham Act (15 U.S.C. § 1125(a)))***

146. Alexi repeats and incorporates by reference its Answers to paragraphs 1-145.

147. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

148. This paragraph appears to purport to characterize documents, which speak for themselves. Otherwise, denied.

149. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

150. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

151. Alexi lacks sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies them.

152. Alexi denies the factual allegations in this paragraph. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

153. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

154. This paragraph contains legal conclusions to which no response is required. To the extent that a response is required, denied.

## JURY DEMAND

155. No response required.

## PRAYER FOR RELIEF

156. Alexi denies that Fastcase is entitled to the relief requested.

157. Alexi denies that Fastcase is entitled to the relief requested.

158. Alexi denies that Fastcase is entitled to the relief requested.

159. Alexi denies that Fastcase is entitled to the relief requested.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Alexi respectfully requests a jury trial on all issues so triable, including, without limitation, on Fastcase's claims and Alexi's defenses to those claims.

## ALEXI'S AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to all claims and causes of actions alleged in the Complaint, Alexi alleges as follows:

### First Affirmative Defense
### (Failure to State a Claim)

Plaintiff's claims are barred, in whole or in part, because Fastcase fails to sufficiently state a claim upon which relief may be granted.

**Second Affirmative Defense**
**(Waiver/Estoppel)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff, by virtue of its own conduct, has waived and/or is estopped from asserting any of the claims upon which it seeks relief.

**Third Affirmative Defense**
**(Statute of Limitations)**

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

**Fourth Affirmative Defense**
**(Failure to Identify Valid Trade Secrets)**

Plaintiff's trade secret misappropriation claims are barred, in whole or in part, because Plaintiff has failed to identify and describe any valid trade secrets with sufficient particularity.

**Fifth Affirmative Defense**
**(Alleged Trade Secrets Known or Readily Ascertainable)**

Plaintiff's trade secret misappropriation claims are barred, in whole or in part, because Plaintiff's alleged trade secrets are known or readily ascertainable by the relevant industry and/or persons who could obtain economic value, if any, from their information.

**Sixth Affirmative Defense**
**(Damages Speculative)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages and injury, if any, are purely speculative and impossible to prove or allocate with reasonable certainty.

**Seventh Affirmative Defense**
**(Failure to Mitigate)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to mitigate its alleged damages. Alternatively, any damages sustained by Plaintiff, which Alexi denies, must be reduced by the amount that such damages would have been reduced had Plaintiff exercised reasonable diligence in mitigating its damages.

**Eighth Affirmative Defense**
**(Unjust Enrichment)**

Plaintiff's claims are barred, in whole or in part, because if Plaintiff recovers any damages or other relief from Alexi, it would be unjustly enriched.

**Ninth Affirmative Defense**
**(Laches)**

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, as Plaintiff waited an unreasonably long time to file this lawsuit, and Alexi's ability to defend the lawsuit has been prejudiced as a result.

**Tenth Affirmative Defense**
**(Acquiescence)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff acquiesced to some or all of the actions alleged in the Complaint.

**Eleventh Affirmative Defense**
**(Injunctive Relief)**

Plaintiff's claims for injunctive relief are barred, in whole or in part, because Plaintiff has failed to state facts sufficient to provide a legal or factual basis to award injunctive relief, and Plaintiff has adequate remedies at law.

**Twelfth Affirmative Defense**
**(Attorneys' Fees Improper)**

Plaintiff's claims for attorneys' fees are barred, in whole or in part, because Plaintiff fails to state a cause of action or set forth facts sufficient to support a claim for attorneys' fees.

**Thirteenth Affirmative Defense**
**(Privilege of Competition)**

Plaintiff's claims are barred, in whole or in part, because the privilege of competition and other privileges available under state law bar Plaintiff from pursuing its claims for relief.

**Fourteenth Affirmative Defense**
**(Unconscionability / Public Policy)**

Plaintiff's claims are barred, in whole or in part, because its acts are unconscionable and/or in violation of public policy.

**Fifteenth Affirmative Defense**
**(Fair Use)**

Plaintiff's claims are barred, in whole or in part, because Alexi's conduct constituted fair use.

**Sixteenth Affirmative Defense**
**(Implied License)**

Plaintiff's claims are barred, in whole or in part, by the doctrine of implied license.

**Seventeenth Affirmative Defense**
**(Indefinite Terms)**

Plaintiff's claims are barred, in whole or in part, because the contract contains indefinite and uncertain terms.

**Eighteenth Affirmative Defense**
**(Unclean Hands)**

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands, which demands that a plaintiff act equitably and in good faith in the matter for which it seeks a remedy. As Plaintiff's allegations are in furtherance of its unlawful scheme to eliminate competition, Plaintiff is barred from seeking relief.

**Nineteenth Affirmative Defense**
**(No Damages)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered any damages or injury.

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES

Alexi does not presently know all facts concerning Fastcase's conduct and claims and thus lacks a sufficient basis to form a belief as to whether it may have additional, as yet unstated, defenses. Alexi accordingly reserves the right to assert additional defenses in the event that discovery or investigation reveals that they would be appropriate.

## ALEXI'S AMENDED COUNTERCLAIMS

## INTRODUCTION

1. Alexi Technologies Inc. ("Alexi") brings these counterclaims to halt an accelerating campaign by Clio and its affiliates that culminated in baseless litigation designed to extinguish a formidable competitor in AI legal research by starving it of the critical input required to compete. What began as a productive partnership between Alexi and Fastcase—long a champion of open, public access to the law—shifted abruptly after Clio announced its billion-dollar acquisition of vLex/Fastcase. Having publicly touted the acquisition as giving Clio control over one of only three comprehensive legal databases in the world, Clio discovered that Alexi had a contract guaranteeing any Alexi acquirer the right to purchase that same comprehensive legal database without restrictions for a mere [redacted]. When Alexi did not submit to Clio's pressure to agree to give up that bargained-for right for absolutely nothing in return, Counterclaim Defendants immediately [redacted] by claiming a breach and weaponizing this Court by filing litigation against Alexi under Fastcase's name. These objectively baseless claims, and Clio's actions to scare away potential Alexi investors who could exercise the purchase right, has caused immediate and continuing harm to Alexi's business. Counterclaim Defendants know that Alexi has not breached its agreement with Fastcase but are counting on this litigation lasting long enough that Alexi will succumb to these injuries and cease operations, resulting in what Clio has wanted all along: eliminating competition from the market.

2. Alexi is a legal technology company founded to fully automate legal research memos through proprietary AI models, delivering fast, reliable, and comprehensive memoranda for law firms and experts. Since launching its core "Alexsei Memos" product, Alexi's AI has evolved from human-assisted outputs to fully automated, lawyer-calibrated memos that cite authoritative and verifiable case law at a fraction of the cost of traditional research.

3. Alexi's approach, cost, and resulting product make it a maverick in the fast-developing world of generative AI. Unlike general-purpose chatbots that hallucinate and lack authoritative primary-law access, Alexi grounds analysis in comprehensive caselaw and a continuously finetuned AI model that is trained not on pattern recognition but on Alexi's legal expertise. Just as important to its law firm clients, Alexi also provides private, siloed cloud environments that safeguard client confidentiality and attorney work product. More than 500 firms across the United States and Canada have trusted Alexi and its legal AI memos.

4. Reliable legal analysis requires comprehensive caselaw, including historical and unpublished decisions, and legal AI tools require caselaw via programmatic means suitable for algorithmic research at scale. There are only three comprehensive, historical primary-law databases in the world: Westlaw (owned by Thomson Reuters), LexisNexis, and Fastcase/vLex (now owned by Clio).

5. For years, Fastcase distinguished itself by promoting broad access to the law, enabling public links to cases and championing programmatic licensing to support the legal-tech ecosystem. In the words of Fastcase Founder and CEO Ed Walters: "Our team at Fastcase has always said that law should be like electric power: nearly ubiquitous, inexpensive, reliable, and useful for powering other things." Consistent with that philosophy, on December 6, 2021, the parties executed a Data License Agreement (the "Agreement") under which Alexi received raw,

programmatic caselaw data from Fastcase. Alexi transformed the raw case text into a coded, model-specific format with proprietary legal analysis that would permit Alexi's internal AI research to generate legal memos for its customers. The Fastcase license facilitated Alexi's groundbreaking innovations in AI-powered legal analysis.

6. The Agreement also provided a crucial acquirer safeguard: upon an Alexi acquisition or change of control, the acquirer "will have the option *to purchase the Fastcase backfile with no restrictions* for [redacted]," a right that survives termination.

7. Alexi's contractual backfile purchase right is a unique asset in the legal tech world. Recreating a comprehensive, historical caselaw corpus (one including unpublished opinions and comprehensive coverage going back many decades before judicial opinions were digitized) would require years or decades of manual effort and massive investment. The Alexi backfile purchase right would allow an acquirer to immediately obtain the full Fastcase database without restrictions for just [redacted]—and thus create a fourth comprehensive primary-law database (in addition to WestLaw, Lexis, and Fastcase). Simply put, the backfile right is the only realistic foothold for a competitor to create a new comprehensive primary-law database and use that database to advance competition to the benefit of lawyers, law firms, and their clients.

8. For nearly four years, including after Fastcase merged with vLex, the parties operated without incident under a shared understanding that Alexi used Fastcase data internally to generate AI memos for customers. Fastcase and vLex celebrated Alexi's achievements: In 2023, vLex named Alexi's CEO, Mark Doble, a "Fastcase 50" honoree for creating an AI tool trained on more than 30 million question-and-answer pairs that "swiftly delivers answers in a clear, concise memo format." The parties' communications show a clear mutual respect for each other and a genuine desire for AI to expand its usefulness in the legal profession.

9. This all changed on a dime once Clio gained control over the Fastcase database. On June 30, 2025, Clio announced its $1 billion acquisition of vLex/Fastcase, touting control of "the world's most powerful legal intelligence program," and completed the deal in November 2025. As Clio's own CFO candidly put it after the merger, without a comprehensive dataset of primary caselaw of their own, "competitors are going to find it increasingly difficult to compete against that database."

10. [redacted] which it knew could enable an Alexi acquirer to create a fourth comprehensive database (with Alexi's industry-leading AI-analysis functionality) at comparatively low cost and thereby undermine Clio's post-merger market power. Clio's top executives demanded that Alexi eliminate the backfile right, despite offering nothing in return. vLex passed along this demand on behalf of Clio and, when Alexi's CEO asked what would happen if Alexi did not agree to relinquish its bargained-for rights under the agreement, Mr. Walters, in his new role as vLex's Chief Strategy Officer, warned there "would be trouble."

11. And trouble there was. Within days, at Clio's direction and contrary to years of course-of-dealing between the parties, vLex claimed for the first time that Alexi's long-standing AI memo service violated the Agreement. Shortly thereafter, Fastcase purported to terminate the Agreement and filed suit, alleging breach of contract and IP claims based on the very same AI tool that Fastcase/vLex had celebrated just two years earlier.

12. Having failed to extinguish the backfile purchase right amicably, the objective of the litigation was straightforward: extinguish the backfile by either (1) successfully distorting the plain meaning of the Agreement and the parties' clear intentions by securing a judgment in

Fastcase's favor, or (2) severing Alexi's access to essential data in the form of daily updates and prolonging the case long enough that the cloud of litigation drives Alexi out of business.

13. Initial discovery in this case—as ordered by the Court in conjunction with the expedited proceedings over the contract [redacted] Never once did ***any*** Fastcase or vLex executive express concern about Alexi's AI technology and its use of the Fastcase data prior to [redacted] directive to eliminate the backfile right through a false and manufactured claim of contract breach.

14. Immediately after the litigation was filed and Alexi was served, it suffered irreparable and compounding harm. Customers have cancelled or failed to renew subscriptions to Alexi; discussion with multiple parties regarding a full acquisition, including with one acquirer whose Board had approved a letter of intent for a full acquisition, went cold and have not restarted; and Alexi's growth trajectory, revenue, fundraising prospects, and valuation all have been materially impaired.

15. The harm to competition is equally clear. [redacted]

[redacted]

16. By foreclosing programmatic access to the only comprehensive database available to independent AI providers, Clio raises rivals' costs, deters entry, and stifles innovation—exactly as its executives anticipated when praising the strategic leverage of controlling one of only three comprehensive datasets "on the planet." Absent relief, lawyers and their clients will face fewer choices, higher prices, and slower progress in AI-enabled legal analysis.

17. Clio's abusive tactics, from pressuring Alexi to give up its contractual rights, to filing baseless claims, to cutting off critical updates and sowing fear among customers and potential acquirers, reflect a deliberate plan to neutralize Alexi as a competitor. These counterclaims seek to restore Alexi's rights and its value, protect the only remaining avenue to a fourth comprehensive database, and preserve fair competition so that lawyers and clients can benefit from accurate, fast, and affordable AI legal analysis.

## PARTIES

### I. Counterclaim Plaintiff Alexi Technologies Inc.

18. Counterclaim Plaintiff Alexi Technologies Inc. ("Alexi") is a legal tech startup that has spent the last eight years developing proprietary AI models that produce high quality legal research memoranda for law firms and experts, among other services. Alexi is an Ontario company with a principal place of business in Toronto, Ontario, Canada.

### II. Counterclaim Defendants

19. Counterclaim Defendant Fastcase, Inc. ("Fastcase") is a Delaware corporation with its principal place of business in Washington, D.C.

20. Counterclaim Defendant vLex, LLC ("vLex"), provides a legal reference library of more than one billion documents from more than 100 countries primarily to its customers in Spain,

the United States, and Latin America. vLex is a Spanish corporation with its principal place of business in Miami, Florida.

21. On March 31, 2023, vLex merged with Fastcase and began offering products under the name vLex in global markets and Fastcase in the U.S.

22. Counterclaim Defendant Themis Solutions Inc.—which does business under the trade name "Clio"—licenses a cloud-based practice management system to law firms and increasingly has focused on offering AI tools and services to law firms within its platform. Clio is a foreign corporation with a principal place of business in Burnaby, British Columbia, Canada.

23. In June 2025, Clio announced its acquisition of vLex for $1 billion, which was completed in November 2025 with a combination of investor funding, debt, and equity.

## JURISDICTION & VENUE

24. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different countries and the amount in controversy exceeds $75,000, exclusive of interest and costs.

25. This Court also has federal-question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a), as well as through Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

26. Counterclaim Defendants are subject to personal jurisdiction in this District.

27. Fastcase is headquartered in this District and has consented to this Court's jurisdiction by bringing the present lawsuit.

28. vLex has purposefully availed itself of the jurisdiction of this District by (a) acquiring Fastcase, which is headquartered in this District, in June 2023, and then actively marketing its service in tandem with Fastcase since the acquisition; (b) participating in and directing the conduct that led Fastcase to file and continue this lawsuit in this District, as described

in the factual allegations below, leading to the injury alleged in these counterclaims; and (c) maintaining an office in this District and offering for sale its products and services throughout the United States, including in this District.

29. Clio has purposefully availed itself of the jurisdiction of this District by: (a) acquiring Fastcase, which is headquartered in this District, in November 2025; (b) directing its wholly owned subsidiary, Fastcase, to file and continue this lawsuit, leading to the injury alleged in these counterclaims; (c) and offering for sale its products and services throughout the United States, including in this District. Clio actively markets to legal professionals in Washington, D.C., including through a partnership with the D.C. Bar through which Clio offers discounts to members to promote Clio's legal practice management software.

30. Venue is proper here pursuant to 15 U.S.C. § 22, because this action is brought in part under the antitrust laws and Counterclaim Defendants transact business in this District. Alternatively, venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Alexi's claims occurred here. Fastcase is headquartered in Washington D.C.; both Clio and vLex acquired Fastcase in this District; Fastcase breached the Agreement between Fastcase and Alexi in this District; and Fastcase sued Alexi at Clio's and vLex's direction in this District.

31. Venue is also proper under 28 U.S.C. § 1391(b)(3) and (c)(3) because Clio is a foreign entity subject to suit in any judicial district.

## FACTUAL ALLEGATIONS

### I. Alexi's AI-Powered Innovation in the Legal Field

32. Using traditional research methods, attorneys spend countless hours researching legal questions on databases such as LexisNexis, Westlaw, and Fastcase. Legal memos can often take lawyers days or weeks to draft and cost clients many thousands of dollars. And historically

there has been no way to leverage prior research beyond any single law firm, so lawyers typically start from scratch, with fresh research queries and a blank page. Legal memos, in short, are all too often costly, inefficient, and error-prone.

33. Since its inception in 2017, Alexi has been laser-focused on using AI to address these inefficiencies. Alexi has invested many millions of dollars and dedicated nearly a decade of engineering work into creating and building AI algorithms that produce fast, reliable, and comprehensive legal memos in response to user requests.

34. After several years of development, Alexi launched its first and core product, "Alexsei Memos," in 2021—a product "that fully automates the legal research function within a law firm." Users—typically lawyers at law firms in the United States and Canada—enter legal questions into a simple, intuitive interface. Alexi's AI models would summarize and synthesize legal principles and case law, and one of Alexi's human reviewers would review and edit the outputs generated by the AI. The Alexi user would then receive a comprehensive legal research memo on the question presented within 24 hours, including summaries of relevant and authoritative cases.

35. Through investment and engineering, Alexi has continually improved its AI and LLM algorithms. By 2023, in keeping with the technological leaps that LLMs made over the preceding years, Alexi began offering fully automated, AI generated memos—which the AI generated within minutes without human review.

36. Even as Alexi's technology advanced, Alexi's core user functionality has remained constant. Today, just as when it first launched, the user types a legal question into Alexi, Alexi's AI tools manage the research queue, gather and summarize relevant information, and the AI then generates a memo. Alexi then provides the user with a detailed memo-style summary—with

citations to relevant and authoritative cases—on the question presented, now within 200 seconds. The only thing that changed is, as technology improved, Alexi has largely removed human editing of the memos generated by Alexi's AI from the equation, allowing Alexi to produce memos that are just as accurate in far less time and for a much lower cost.

37. When it comes to AI, reliability and accuracy are essential in the field of law. One researcher recently found more than 490 instances, over a six-month span, in which lawyers cited hallucinated cases in court filings due to the limitations of general-purpose AI services that rely on large language models that do not have access to comprehensive, authoritative caselaw for answering legal questions. Relying on fabricated cases hallucinated by general-purpose AI services can have severe consequences for lawyers and their clients.

38. Alexi is different. Unlike general-purpose AI services, Alexi's AI bases its answers on actual, comprehensive caselaw in the United States. And Alexi's AI machine learning algorithms are trained using human lawyers and engineers that obsess over accuracy. Accordingly, Alexi is far more reliable and less prone to hallucination or error when answering legal questions compared to general AI chatbots.

39. Importantly, Alexi also offers a private cloud environment for each law firm client. Law firms thus completely control their data in their own siloed data cloud. This is an important guardrail in the legal field—where confidentiality and privilege concerns are paramount—that is not offered by general-purpose AI tools.

40. As with any AI service, Alexi is not foolproof. Lawyers must verify the cases cited and described in Alexi's memos and conduct additional research using their own accounts to a primary-law database such as Fastcase. But by harnessing the power of AI, Alexi's service vastly streamlines and improves the memo-drafting process—which has the promise to make legal

services far more efficient and affordable for many millions of American consumers and businesses.

41. As Alexi's AI technology has rapidly advanced, so too has its client base and its revenues (which were increasing steadily prior to this lawsuit). Alexi today is used and trusted by more than 500 law firms in the United States and Canada.

## II. Alexi's Expansion of AI Capabilities and Agreement with Fastcase

### A. The need for comprehensive U.S. caselaw and Fastcase's critical input

42. Much like attorneys, legal AI tools require access to a comprehensive database of caselaw and legal authorities.

43. But unlike human attorneys, legal AI tools require programmatic data access so that the AI software can run automated searches using the database.

44. Only three companies offer comprehensive primary-law databases: (1) Westlaw (owned by Thomson Reuters); (2) LexisNexis; and (3) Fastcase/vLex (now Clio, owned by Themis Solutions, Inc.).

45. As Clio's CFO said after acquiring Fastcase: "There's really three datasets like this on the planet. It's what we have, what Thomson Reuters has, and what LexisNexis has. We think a lot of competitors are going to find it increasingly difficult to compete against that database."[1]

[redacted]

46. Although a fourth company, Casemaker, once also offered a primary-law database, Fastcase acquired Casemaker in January 2021. At the time, Fastcase noted that the companies

---

[1] Josh Scott, *Clio Secures $500-million USD Series G as it Completes vLex Acquisition*, Beta Kit (Nov. 10, 2025), https://perma.cc/U8BP-D7U9.

"share a common mission to democratize the law" and had "taken a similar trajectory in creating an affordable and widely accessible alternative to the global publishers [*i.e.*, Westlaw and Lexis] that dominate American law."[2]

47. The three primary-law databases each contain many millions of published and unpublished cases spanning decades. The Fastcase database contains over "one billion legal documents from more than 100 countries."[3]

48. For many years, Fastcase promoted its mission to provide greater public access to the law. For example, no later than 2017, Fastcase began providing its subscribers with the ability to provide a public link to a case from Fastcase's database, which was accessible to users regardless of whether they were Fastcase subscribers. In contrast, Westlaw and LexisNexis only allow paying subscribers to access cases on their databases.

49. In 2017, Fastcase's Founder and CEO Mr. Walters announced that, by providing public access to cases in Fastcase's database, Fastcase was "trying to make public law more public and useful." Walters said: "Our team at Fastcase has always said that law should be like electric power: nearly ubiquitous, inexpensive, reliable, and useful for powering other things."[4]

50. Consistent with its mission to democratize the law, prior to being acquired by Clio, Fastcase was the only primary-law database that licensed its database on a programmatic basis to legal tech companies in the nascent market for legal AI services. On information and belief, Fastcase licensed its database to multiple other legal AI providers in addition to Alexi, including

---

[2] *Casemaker and Fastcase Merge to Become the Leader in Legal Research and Analytics*, Fastcase (Jan. 5, 2021), https://www.fastcase.com/blog/fastcase-casemaker-merge/.

[3] vLex Team, *Legal Tech Disruptors vLex and Fastcase Merge to Form World's Largest Global Law Library* (Apr. 4, 2023), https://perma.cc/XCE3-VW2V.

[4] *Id.*

ROSS Intelligence; Casetext (which was subsequently acquired by Thomson Reuters/Westlaw); C.S. Disco (or "DISCO"); and vLex and Clio (before they each acquired Fastcase in turn).

**B. Alexi's Agreement with Fastcase**

51. Beginning in roughly 2019, Alexi sought to expand the breadth and depth of its AI legal analysis capabilities.

52. Around that same time frame, Alexi repeatedly and publicly described itself as an AI company whose mission was to fully automate legal memo drafting through AI models.

53. Alexi's public marketing materials from 2019 on described its service as "Legal Memos. On Demand." Alexi touted that its "advanced artificial intelligence platform delivers affordable and high-quality answers to legal questions in memo format" and its "[a]dvanced AI technology reviews and synthesizes millions of documents to ensure you have the most reliable answers to your diverse and complex legal questions."[5]

54. In 2019, Alexi connected with its initial investors through an incubator program (called "Creative Destruction Lab") for private-sector tech startups provided by the University of Toronto. In December 2021 (the same month that Alexi and Fastcase signed the Agreement) Creative Destruction Lab's public website listed Alexi in its "artificial intelligence" stream as a "software platform for small- and medium-sized law firms that leverages machine learning to automate the process of legal-memo writing."[6]

55. To expand its AI legal analysis capabilities, Alexi needed access to a primary-law database with comprehensive caselaw across U.S. jurisdictions.

---

[5] *Legal Memos. On Demand.*, Alexi, https://perma.cc/6H5Y-FGA7.

[6] *Alexsei*, Creative Destruction Lab (Dec. 1, 2021), https://web.archive.org/web/20211201122900/https://creativedestructionlab.com/companies/alexsei/.

56. Alexi reached out to the three providers of comprehensive primary-law databases: Westlaw, LexisNexis, and Fastcase (which had recently acquired Casemaker). Westlaw and Lexis both declined to license their databases to Alexi for programmatic use or to otherwise create a partnership with Alexi's AI technology, leaving Fastcase as the only available option.

**III. The 2021 Data License Agreement**

57. In October 2021, Mr. Doble reached out to Fastcase's CEO Mr. Walters. In that email, Mr. Doble explained that Alexi was "an AI company fully automating the production of legal research memoranda." Mr. Walters responded by expressing his eagerness to work with Alexi, emphasizing that "supporting the legal tech ecosystem is an important part of who [Fastcase is]."

58. Over the ensuing months, the parties worked toward a deal. Fastcase had initially offered to sell the Fastcase database to Alexi. But because Alexi was a startup on a limited budget, the parties instead structured the Agreement so that Alexi would license Fastcase's database of U.S. caselaw and Fastcase would provide daily updates as new decisions were issued, in exchange for payments of [redacted] per year.

59. On December 6, 2021, Fastcase and Alexi entered into the Data License Agreement ("Agreement"). Fastcase's Vice President of Alliances and Business Development, Joe Patz Vineyard, drafted the Agreement, after confirming the pricing structure and that "content cannot be made available through traditional legal research product like Fastcase."

60. Under the Agreement, Alexi receives raw caselaw data from Fastcase—limited to U.S. cases and not including secondary sources, statutes, or legislative history materials—to use "for Alexsei's legal memos."

61. After receiving the raw case data from Fastcase, Alexi engineers process the data, deduplicate the caselaw against other versions already in its system and from other sources (e.g.,

slip opinions versus reported opinions), and recode it to ensure that the cases are properly ranked so that Alexi's proprietary LLM can appropriately identify and research the case law to produce accurate legal analysis. Alexi's engineers do not receive Fastcase's headnotes or annotations during the process; instead, Alexi transforms the raw case law, through its own proprietary technology and engineering work, into data that can be used with its proprietary system.

62. As the October 2021 email correspondence between Mr. Doble and Mr. Walters shows, both parties knew and intended for Alexi to use the Fastcase data to produce the AI-generated, "fully automat[ed]" legal memos that were the heart of Alexi's mission and model.

63. The Agreement draws no distinction between human use and AI use of the Fastcase data. On the contrary, the Agreement only restricts Alexi to using the Fastcase data for "internal research purposes," Agreement § 1.7—which Alexi has always complied with.

64. From the start, Alexi's AI algorithms have used the U.S. caselaw provided by Fastcase to programmatically research answers to users' legal questions (*i.e.*, "internal research"). That remains true today. In other words, how Alexi's AI models use the Fastcase case data has never changed.

65. To be sure, Alexi's models have gotten better at analyzing the caselaw, which has enabled Alexi to largely remove human editing and deliver memos at a fraction of the time and cost—a technological feat for which the Counterclaim Defendants have repeatedly praised and championed Alexi and its CEO and founder, Mr. Doble (as described further below). But even though its AI models have improved, Alexi's use of the Fastcase data is the same today as it was in December 2021.

66. Alexi has never given its users access to the Fastcase database. Rather, like Alexi's use of the Fastcase data, the output that Alexi users receive has remained the same since December 2021: memos generated by Alexi's AI models.

67. Importantly, in addition to the license to Fastcase's U.S. caselaw data, the Agreement also provides that, upon Alexi's acquisition or change of control, the acquiring party "will have the option to purchase the Fastcase backfile with no restrictions for [redacted]."

68. The Fastcase "backfile" refers to Fastcase's full legal research database of state and federal caselaw, which Alexi has used to help develop its AI memo-generating software.

69. Section 12.1 of the Agreement, entitled "Survival," provides that the post-acquisition right to purchase backfile (as set forth in Section 12.3) "shall survive termination of this Agreement."

70. The right to purchase this data is hugely valuable. Judges across the country write and file thousands of published and unpublished opinions each year. In 2024, more than 400,000 civil and criminal cases were filed in the federal district courts and nearly 40,000 in the United States Courts of Appeals. And state courts handle approximately 66 million. Compiling all the judicial decisions related to the vast number of legal proceedings in the United States is a huge undertaking.

71. While these opinions are part of the public domain, they are not readily available. Before judicial opinions started to be digitized and distributed electronically in the 2000s, private publishers controlled the selection, collection, and publication of these decisions in print law reports. Only three comprehensive primary-law databases in the world catalog U.S. caselaw from this period.

72. Recreating Fastcase's caselaw backfile from scratch would thus require a firm to manually compile judicial decisions from the pre-digital era, that are not publicly available online, from a hodgepodge of courthouses, jurisdictions, and sources. This would require a Herculean effort that would cost many millions of dollars and take years if not decades of painstaking work.

73. In short, the backfile purchase right in the Agreement is a unique asset in the legal-tech sector and the only foothold available for a competitor to gain access to the comprehensive caselaw necessary to jumpstart legal AI analysis software or to create a fourth database competitor to Westlaw, Lexis, and Fastcase (now, Clio).

## IV. Alexi's Continued Business Relationships with Fastcase

### A. Fastcase's knowledge of Alexi's use of caselaw data

74. For nearly four years, the parties operated without incident under their shared understanding of the Agreement. Fastcase provided Alexi with daily caselaw updates and Alexi used its licensed Fastcase data to produce its AI-generated legal memos.

75. From the Agreement's signing in December 2021 up through the Clio acquisition in late 2025, Fastcase never raised any concern that Alexi's AI-generated memos violated the Agreement.

76. Since before the Agreement was even signed, and throughout the life of the contract, Fastcase has known about Alexi's AI-focused services and Alexi's single-minded mission to fully automate legal-memo drafting.

77. [redacted]

78. The following year, in September 2022, Alexi and Fastcase entered discussions over a potential integration of Alexi's AI-powered memo service into the Fastcase website. In suggesting that partnership, Mr. Doble wrote to Fastcase's CEO that it is "increasingly clear that machine generated memos have the potential to completely upend the legal research software space." Fastcase then signed a non-disclosure agreement and received access to a data room with additional information about Alexi's AI services and finances. That information, among other things, explained that Alexi was "fully automating the production of legal research memoranda."

79. A few months later, in January 2023, Mr. Patz Vineyard reached out again to Mr. Doble, writing: "Would be great to hear how everything is going on your end!" Mr. Doble responded that "January [2023] was a massive month for us and so much tailwinds with ChatGPT helping to demystify generative AI in general," again highlighting Alexi's focus on AI. Mr. Patz Vineyard responded enthusiastically: "Keep me updated if there is anything we can do to support you. . . . Could be interesting to see if there is more we might be able to do together/support each other."

80. [redacted]

**B. Fastcase and vLex Merger**

81. In April 2023, Fastcase announced its merger with vLex, a major legal tech firm to create "the world's most comprehensive global legal content collection."[7]

---

[7] *Our Company: Pioneering Legal AI with the World's Most Comprehensive Legal Database*, vLex, https://vlex.com/about-us.

82. vLex offers a database of online legal information to its customers in Spain, the United States, Latin America, and internationally, including practical law reference products, books, scientific journals, legislative and caselaw collections.

83. [redacted]

84. The vLex-Fastcase merger formed "the world's largest law firm subscriber base with more than one billion legal documents from more than 100 countries."[8] The new, combined entity, called vLex Group, offered products under the name vLex in global markets and Fastcase in the United States.

85. After the acquisition announcement in May 2023, Mr. Doble emailed vLex's CEO, Lluis Faus, to introduce Alexi. Mr. Doble told Mr. Faus: "We at Alexsei have been building in generative AI for a few years now, and have an amazing product that is growing really quickly throughout Canada and the US . . . We're backed by top investors and are so far ahead of anyone else building generative AI to fully automate legal research."

86. After the vLex acquisition, Mr. Patz Vineyard—then a vLex executive after the acquisition—suggested to Alexi that the companies look into new ways to work together. At this suggestion, Alexi sought to license vLex data (including secondary sources and legislative history information) in addition to the U.S. caselaw that Fastcase provided to Alexi under the Agreement.

[8] vLex Team, *Legal Tech Disruptors vLex and Fastcase Merge to Form World's Largest Global Law Library* (Apr. 4, 2023), https://perma.cc/XCE3-VW2V.

87. In a June 2023 email, Tom Atkinson—vLex's Head of Business for North America—told Mr. Doble that vLex's "C-suite" had made the decision not to license the vLex data to "legal tech companies globally." He confirmed, however, that Alexi could "still use Fastcase for US material and our data is the same as theirs, but sorry I can't be more helpful!!"

88. vLex decided not to extend the licensing partnership because [redacted]

89. Notably, after it acquired Fastcase, vLex discovered Alexi's fully automated legal memos for itself. On September 6, 2023, a senior vLex executive (Robin Chesterman) signed up for a trial subscription to Alexi and requested an "instant" legal memo on Alexi's platform—a fully automated memo generated by Alexi's AI models in a matter of seconds or minutes. [redacted]

90. Perhaps most tellingly, in 2023, vLex and Fastcase honored Mr. Doble as among the "Fastcase 50 Honorees"—a vLex award that "honors the law's smartest, most courageous innovators, techies, visionaries, lawyers, and leaders." vLex gave Mr. Doble this award for creating the Alexi "AI tool" that is "trained on an extensive dataset of more than 30 million pairs

of legal questions and answers" and "swiftly delivers answers in a clear, concise memo format"—the same technology that Counterclaim Defendants now say violate the Agreement.[9]

91. In October 2023, relying on the Fastcase data it had begun to license a year earlier, vLex launched Vincent AI—a legal research assistant that provides AI-generated memos and caselaw analysis similar to the legal analysis services that Alexi offers.

92. In November 2023, vLex entered into an agreement with DISCO, a "leader in AI-enabled legal technology," to programmatically license the Fastcase caselaw data. DISCO announced that it was "working to incorporate the data into its core platform," including "using AI to answer complex questions about the law, and identifying case law relevant to the causes of action without needing to use multiple products."[10]

93. [redacted]

94. On information and belief, Clio—which is a multi-billion-dollar company that doesn't suffer from the cashflow restrictions that faced vLex—is unlikely to renew the DISCO

[9] *Fastcase 50 Honorees*, vLex, https://vlex.com/fastcase-50-class-2023.

[10] *DISCO Partners with vLex to Leverage Legal Industry's Most Comprehensive Primary Law Database*, DISCO (Nov. 8, 2023), https://csdisco.com/pressrelease/disco-partners-with-vlex.

contract when it expires in two years, pursuant to its strategy to exclude competitors of its AI products and foreclose rivals' access to its newly-acquired comprehensive U.S. caselaw database.

## V. Clio's Acquisition of vLex/Fastcase and an About-Face on its Contract

### A. Clio's prior knowledge of Alexi's business model

95. Clio is a major legal technology platform provider, which marketed the first cloud-based practice management system designed for law firms. With more than $1 billion in venture capital backing, Clio has built a platform that helps firms conduct administrative tasks such as case management, billing, and client intake. Like many legal tech providers, Clio has increasingly pivoted toward and focused on building AI functionality in its products in recent years.

96. At least as early as June 2019, Clio has been aware of Alexi and its business model of providing automated, AI-powered legal research memos.

97. For example, in June 2019, Clio Account Executive Matt Kaiser recognized Alexi as "a legal research and summary tool that is powered by AI and designed to help law firms speed up and simplify their legal research processes." And in May 2021, Mark Doble reached out to Clio, introducing himself as "CEO at Alexsei, an AI company that answers routine and complex legal questions for law firms." In follow-up emails, Mr. Doble told Clio that "it is increasingly clear that generative AI is going to impact the legal industry massively" and gave an Alexi product demonstration to Clio executives—after which Clio's VP for Corporate Development, Shubham Datta, congratulated Alexi on its "amazing progress."

### B. Clio Acquires vLex/Fastcase

98. In keeping with its increasing focus on AI, Clio in recent years has expanded its AI capabilities for generating legal analysis and caselaw memos.

99. In September 2021, Clio acquired a legal tech service called Lawyaw, which had created an AI tool that automated the creation of legal documents. In February 2024, Clio

rebranded Lawyaw and rolled out a memo-drafting tool called "Clio Draft," which allows Clio users to use AI to automate the creation of legal memos and other legal documents.

100. On June 30, 2025, Clio announced its $1 billion acquisition of vLex/Fastcase, touting that the merged firm would offer the "world's most powerful legal intelligence program."[11]

101. [redacted]

102. [redacted]

103. [redacted] on June 30, 2025, Mr. Walters wrote to Mr. Doble to announce some "exciting news about vLex!"—namely, the Clio acquisition. Mr. Walters assured Mr. Doble: "There shouldn't be any changes [to Alexi's] data delivery" and thanked Alexi for its "continued partnership," noting "we look forward to exploring the exciting possibilities ahead together." Mr. Walters expressed no concern that Alexi's AI service violated the Agreement.

---

[11] vLex Team, *vLex Joins Clio in Landmark $1B Acquisition*, vLex (Nov. 10, 2025), https://perma.cc/7L9Q-LWNN.

104. [redacted]

105. [redacted]

106. That same day, October 20, 2025, Mr. Walters called Mr. Doble about the Agreement. Mr. Walters said that Clio's lawyers wanted to strike the valuable backfile purchase right from Section 12.3 of the Agreement with no corresponding benefits to Alexi. Mr. Doble asked why Alexi would voluntarily surrender a valuable provision from the Agreement without consideration—which Mr. Walters admitted was a good point. After Mr. Doble asked what would happen if Alexi did not accede to Clio's demands, Mr. Walters responded that "there would be trouble."

107. Later that day, Mr. Walters sent Mr. Doble a draft amendment to the Agreement, which sought to remove the backfile purchase right from Section 12.3 with no other modifications to the Agreement. Alexi declined the one-sided amendment demand.

108. As Clio neared closing the vLex/Fastcase acquisition, [redacted]

[redacted]

### C. Clio manufactures sham litigation while breaching the Agreement

109. After Clio's failed attempt to pressure Alexi into removing the backfile purchase right from the Agreement, it manufactured a claim that Alexi's longstanding AI service violated the Agreement.

110. On October 27, 2025—just seven days after vLex sent the amendment to remove the backfile purchase right—vLex's CEO, Mr. Faus, sent a notice claiming, for the first time, that Alexi's use of the Fastcase data for its AI services violated the Agreement.

111. Before the October 27, 2025 breach letter, no one at Fastcase or vLex had ever raised any issue about Alexi's use of Fastcase data in its AI service over the parties' nearly four-year course of dealing.

112. Remarkably, vLex's breach letter cited the purported breach as stemming from the same Alexi AI tool that vLex had celebrated as a groundbreaking legal innovation just two years earlier. Indeed, both vLex's 2023 award to Mr. Doble and vLex's baseless 2025 breach letter cited identical facts about how Alexi's AI algorithms are "trained" on "30 million pairs of legal questions and answers" to deliver fast and accurate AI legal memos to clients.[12]

113. On November 26, 2025, Fastcase purported to terminate the Agreement and filed this lawsuit against Alexi.

114. Under the Agreement, Fastcase had an implied duty of good faith and fair dealing. Counterclaim Defendants' breach claim and lawsuit are not based on any genuine belief that Alexi breached the Agreement or violated the law. Rather, Counterclaim Defendants manufactured those

[12] *Fastcase 50 Honorees*, vLex, https://vlex.com/fastcase-50-class-2023.

claims as a pretext for contract termination—in breach of the duty of good faith and fair dealing—following Clio's failed attempts, in the midst of its $1 billion acquisition, to pressure Alexi into removing the backfile purchase right from the Agreement.

115. One Clio document—fittingly featuring AI-powered analysis—illustrates the point. [redacted]

116. Fastcase's claims are objectively baseless sham litigation, as the case was brought for improper purposes for the reasons described above and based on the made-for-litigation and warped interpretation of the Agreement that Clio advances now. Fastcase alleges that Alexi violated the Agreement by (1) offering AI legal-memo services that are "commercial" and "competitive with Fastcase," purportedly in breach of Section 1.7; and (2) by providing links

through which Alexi users can access the raw text of the cases cited in Alexi's memos, purportedly in breach of Section 2.2.

117. Fastcase's allegations rest on a tortured reading of isolated, undefined terms that are untethered to the Agreement as a whole and the Parties' clear intent to license Fastcase's primary-caselaw data for Alexi to use in researching its legal memos. The Agreement's text, the negotiation record, and years of unbroken performance foreclose Fastcase's interpretations and confirm that Alexi's use falls squarely within the license. As just a few examples:

118. **"Internal research":** Fastcase's own allegations concede that all research is done in house by Alexi—and instead claim breach because Alexi's legal memos are now drafted by Alexi's AI model. But the Agreement draws no distinction between human researchers and software agents carrying out internal research. And nothing in Section 1.7 or Section 2.2 bars Alexi from ***improving*** its internal AI model, such that Alexi's system performs the research and drafts the memo without the need for human editing. Nor do any of the purported restrictions govern internal research or model improvement.

119. This reading is further compelled by the preamble's express statement that Fastcase "desires to license to Alexsei substantial portions of its database of primary law for Alexsei's legal memos" and by the unbroken course of performance in which Fastcase delivered daily updates for years while Alexi reduced human review as its AI models improved, ultimately fully automating memos by 2023—all progress that Fastcase encouraged and celebrated, as described in these counterclaims. That same year, Ed Walters, Fastcase's CEO, publicized that its Fastcase primary-law database, now combined with vLex, was the "crown jewel of LLMs and the ultimate training

data set for legal AI," further evidencing Fastcase's intention and consent to license its programmatic data for that purpose.[13]

120. [redacted]

121. **"Commercial" and "Competitive":** The Agreement's terms regarding "commercial" and "competitive" uses plainly refers to a prohibition on Alexi selling the Fastcase data or using the Fastcase data to offer a traditional legal database service (like those offered by Westlaw, Lexis, and Fastcase). Indeed, that is exactly how Fastcase described these provisions to Alexi when the parties were forming the contract: "License restrictions include bulk sale, [and] content cannot be made available through [a] traditional legal research product like Fastcase." If Clio's new sweeping interpretation of the "commercial" and "competitive restrictions" were correct, the entire Agreement would be nonsensical, because Alexi is and always has been a for-profit commercial business offering AI-generated legal memos. If the Agreement prohibited Alexi from offering those services, Alexi would have no use for the data in the first place.

122. In any event, Alexi is not "competitive" with Fastcase. When the Agreement was signed in 2021, Fastcase offered a comprehensive primary law database, whereas Alexi offered—and continues to offer—AI-generated legal memos that are a complementary service to such a database. [redacted]

[13] vLex Team, *Legal Tech Disruptors vLex and Fastcase Merge to Form World's Largest Global Law Library* (Apr. 4, 2023), https://perma.cc/XCE3-VW2V.

[redacted]

123. The differences between Fastcase's traditional legal research platform and Alexi's AI memo service are stark. Fastcase's platform permits users to conduct direct searches and review primary case law and other legal authority (such as secondary sources and statutes), something that Alexi has never offered. Alexi's AI services, by contrast, simplify and streamline the process of drafting a legal memo—but they do not replace the need for a research platform like Fastcase. Just the opposite is true: any attorney who receives an Alexi memo must have access to a traditional research provider like Fastcase, Westlaw, or Lexis, so that that attorney can pull up and read the cases cited in the memo and "Shephardize" them to ensure they haven't been overturned by subsequent cases. Alexi is not aware of a single user of its AI services that ***stopped using*** their primary-law database because of Alexi's AI memos; that would make no sense.

124. **"Sell, license, publish, copy or otherwise distribute":** Fastcase's remaining claims for breach and under IP laws surround the restrictions contained in Section 2.2 and Alexi's linking to raw caselaw in the memos it provides to its clients. This claim is equally specious. This provision—like the limitation surrounding "commercial use"—plainly refers to *transacting* in Fastcase data, which Alexi has never done.

125. To be useful and efficient for lawyers, an AI legal memo service must link to or otherwise display the cases cited in the memo, or else the attorney would need to conduct separate manual searches to find those cases elsewhere. Consistent with this common-sense reality, Alexi since the beginning of the Agreement has always linked to the raw text of Fastcase cases cited in its memos (without providing any of Fastcase's headnotes or annotations). This was a ***benefit*** to

Fastcase, because it directed users to its platform, [redacted]

126. Fastcase not only never complained about this feature (before Clio took over and was scrambling for a pretext to sue), Fastcase expressly told Alexi's CEO Mark Doble that linking to the raw text of Fastcase cases in this way was permissible under the contract. Specifically, Christina Steinbrecker Jack, who was Fastcase's Chief Product Officer, told Mr. Doble in January 2022—shortly after the Agreement was signed—that he had Fastcase's approval to provide public links to Fastcase cases.

127. What's more, Fastcase later followed up in writing when Alexi reached out requesting a more automated way to link to Fastcase's public caselaw. Fastcase told Alexi that it could use Fastcase's programming interface (or API) to get public-facing links to cited cases and offered technical support for Alexi's linking. Fastcase thus not only expressly endorsed Alexi's linking to the raw cases from the Fastcase database, it provided technical support to facilitate that feature.

128. Fastcase cannot endorse and facilitate Alexi's use of Fastcase's linking feature; never object to—and in fact benefit from—that feature for nearly four years; provide technical assistance to implement that feature; and then claim the conduct violated the contract all along after a merger produced a new owner that viewed Alexi as a competitive threat. And Fastcase's claim that Alexi's linking to Fastcase cases violated the contract is completely inconsistent with Fastcase's entire business model. Fastcase allows ***all*** of its subscribers—which include virtually every state bar association in the United States, which give members Fastcase access for free—to provide public links to Fastcase cases from the Fastcase database.

129. Simply put, Clio is bent on finding any means to claim that Alexi is violating the contract in a misguided attempt to extinguish the backfile right (which survives termination in any event). As just one example, vLex, now part of Clio, sent correspondence to Alexi's CFO in December 2025, claiming that Alexi was in nonpayment for a $[redacted] invoice due December 3, 2025, despite the fact that Alexi had paid that invoice in full via bank wire (as it had always done) on November 20, 2025. Alexi's CFO later discovered that Clio considered the bill unpaid because Clio had incurred ***$10*** wiring fee and had ***unilaterally deducted*** it from Alexi's payment, despite the fact that Alexi had complied with the terms of the Agreement by paying the contracted amount, even doing so weeks before payment was due. In the parties' four-plus years course of dealing, Fastcase never said anything about a wiring fee, or unilaterally deducted wire fees from Alexi's payment, much less accused Alexi of nonpayment over the full invoice over such a trivial amount.

130. Under the Agreement, Fastcase agreed to provide updates of the Fastcase primary-caselaw data on a daily basis. In return, Alexi agreed to pay the amount set forth in Appendix A of the Agreement. At all times through the present, Alexi has paid the specified amount for those daily updates (and, as of December 2025, with an additional $10.00), and fully performed its obligations, under the Agreement.

131. On December 6, 2025, Fastcase stopped providing Alexi with the daily U.S. caselaw data updates, as Fastcase is required to provide under Section 3.1 of the Agreement. Clio knew that the daily updates—which are Fastcase's core obligation under the Agreement—are critical to Alexi's ability to provide customers with reliable and accurate legal analyses. By failing to provide the required daily updates, Fastcase has breached and continues to breach the Agreement. Yet, for every month in 2026 so far, Fastcase has sent Alexi an invoice for the full

$[redacted] payment—despite failing to fulfill its core obligation under the contract and its (incorrect) claim that the Agreement has been terminated for cause.

### D. Clio Has Tortiously Interfered with Alexi's Business

132. Like many tech startups, Alexi's CEO Mr. Doble has actively pursued acquisitions, strategic partnerships, and funding opportunities with other players in the legal technology and private equity industries.

133. In the months leading up to this lawsuit, Alexi was engaged in discussions with multiple prospective acquirers valuing the company at more than $100 million. Third-party analysts specifically noted that the backfile purchase right in the Agreement would be valuable to a variety of tech companies and potential acquirers.

134. Counterclaim Defendants knew that Alexi was exploring acquirers, and Clio knew that firms were interested in acquiring Alexi. Just nineteen days before vLex's own merger with Clio closed, Mr. Walters facilitated a reintroduction between Clio's Vice President of Corporate Development and its "data partner" Alexi, and the two met to discuss a potential acquisition. Clio's VP asked to be included on the list of materials Mr. Doble sent to initial investors.

135. Counterclaim Defendants also understood that any acquisition of Alexi would trigger the right to purchase the Fastcase backfile guaranteed in the Agreement. With its manufactured breach claim and sham litigation, Clio sought to prevent an acquisition of Alexi—and the triggering of the Agreement's backfile purchase right—in violation of the duty of good faith and fair dealing.

136. The plan worked as intended. Counterclaim Defendants' lawsuit, and the cloud of uncertainty it created, thwarted Alexi's acquisition opportunities and now threatens to destroy its business. On information and belief, one potential acquirer, [redacted], had secured internal approvals to execute a letter of intent to acquire Alexi, pending a full board

vote on December 1, the same day news about Clio's lawsuit surfaced. After the lawsuit became public and Clio directly interfered with the acquisition (as described below, *see infra* ¶¶ 138—140), [redacted] never went forward with the letter of intent. Other potential acquirers that had expressed serious interest in acquiring Alexi—including [redacted]—likewise stopped their discussions with Alexi after [redacted].

137. On December 6, 2025, Clio stopped providing Alexi with the Fastcase daily updates, while at the same time continuing to demand payment in full—a breach of contract that has further impaired and harmed Alexi's existing and prospective business relationships. Having up-to-date data is essential because, as the underlying case data that Alexi's AI models analyze grows increasingly stale, lawyers and law firms will no longer sign up for or continue using the service.

138. As Clio prepared and filed its lawsuit against Alexi, and ceased providing the daily data updates required under the Agreement, Clio simultaneously orchestrated a campaign to thwart potential acquirers or investors from engaging with Alexi.

139. [redacted] Clio's breach allegation is baseless and the backfile purchase option in Section 12.3 survives termination in any event.

140. [redacted]

[redacted] contrary to the plain language of Section 12.3 of the Agreement.

141. Clio's wrongful interference has caused immediate and accumulating harm to Alexi, including the loss of acquisition opportunities, the loss of investors and fundraising opportunities (the lifeblood of a tech startup like Alexi), and the loss of existing and prospective customers.

142. [redacted]

143. Indeed, since the lawsuit was filed, Alexi has been forced to lay off two-thirds of its staff because of the damage caused by Counterclaim Defendants' breach claim and lawsuit. The harm to Alexi is severe, mounting, and irreparable.

## VI. Clio's Acquisition of vLex/Fastcase Substantially Lessened Competition

144. Clio's acquisition of vLex/Fastcase is unlawful under Section 7 of the Clayton Act, because that acquisition may substantially lessen competition in the market for AI legal analysis services that rely on access to comprehensive primary-caselaw data.

### A. Market Definition

145. There are at least two relevant markets to Alexi's antitrust claim: (1) the Comprehensive Legal Database Market and (2) the AI Legal-Analysis Services Market.

#### i. The Programmatically Licensable Comprehensive Legal Database Market

146. There is a relevant market for comprehensive legal databases, featuring U.S. caselaw ("Programmatically Licensable Comprehensive Legal Database Market"). These "comprehensive" databases contain over a billion legal documents, with the overwhelming

majority constituting primary source judicial opinions. While these databases also include headnotes, statutes, rules, regulations, and other legal materials and authorities, these features are often add-ons that are helpful but not critical for programmatic users of these databases.

147. The Programmatically Licensable Comprehensive Legal Database Market is highly concentrated—as vLex and Fastcase have acknowledged in their public statements.[14] As noted above, there are only three comprehensive U.S. primary-law databases "on the planet," as Clio's CFO put it: (1) Westlaw, (2) Lexis, and (3) Fastcase (now, Clio).

148. To be useful for use by an AI legal analysis service, a primary-law database must be comprehensive. To provide accurate and trustworthy legal analysis, an AI-generated memo must analyze all cases from the relevant jurisdiction or jurisdictions to the question presented—or else the lawyer reading and verifying the memo cannot know if the AI model had access to the key case or cases. Accordingly, the primary-law database must have all U.S. cases—both published and non-published—and go back many decades, before judicial opinions were digitized and available on the open web.

149. Among the three comprehensive primary-law database providers, only Fastcase (before the Clio acquisition) was available for programmatic licensing by AI companies offering legal analysis.

150. Fastcase eagerly licensed its data, on a programmatic basis, to such AI legal-analysis providers. As Fastcase's senior executives have explained, "supporting the legal tech ecosystem is an important part of who [Fastcase is]" and the company long operated under the belief that "law should be like electric power: nearly ubiquitous, inexpensive, reliable, and useful

[14] *Id.* (describing Fastcase and vLex as "disruptive innovator[s] in highly consolidated markets for legal information").

for powering other things." Consistent with its business model and mission to "democratize" the law, Fastcase licensed its database on a programmatic basis for AI legal-analysis providers including Alexi and others including ROSS Intelligence, Casetext, vLex, and DISCO.

151. In contrast to Fastcase, neither Westlaw nor Lexis is available for programmatic licensing to rival legal-analysis AI providers that are either participating in the downstream market or wish to enter the downstream market.

152. On information and belief, Westlaw has never licensed its database for programmatic use by any AI company. And Westlaw not only has refused to license its data to any AI provider—it has aggressively prevented AI tools from accessing that data, including by launching a high-profile lawsuit against ROSS Intelligence for accessing the Westlaw database without authorization in conjunction with ROSS Intelligence's legal-analysis AI services.

153. Lexis likewise does not license its database for programmatic use. In January 2025, Lexis entered into a one-off "strategic partnership" with Harvey (the leading AI platform for large law firms in the United States), in which Lexis acquired an equity ownership stake in Harvey. On information and belief, that is an exclusive arrangement that is not available to other market participants or potential market participants. Thus, while Lexis has a comprehensive legal database, it is not available to downstream rivals for programmatic licensing.

154. Indeed, Alexi's Mr. Doble attempted to negotiate programmatic licenses or a strategic partnership with both Westlaw and Lexis. Both declined.

155. In fact, when Alexi reached out to [redacted]."

156. Because neither Westlaw nor Lexis license their database for programmatic use, Fastcase has historically been legal-analysis AI providers' only source for the critical input of access to a comprehensive primary-law database. [redacted]

157. [redacted]

158. [redacted]

159. Based on their business models, conduct in the market, and incentives as vertically integrated AI legal services providers, Westlaw and Lexis are unlikely to change their longstanding refusals to license caselaw data for programmatic use by downstream AI rivals.

160. In the alternative, if the upstream market is defined to include all three comprehensive legal database providers (Westlaw, Lexis, and Fastcase (now Clio)), the analysis is no different. Clio still has the ability to foreclose downstream rivals, because those rivals have no other options for licensing the comprehensive caselaw data necessary to provide an AI legal analysis service to law firms in the United States.

161. Other sources of caselaw are not reasonable substitutes to Fastcase from the perspective of downstream AI legal analysis providers. There are other sources with partial

collections of select U.S. caselaw—most notably CourtListener—but none of those options offer a ***comprehensive*** database that is sufficient for an AI service seeking to provide accurate and reliable legal analysis that can be trusted by lawyers and law firms (and their clients).

162. CourtListener is not a reasonable substitute to Fastcase from the perspective of a legal-analysis AI provider. For example, the CourtListener database contains only nine million cases—compared to the one billion cases in Fastcase's database—with spotty coverage of unpublished opinions. CourtListener has no statutes, rules, regulations, or other legal documents (such as jury instructions). And CourtListener's database has unreliable coverage from the pre-digital era, again in sharp contrast to the Westlaw, Lexis, and Fastcase databases that have comprehensive caselaw stretching back many decades.

163. Other publicly available databases (which are ***less*** comprehensive than CourtListener) suffer from similar shortcomings. For example, Harvard's Caselaw Access Project database has only 6.7 million published opinions—with no unpublished decisions. That is a critical shortcoming, because most judicial opinions in the United States are unpublished. Unpublished opinions are an indispensable source for comprehensively, correctly, and reliably analyzing the law applicable to discrete legal questions.

164. The Programmatically Licensable Comprehensive Legal Database Market features high barriers to entry. As described earlier, entering these markets—and creating a fourth comprehensive primary-law database—would require many years of effort and a huge capital investment. *See supra* ¶¶ 68–73.

165. Fastcase itself has admitted these high barriers to entry, noting in its complaint that it spent decades building its primary-law database.

166. A hypothetical monopolist of the Programmatically Licensable Comprehensive Legal Database Market could profitably impose a small but significant, non-transitory price increase, worsening of terms, or quality reduction.

**ii. The AI Legal-Analysis Services Market**

167. There is a relevant antitrust market for AI Legal-Analysis Services ("the AI Legal-Analysis Services Market").

168. Providers in this market sell legal and caselaw analysis services—to lawyers and law firms—using AI and LLM algorithms. Lawyers and law firms use these tools to streamline and improve the process of drafting legal documents, filings, and memos. When done by hand by individual lawyers using traditional research methods, drafting such legal documents is often time-consuming, expensive, and vulnerable to error or mistake.

169. Competitors in the AI Legal-Analysis Services Market include the AI legal analysis services offered by the three comprehensive database providers (Westlaw, Lexis, and Clio); Harvey (which is now partially owned by Lexis); and a few independent players like Alexi, DISCO, and Legora.

170. [redacted]

171. When Alexi competes for law firm customers in the United States, its primary competitors are other legal-focused AI services like Harvey, Legora, and Clio/vLex.

172. Within this market, Alexi offers the legal tech industry's highest-quality AI memos—because it has had access to primary caselaw for years and has been refining and improving its algorithms for nearly a decade, long before ChatGPT popularized LLMs.

173. Alexi not only produces the highest-quality AI legal memos in the industry, it is also a maverick competitor. Westlaw and Lexis (and now Clio after the Fastcase acquisition) are vertically integrated with their own AI tools, but they do not sell their AI-powered legal analysis services independently of database access. Law firms instead must pay their often-exorbitant fees to license the entire platform. Alexi, by contrast, does not offer a primary-law database service and therefore provides AI legal analysis on a more standalone basis at a much lower cost.

174. General-purpose AI chatbots (like ChatGPT and Google Gemini) are not a constraint on competition in the AI Legal-Analysis Services Market. General-purpose AI chatbots lack access to comprehensive primary-law data; they are prone to error and hallucination when asked questions that require legal analysis of U.S. caselaw; and they do not offer firms secure environments for their highly sensitive, privileged, and confidential information.

175. A hypothetical monopolist of the AI Legal-Analysis Services Market could profitably impose a small but significant, non-transitory price increase or quality reduction.

176. There is industry recognition of the AI Legal-Analysis Services Market as a distinct market segment. For example, a Clio webpage summarizing the industry options for AI legal-writing products notes: "Legal-specific AI solutions, such as Clio's Manage AI, provide secure assistance tailored for legal professionals, prioritizing accuracy, jurisdictional awareness, and client confidentiality. . . . Because the legal industry is bound by more laws and regulations than many other industries, AI legal writing isn't as 'fast and loose' as AI writing in other areas."[15] Clio's industry description goes on to differentiate legal-specific AI solutions from general-purpose AI tools like ChatGPT, which "aren't built to meet legal industry confidentiality

[15] Kate Rattray, *Best AI Tools for Legal Writing and Drafting*, Clio (Oct. 22, 2025), https://www.clio.com/blog/ai-legal-writing/.

standards," are prone to hallucination, may expose lawyers to ethical violations, and may not have access to the right primary-law and jurisdictional data.

177. Programmatic access to a comprehensive legal data database is a critical input for legal-analysis AI providers in the AI Legal-Analysis Services Market. Without access to comprehensive U.S. caselaw, legal-analysis AI services cannot provide reliable and authoritative legal analysis that can be trusted and used by lawyers and law firms.

178. Here again, Counterclaim Defendants' [redacted]

179. Rivals (or would-be rivals) in the AI Legal-Analysis Services Market simply cannot compete without access to the comprehensive U.S. caselaw data now controlled by Clio. [redacted]

180. Clio's acquisition of Fastcase will greatly raise the barriers to entry and expansion and frustrate competition in the AI Legal-Analysis Services Market.

181. Because Clio has foreclosed AI rivals' access to Fastcase's comprehensive U.S. caselaw database, actual and potential competitors in the AI Legal-Analysis Services Market that are not vertically integrated with a comprehensive database have nowhere to license that data. Independent competitors have no way to license the comprehensive U.S. caselaw that would allow

them to improve or expand their AI offerings. And potential legal-focused AI competitors will not enter the market in the first place if they cannot obtain the essential input for the services.

182. Further, by moving the downstream market towards only three vertically integrated companies, Clio's acquisition will enable coordinated effects between the three firms that control access to comprehensive caselaw data, raising costs, stifling innovation, and reducing output.

**B. Relevant Geographic Market**

183. The relevant geographic market for both the comprehensive legal database market and the AI legal analysis services market is the United States.

184. With respect to the Programmatically Licensable Comprehensive Legal Database Market, comprehensive datasets of U.S. law are most directly useful and relevant to lawyers practicing in U.S. jurisdictions, both state and federal. The AI Legal-Analysis Services Market relies on this comprehensive caselaw data to provide their analytic services and tools to lawyers and law firms practicing in the United States.

185. For example, under the Agreement, Fastcase licenses Alexi to use Fastcase's U.S. caselaw data specifically and not caselaw from any other country. Alexi, in turn, uses the Fastcase data for internal research purposes in providing its AI legal memos to law firms practicing in jurisdictions in the United States.

**C. Ability and Incentive to Foreclose**

186. Clio's acquisition of Fastcase is likely to substantially lessen competition in the AI Legal-Analysis Services Market (and in fact is already doing so).

187. In evaluating whether a merger that combines upstream (input) and downstream (output) market participants is illegal under Section 7 of the Clayton Act, courts evaluate whether the merged firm will have "ability and incentive" to foreclose downstream rivals from the key input in the upstream market. As stated in the 2023 Merger Guidelines issued by the FTC and U.S.

Department of Justice Antitrust Division, a "merger involving products, services, or routes to market that rivals use to compete may substantially lessen competition when the merged firm has both the ability and incentive to limit access to the related product so as to weaken or exclude some of its rivals . . . in the relevant market."

188. After acquiring Fastcase and vLex, Clio has the ability and incentive to foreclose or weaken rivals in the AI Legal-Analysis Services Market.

189. **Ability**: As described earlier, Clio now controls the only programmatically licensable comprehensive legal database on the market. Clio thus has the ability to decline to license Fastcase data to legal AI rivals that compete with Clio or are seeking to compete with Clio, thereby denying them an essential input to enter or expand in the AI Legal-Analysis Services Market and improve the quality of their AI legal analysis.

190. **Incentive**: Clio has every incentive and a clear business strategy to exploit its newfound control over this unique asset—the Fastcase primary-caselaw data—and use the data to power its own AI solutions while denying that data to rivals. Indeed, Clio's CFO publicly described, in blunt terms, Clio's post-merger incentive not to license the Fastcase database to rivals so that Clio will have a competitive advantage in the AI Legal-Analysis Services Market: "There's really three datasets like this on the planet. It's what we have, what Thomson Reuters has, and what LexisNexis has. ***We think a lot of competitors are going to find it increasingly difficult to compete against that database.***"[16] And Clio's CEO Jack Newton similarly boasted that Clio now controls "the world's largest global legal library," which, along with Clio's and vLex's AI offerings, will give Clio the ability to "bring authoritative data and court admissible citations

[16] Josh Scott, *Clio secures $500-million USD Series G as it completes vLex acquisition*, BetaKit (Nov. 10, 2025), https://betakit.com/clio-secures-500-million-usd-series-g-as-it-completes-vlex-acquisition/.

directly into our platform."[17] Just last month, Mr. Newton boasted about "the only durable moat"—"data"—that Clio now controls with the vLex/Fastcase acquisition.[18]

191. Clio's ability and incentive to foreclose rivals is not just theoretical. Immediately after acquiring Fastcase, Clio's first order of business was to foreclose Alexi—the rival with the strongest legal-memo writing technology on the market—by manufacturing objectively baseless contract breach claims to block Alexi's longstanding access to the Fastcase data. Indeed, Clio's breach letter to Alexi explicitly based the decision to foreclose Alexi's access to Fastcase data on Alexi allegedly using the Fastcase data "for purposes competitive" with the newly merged firm.

192. Moreover, the Agreement between Fastcase and Alexi is set to expire on January 1, 2027, after which it would automatically renew in one-year increments unless either party decided to terminate. Prior to Clio's acquisition, Fastcase would have had every incentive to extend the contract—the Agreement was profitable for Fastcase; Alexi's AI memo service is a complement to Fastcase's comprehensive legal database; and Fastcase had repeatedly expressed enthusiasm for continuing and expanding the partnership. Clio, by contrast, offers a competing AI legal analysis product and has already purported to extinguish the Agreement. Plainly, Clio has the ability and the incentive (and indeed, the clear intention) to terminate the Agreement when it expires at the end of the year—even if the Court rejects Clio's breach allegation—and foreclose Alexi from the market.

---

[17] Jack B. Newton, LinkedIn (Jan. 7, 2026), https://www.linkedin.com/posts/jackbnewton_looking-back-on-2025-at-clio-activity-7412603150035255296-GHnT/.

[18] Yvonna Lau, *How a Vancouver legal-tech pioneer is fending off the AI giants and pressure to move to the U.S.*, March 19, 2026, https://financialpost.com/feature/how-clio-fends-off-ai-giants-pressure-to-move-u-s; *see also id.* ("We have a very strong conviction that context will win this battle and that the only durable moat that exists in this space is data.").

193. Clio's foreclosure of Alexi is doubly harmful to consumers and competition because of Alexi's unique backfile purchase right. By creating fake breach allegations, Clio is trying (without basis, given the Agreement's survival clause) to extinguish the backfile right that would allow an acquirer of Alexi to purchase the backfile without restrictions. If and when that right is exercised, it will allow Alexi's acquirer to create a fourth comprehensive primary-law database and form a formidable competitor to Clio's AI tools—benefitting consumers and competition. Post-merger, Clio has the ability and the incentive to do everything in its power to prevent that competition from occurring.

194. Clio's control over the only programmatically licensable database for legal AI service providers will act as a clog on competition and result in substantial market foreclosure. As described above, existing and potential legal AI competitors have nowhere else to turn for a comprehensive primary-law database. If not enjoined, Clio's foreclosure will stifle innovation, reduce quality and worsen terms, reduce consumer choice, and increase prices in the legal AI services market.

195. Further, vLex's 2023 acquisition of Fastcase was anticompetitive and violated Section 7 of the Clayton Act in its own right. At the time of the acquisition, vLex had developed and was preparing to launch its own downstream AI service, Vincent (which was built using Fastcase data licensed beginning in 2022). vLex thus had some incentive to foreclose downstream AI providers from licensing the Fastcase database, because doing so could facilitate a direct competitor to Vincent (as vLex internally acknowledged with respect to Alexi). But, as the DISCO agreement shows, vLex—which was just expanding into the U.S. market in 2023 and needed the cashflow from licensing deals—was still willing to programmatically license Fastcase's caselaw data under the right conditions.

196. Clio's acquisition of vLex, following vLex's acquisition of Fastcase, then strengthened and solidified the ability and incentive to foreclose—a one-two punch that plainly will prevent any downstream AI rival from licensing the Fastcase data necessary to compete against the vertically integrated incumbents. Whereas vLex had some incentive to foreclose access in the future subject to its cashflow constraints, Clio has in fact foreclosed access through immediate and aggressive anticompetitive actions designed to create a "data moat" around its AI offerings.

## VII. Defendants' Conduct Causes Continuing Harm to Alexi and to Competition

197. Counterclaim Defendants' unlawful conduct has caused severe and accumulating damages and harm to Alexi.

198. The unlawful conduct described above has caused Alexi monetary damages and other harm by undermining Alexi's equity value and enterprise value; causing Alexi to lose concrete acquisition opportunities; hobbling Alexi's ability to attract investors and raise capital—without which Alexi, like any startup, cannot survive; causing Alexi to lose existing and prospective customers; undermining Alexi's customer-acquisition efforts; and harming Alexi's goodwill with existing and prospective customers.

199. With respect to Alexi's claim under Section 7 of the Clayton Act, Alexi has suffered antitrust injury because its damages and harm stem from the anticompetitive aspects of Clio's acquisition of vLex/Fastcase. Specifically, the acquisition is anticompetitive because it gives Clio the ability and incentive to foreclose AI legal service rivals from the critical input of access to the Fastcase database. And that incentive and ability to foreclose rivals is precisely what has harmed Alexi, as Clio immediately blocked Alexi's access to the Fastcase database after gaining control over that database via the acquisition.

200. Clio's post-merger control over the key input for legal analysis AI services will equally harm competition and consumers. Law firms depend on robust competition between AI legal service providers to deliver the highest-quality AI-powered legal services at the lowest cost. By acting as a clog on competition, and foreclosing rivals from accessing the only programmatically licensable database on the market, Clio has the incentive and ability to prevent that competition from taking place—which will lead to less innovation, lower quality, and higher prices.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Breach of Contract)**
***Against Counterclaim Defendant Fastcase***

201. Alexi incorporates by reference and realleges each and every allegation set forth above though fully set forth herein.

202. Alexi and Fastcase entered into a valid and binding agreement, the Data License Agreement, in December 2021.

203. Alexi has performed all of its obligations under the Agreement through the present day.

204. Fastcase has a duty under the Agreement to provide Alexi with daily caselaw updates during the contractual term, which remains ongoing.

205. As of no later than December 6, 2025, Fastcase has breached and continues to breach its obligation under the Agreement to provide the daily caselaw updates to Alexi.

206. As a direct and proximate result of Clio's acquisition, Alexi has suffered and continues to suffer injury to its business and property.

**<u>SECOND CAUSE OF ACTION</u>**
**(Breach of Covenant of Good Faith and Fair Dealing)**
***Against Counterclaim Defendant Fastcase***

207. Alexi repeats and realleges the preceding paragraphs.

208. Alexi and Fastcase entered into a valid and binding agreement, the Data License Agreement, in December 2021.

209. Alexi has performed all of its obligations under the Agreement through the present day.

210. Fastcase has a duty under the Agreement of good faith and fair dealing, which "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Wright v. Howard Univ*., 60 A.3d 749, 754 (D.C. 2013).

211. As of no later than November 26, 2025, Fastcase has breached its duty of good faith and fair dealing to Alexi by acting in bad faith, arbitrarily and capriciously, to evade the bargain it made with Alexi, [redacted]

212. By engaging in the acts alleged above—including purporting to terminate the Agreement for cause under false pretenses, accusing Alexi of breaching the contract and suing Alexi for breach and other violations of law in an objectively baseless lawsuit—Fastcase has abused its contractual discretion and acted contrary to the parties' justified expectations and course of dealing.

213. As a direct and proximate result of Clio's acquisition, Alexi has suffered and continues to suffer injury to its business and property.

**<u>THIRD CAUSE OF ACTION</u>**
**(Clayton Act, Section 7, 15 U.S.C. § 18)**
***Against Counterclaim Defendants Fastcase, vLex, and Clio***

214. Alexi incorporates by reference and realleges each and every allegation set forth above though fully set forth herein.

215. Counterclaim Defendants are corporations or limited liability companies engaged in interstate trade and commerce throughout the United States. On April 4, 2023, vLex completed its acquisition of Fastcase. And on November 10, 2025, Clio completed its acquisition of Fastcase and vLex.

216. vLex's acquisition of Fastcase, and Clio's acquisition of Fastcase and vLex, are likely to substantially lessen competition or tend to create a monopoly in one or more relevant markets, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

217. The anticompetitive effects of those acquisitions are demonstrated by the combined firm's ability and incentive to foreclose rivals and stifle innovation and competition, reduce quality and worsen terms, reduce consumer choice, and increase prices in the legal AI services market, and its conduct demonstrating actual harm in the market, including the actual foreclosure of rivals from a critical input necessary to compete.

218. As a direct and proximate result of vLex and Clio's illegal acquisitions, Alexi has suffered and continues to suffer injury to its business and property.

219. Counterclaim Defendants cannot show that any cognizable efficiencies which resulted or may result from the merger such that the merger is not likely to result in harm to competition.

**FOURTH CAUSE OF ACTION**
**(Tortious Interference with Current Business Relations)**
***Against Counterclaim Defendants vLex and Clio***

220. Alexi incorporates by reference and realleges each and every allegation set forth above though fully set forth herein.

221. At all relevant times, Alexi had a contract with Fastcase where Fastcase agreed to provide updated caselaw data for Alexi to produce automated legal research memos.

222. Counterclaim Defendants vLex and Clio had knowledge of Alexi's contract with Fastcase.

223. By engaging in the acts alleged above, including by directing Fastcase to withhold data and file an objectively baseless lawsuit against Alexi, vLex and Clio, third parties to the Alexi-Fastcase contract, have intentionally interfered with Fastcase and Alexi's obligations to one another, inducing and directing Fastcase to breach its contract with Alexi and terminate the agreement under false pretenses.

224. As a direct, proximate, and intended result of vLex and Clio's active and intentional interference with Alexi's current business relations, Alexi has suffered and continues to suffer injury to its business and property, including monetary damages, lost equity value and enterprise value, reputational harm, and lost customer goodwill.

**FIFTH CAUSE OF ACTION**
**(Tortious Interference with Prospective Business Relations)**
***Against Counterclaim Defendants Fastcase, vLex, and Clio***

225. Alexi incorporates by reference and realleges each and every allegation set forth above though fully set forth herein.

226. In the months and weeks leading up to this lawsuit, Alexi was engaged in serious discussions with (i) prospective clients who were interested in purchasing Alexi's services for AI

legal analysis; and (ii) prospective acquirers who were interested in purchasing Alexi and had taken concrete steps to effectuate an acquisition.

227. Counterclaim Defendants knew about Alexi's serious discussions with potential acquirers and prospective clients.

228. Counterclaim Defendants intentionally interfered with those prospective business relationships through improper means, including by directing the filing of Fastcase's objectively baseless litigation; violating the covenant of good faith and fair dealing; breaching its obligations under the Agreement to provide Alexi with daily caselaw updates; and, disparaging Alexi to potential acquirers and investors and leveraging this litigation in the market by expressly stating an [redacted].

229. Counterclaim Defendants' intentional interference with Alexi's serious prospective business relations caused the termination, reduction, or material impairment of Alexi's business opportunities, including the opportunity for client contracts and for acquisition.

230. As a direct, proximate, and intended result of Counterclaim Defendants active and intentional interference with Alexi's prospective business relations, Alexi has suffered and continues to suffer injury to its business and property, including monetary damages, lost equity value and enterprise value, reputational harm, lost customer goodwill, and the derailment of acquisition prospects.

## PRAYER FOR RELIEF

**WHEREFORE**, Alexi respectfully requests that the Court enter judgment in its favor and award the following relief:

(a) Judgment for Alexi on all causes of action asserted herein.

(b) A declaration that Fastcase materially breached the Data License Agreement by, among other things, failing to provide the daily caselaw updates required under the Agreement.

(c) A permanent injunction mandating Fastcase specifically perform the Agreement through its term by providing Alexi with the contractually mandated daily caselaw updates.

(d) An award of compensatory damages in an amount to be proven at trial.

(e) An award of compensatory damages stemming from its antitrust injury, in an amount to be proven at trial, trebled.

(f) An award of reasonable costs and expenses Alexi incurred during this action, including reasonable attorneys' fees and similar costs, as provided by law; and

(g) Other injunctive relief as the court deems appropriate, including a requirement that Clio license the Fastcase caselaw data to rival AI legal analysis service providers on non-discriminatory terms. *See*, *e.g.*, *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 184 (D.D.C. 2018), *aff'd*. 916 F.3d 1029 (D.C. Cir. 2019).

(h) Any such further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Counterclaim Plaintiff Alexi hereby demands a trial by jury on all issues so triable.

Dated: April 23, 2026

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Joshua Hafenbrack*

Joshua Hafenbrack (D.C. Bar No. 1017128)
Ben Rudofsky (DC Bar No. 1029844)
Allie Dodd (*pro hac vice*)
Melissa Iannuzzi (*pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, DC 20036
Telephone: (202) 282-5017

Johanna Rae Hudgens (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
jhudgens@winston.com

*Counsel for Defendant and Counterclaim Plaintiff Alexi Technologies Inc.*