**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FASTCASE, INC.<br><br>            Plaintiff,<br><br>      v.<br><br>ALEXI TECHNOLOGIES INC.<br><br>            Defendant. | C.A. No. 1:25-CV-04159-RJL<br><br>Hon. Richard J. Leon<br><br>**(REDACTED VERSION)** |
| ALEXI TECHNOLOGIES INC.<br><br>            Counter-Plaintiff,<br><br>      v.<br><br>FASTCASE, INC., VLEX, LLC and THEMIS SOLUTIONS INC.<br><br>            Counter-Defendants. | |

**COUNTER-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON
FASTCASE'S BREACH-OF-CONTRACT CLAIM AND ALEXI'S
CONTRACT-RELATED COUNTERCLAIMS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for the reasons set forth in the accompanying Memorandum of Points and Authorities (the "Memorandum), Counter-Defendants Fastcase, Inc., vLex, LLC, and Themis Solutions Inc. (collectively, "Fastcase"), by and through their undersigned counsel, respectfully submit to the Court this Motion for Partial Summary Judgment (the Motion) as to Fastcase's breach-of-contract claim (Count One) and as to Alexi's related breach-of-contract (Count One), implied-covenant of good faith and fair dealing (Count Two), and tortious-interference (Count Four) counterclaims.

As explained in the accompanying Memorandum and supporting evidence, the undisputed record establishes that Alexi materially breached the parties' Data Licensing Agreement. The Court should therefore enter summary judgment in Fastcase's favor on its breach-of-contract

claim, as well as with respect to Alexi's contract-related counterclaims, which necessarily fail as

a matter of law if the Court grants the Motion as to Fastcase's breach-of-contract claim.

DATED: June 3, 2026                           WILSON SONSINI GOODRICH & ROSATI
                                              Professional Corporation

                                              */s/ Paul J. Sampson*
                                              Paul N. Harold (D.C. Bar No. 1032578)
                                              Brendan J. Coffman (D.C. Bar No. 988370)
                                              1700 K Street NW, Fifth Floor
                                              Washington, DC 20006-3814
                                              Telephone: (202) 973-8800
                                              PHarold@wsgr.com
                                              BCoffman@wsgr.com

                                              Jess M. Krannich (*pro hac vice*)
                                              Paul J. Sampson (D.C. Bar No. 1010457)
                                              Rebecca J. Nelson (*pro hac vice*)
                                              Andrew P. Follett (*pro hac vice*)
                                              Isabella Ang (*pro hac vice*)
                                              95 S State Street, Suite 1000
                                              Salt Lake City, Utah 84111
                                              Telephone: (801) 401-8510
                                              JKrannich@wsgr.com
                                              PSampson@wsgr.com
                                              RNelson@wsgr.com
                                              AFollett@wsgr.com
                                              IAng@wsgr.com

                                              *Counsel for Plaintiff Fastcase Inc. and Counter-*
                                              *Defendants Fastcase Inc., vLex, LLC, and Themis*
                                              *Solutions Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2026, the foregoing was electronically filed through this

Court's CM/ECF system and additionally all counsel of record were served via electronic mail.


Respectfully submitted,

*/s/ Paul J. Sampson*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 S State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510
PSampson@wsgr.com

*Counsel for Plaintiff Fastcase Inc. and Counter-Defendants Fastcase Inc., vLex, LLC, and Themis Solutions Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FASTCASE, INC.<br><br>        Plaintiff,<br><br>    v.<br><br>ALEXI TECHNOLOGIES INC.<br><br>        Defendant. | C.A. No. 1:25-CV-04159-RJL<br><br>Hon. Richard J. Leon<br><br>**(REDACTED VERSION)** |
| ALEXI TECHNOLOGIES INC.<br><br>        Counter-Plaintiff,<br><br>    v.<br><br>FASTCASE, INC., VLEX, LLC and THEMIS SOLUTIONS INC.<br><br>        Counter-Defendants. | |

**COUNTER-DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON
FASTCASE'S BREACH-OF-CONTRACT CLAIM AND ALEXI'S
<u>CONTRACT-RELATED COUNTERCLAIMS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................3

I.      FACTUAL BACKGROUND.........................................................................................3

        A.      The Parties and the Data License Agreement. .............................................3

        B.      Alexi's Original Product Was a Human-Reviewed Memo Service.........................6

        C.      Alexi Integrated Fastcase Data into PRS and Began Self-Hosting
                Fastcase Cases....................................................................................8

        D.      Alexi Launched Customer-Facing AI Products that Used Fastcase Data..............10

        E.      Alexi Launched ALR as a Customer-Facing Chat-Based Subscription Legal-
                Research Platform. ............................................................................12

        F.      Fastcase Discovered Alexi's Breach and Terminated the Agreement...................16

II.     PROCEDURAL BACKGROUND.................................................................................18

LEGAL STANDARD.........................................................................................................20

ARGUMENT......................................................................................................................21

I.      ALEXI BREACHED SECTION 1.7 BY USING FASTCASE DATA OUTSIDE THE
        AGREEMENT'S LIMITED PURPOSE. ...........................................................................23

        A.      Alexi's Customer-Facing Legal Research Platform Is Not
                "Internal Research."...........................................................................26

        B.      Alexi Uses Fastcase Data Well Beyond the Permitted Use in Legal Memos........28

        C.      Alexi Uses Fastcase Data for Commercial Purposes..............................................31

        D.      Alexi Uses Fastcase Data for a Purpose Competitive with Fastcase.....................32

II.     ALEXI BREACHED SECTION 2.2 BY COPYING, PUBLISHING, AND
        DISTRIBUTING FASTCASE DATA. ...............................................................................34

        A.      Alexi Copied Fastcase Data. ...............................................................35

        B.      Alexi Published Fastcase Data.............................................................37

        C.      Alexi Distributed Fastcase Data..........................................................38

        D.      Section 10 and Alexi's Removal of Fastcase Links Confirm the Practical Effect of
                Alexi's Copying and Distribution.......................................................39

III.    ALEXI'S CONTRACT-RELATED COUNTERCLAIMS FAIL AS A MATTER OF
        LAW. ...............................................................................................................40

A.    Alexi's Breach-of-Contract Counterclaim Fails Because Fastcase's Performance Was Excused and Termination Was Contractually Authorized. ...........................41

B.    Alexi's Implied-Covenant Counterclaim Fails Because the Covenant Cannot Override Fastcase's Express Termination Rights. ..................................................42

C.    Alexi's Tortious-Interference Counterclaim Fails Because Alexi Had No Valid Entitlement to Continued Performance After Its Uncured Breach. .......................43

CONCLUSION....................................................................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*2200 M St. LLC v. Mackell*,
940 A.2d 143 (D.C. 2007) .......................................................................................... 25

*Africare, Inc. v. Xerox Complete Document Sols. Md., LLC*,
436 F. Supp. 3d 17 (D.D.C. 2020) ........................................................................ 42, 43

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................................... 20

*Bennett Enters., Inc. v. Domino's Pizza, Inc.*,
45 F.3d 493 (D.C. Cir. 1995) ..................................................................................... 44

*Brown v. Sessoms*,
774 F.3d 1016 (D.C. Cir. 2014) .................................................................................. 42

*Cap. City Mortg. Corp. v. Habana Vill. Art & Folklore, Inc.*,
747 A.2d 564 (D.C. 2000) .......................................................................................... 26

*Carome v. Carome*,
293 A.3d 1122 (D.C. 2023) ........................................................................................ 26

\*  *CorpCar Services Houston, Ltd. v. Carey Licensing, Inc.*,
325 A.3d 1235 (D.C. 2024) ....................................................................... 23, 24, 42, 43

*District of Columbia v. Young*,
39 A.3d 36 (D.C. 2012) .............................................................................................. 26

*Herron v. Fannie Mae*,
861 F.3d 160 (D.C. Cir. 2017) .................................................................................... 44

*Hto7, LLC v. Elevate, LLC*,
319 A.3d 368 (D.C. 2024) .......................................................................................... 41

*Intercounty Const. Corp. v. District of Columbia*,
443 A.2d 29 (D.C. 1982) ............................................................................................ 31

*Johnson v. District of Columbia*,
947 F. Supp. 2d 123 (D.D.C. 2013) ........................................................................... 31

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*,
908 F.2d 1351 (7th Cir. 1990) .................................................................................... 24

*Logan v. LaSalle Bank Nat'l Ass'n*,
    80 A.3d 1014 (D.C. 2013) ................................................................................. 21

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ......................................................................................... 20

*Murray v. Wells Fargo Home Mortg.*,
    953 A.2d 308 (D.C. 2008) ........................................................................... 43, 44

*Noble Energy, Inc. v. Salazar*,
    671 F.3d 1241 (D.C. Cir. 2012) ....................................................................... 41

*Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*,
    103 F.4th 45 (D.C. Cir. 2024) .......................................................................... 38

*Re'ese Adbarat Debre Selam Kidest Mariam Ethiopian Orthodox*
    *Tewahedo Church, Inc. v. Habte*,
    300 A.3d 784 (D.C. 2023) ................................................................................ 30

*Red Sage Ltd. P'ship v. Despa Deutsche Sparkassen*
    *Immobilien-Anlage-Gesellschaft MBH*,
    254 F.3d 1120 (D.C. Cir. 2001) ....................................................................... 31

*Robertson v. Cartinhour*,
    867 F. Supp. 2d 37 (D.D.C. 2012) ................................................................... 44

\* *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., Inc.*,
    857 F. Supp. 2d 97 (D.D.C. 2012) .............................................................. 21, 26

*Sanders v. Molla*,
    985 A.2d 439 (D.C. 2009) ................................................................................ 30

*Steele Foundations, Inc. v. Clark Const. Grp., Inc.*,
    937 A.2d 148 (D.C. 2007) ........................................................................... 24, 25

*The Cuneo Law Grp., P.C. v. Joseph*,
    669 F. Supp. 2d 99 (D.D.C. 2009) ................................................................... 41

*Thompson v. Advanced Armament Corp.*,
    614 F. App'x 523 (2d Cir. 2015) ...................................................................... 43

*Trilon Plaza, Inc. v. Comptroller of State of New York*,
    788 A.2d 146 (D.C. 2001) ................................................................................ 24

*United States v. Bingert*,
    605 F. Supp. 3d 111 (D.D.C. 2022) ................................................................. 39

## **RULES**

Fed. R. Civ. P. 56 .............................................................................................................. 20

**INTRODUCTION**

This motion presents a straightforward contract question.  When Alexi was a startup, Fastcase granted the company a limited license to its proprietary caselaw data under a Data License Agreement with a narrow, defined scope of use.  That Agreement permitted the Alexi team to use the Fastcase data only for "internal research purposes."  The license explicitly prohibited use "for commercial purposes" or "for any purpose which is competitive with Fastcase," and separately barred Alexi from "sell[ing], licens[ing], publish[ing], copy[ing], or otherwise distribut[ing] any part of the Fastcase Data."  Declaration of Rebecca Nelson ("Nelson Decl."), Ex. K ("E. Walters Dep. Ex. 58") (Data License Agreement) (hereinafter, "Agreement") §§ 1.7, 2.2.

Those restrictions are not only explicit in the text of the Agreement, they reflected the undisputed commercial reality of Alexi's business and the single product it offered when the Agreement was signed—a human-authored legal memo.  Alexi's customers would submit legal research questions; Alexi's internal lawyers and researchers then conducted research, usually aided by internal technology; and Alexi prepared and returned a finished legal memorandum.  Alexi was resource-constrained and sought to license the Fastcase data for this sole purpose and product, and Fastcase agreed to license the data for this limited, internal use case at discounted startup pricing.

The undisputed facts show Alexi changed its business and product and unilaterally (but secretly) used the Fastcase data well outside the limited use case permitted by the Agreement.  Alexi now offers a subscription-based, customer-facing legal research platform powered by Fastcase data.  Despite the license limitations, Alexi openly claims that this new product is a competitor to traditional legal-research tools such as Fastcase.  Through the chat-interface functionality of Alexi's "Advanced Legal Reasoning" platform, users can ask legal research questions directly, receive real-time answers with caselaw citations, ask follow-up questions,

generate charts, arguments, letters, and contract clauses, and click links that open full text of U.S. cases for end users (not Alexi's researchers) within Alexi's own interface.  For U.S. cases, those linked opinions are Alexi-reproduced copies of cases Fastcase provided under the Agreement.

That use violates the Agreement in two independent ways.

*First*, Alexi's current use violates Section 1.7.  A customer-facing legal research platform is not "internal research."  Nor is Alexi's chatbot software limited to preparation of legal memos. Alexi uses Fastcase data to power a commercial subscription product that Alexi itself markets as legal research software and that competes with legal research platforms, including Fastcase.

*Second*, Alexi's current use violates Section 2.2.  Alexi has copied Fastcase caselaw into its own systems; maintained a separate repository of millions of Fastcase-provided cases for hosting and citation; displayed full-text opinions to customers through Alexi-hosted links; and allowed case links to be shared.  That is copying, publishing, and distribution of Fastcase data.

These are the basic, straightforward facts of Alexi's use of the Fastcase data, and they are not in dispute.  No amount of linguistic gymnastics by Alexi to characterize its legal research chatbot as merely generating "memos," or to argue that customer-facing research software is still technically occurring "internally" at Alexi, can change what the Agreement says or what the basic facts and Alexi's own documents show about Alexi's current product.  Fastcase granted a limited license to data for internal research supporting Alexi's then-existing memo service; it did not grant Alexi a license to transform that data feed into a customer-facing, subscription legal research platform that copies, hosts, displays, and distributes Fastcase caselaw.  The same undisputed breach also disposes of Alexi's contract-based counterclaims: because Alexi materially breached the Agreement and failed to cure, Fastcase had cause to terminate under Section 5.2, and Alexi cannot recover on claims that depend on Fastcase's termination being wrongful.  The Court should

grant summary judgment on Fastcase's breach-of-contract claim (Fastcase's claim one) and on Alexi's breach-of-contract, covenant of good faith and fair dealing, and tortious-interference claims as to vLex and Clio (Alexi's counterclaims one, two, and four).

**BACKGROUND**

## I.     FACTUAL BACKGROUND

### A.     The Parties and the Data License Agreement.

Fastcase is a legal publisher and legal-research technology company that provides an online legal-research system over a comprehensive federal and state database of primary law.  Counter-Defendants' Statement of Material Facts Not in Genuine Dispute in Support of their Motion for Partial Summary Judgment on the Breach of Contract Claim (hereinafter, "SMUF") ¶ 1.  It is a competitor to Westlaw and LexisNexis in the United States.  SMUF ¶ 328.  Fastcase has spent significant time and energy building a corpus of primary-law data and systems for ingesting and processing new primary-law information as it is published.  SMUF ¶ 2.  That corpus is central to Fastcase's commercial legal-research platform, which provides searchable access to caselaw, statutes, and regulations.  SMUF ¶ 3.

vLex, LLC is a legal technology, research, and content company.  In 2023, vLex merged with Fastcase, and Fastcase and vLex became part of the combined vLex Group ("vLex").  SMUF ¶ 4.  Themis Solutions, Inc. d/b/a Clio is a legal technology and software company.  SMUF ¶ 5.  On June 30, 2025, Clio signed a stock purchase agreement to acquire vLex and Fastcase, which remains a wholly owned Delaware corporation; that acquisition closed on November 5, 2025.  SMUF ¶ 6.

Alexi Technologies Inc. is a Canadian legal technology company incorporated in 2017.  SMUF ¶ 7.  Alexi was initially incorporated as "Alexsei" but rebranded as "Alexi" in 2023.  SMUF ¶ 8.  In 2021, when the parties entered into the Agreement, Alexi offered a single legal-research

memo writing service:  Alexi's customers would submit legal research questions, and Alexi's researchers would perform internal research, prepare a written research memorandum, and deliver that research in a self-contained memorandum document in response.  SMUF ¶ 9.

Alexi first contacted Fastcase about licensing U.S. caselaw in 2019.  SMUF ¶ 10. ███

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

  ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

  ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████

Fastcase and Alexi executed the Data License Agreement on December 6, 2021. SMUF ¶ 23. ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████

The Agreement identifies Fastcase as "a legal publishing company that provides an advanced online legal research system for research over a comprehensive multi-million dollar federal and state database of primary law." SMUF ¶ 25. It states that Alexi wished to license substantial portions of Fastcase's database of primary law "for [Alexi's] legal memos." SMUF ¶ 26. The Agreement defines "Fastcase Data" as "any data provided by Fastcase to [Alexi] pursuant to this Agreement." SMUF ¶ 27.

The Agreement defines the "Purpose" as "the limited purpose for which Alexsei may use the Fastcase Data, namely for internal research purposes." SMUF ¶ 28. It further provides: "In no event can the data be used for commercial purposes or for any purpose which is competitive with Fastcase." SMUF ¶ 29. Section 2.2 provides that Alexi "may not sell, license, publish, copy, or otherwise distribute any part of the Fastcase Data." SMUF ¶ 30. Section 5.2 permits termination for cause if, "after 30 days written notice," a party fails to cure a "material breach of any term or condition of this Agreement." SMUF ¶¶ 338–39.

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

-6-

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

**B.      Alexi's Original Product Was a Human-Reviewed Memo Service.**

███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

-6-

-7-

-8-

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

    ████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

**C.    Alexi Integrated Fastcase Data into PRS and Began Self-Hosting Fastcase Cases.**

    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████

    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

-9-

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████.[1]

**D.    Alexi Launched Customer-Facing AI Products that Used Fastcase Data.**

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[1] To be clear, that training in itself would not be a violation of the Agreement, provided that the resulting tool was used only internally by the Alexi team to perform research and to create memos for clients.  But that is not what Alexi did.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

**E.      Alexi Launched ALR as a Customer-Facing Chat-Based Subscription Legal-Research Platform.**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████████

-13-

-14-

-15-

**F.** **Fastcase Discovered Alexi's Breach and Terminated the Agreement.**

-17-

███████████████████████████████████████████████████████

████████████████████████████████████████

On October 27, 2025, Fastcase sent Alexi a Notice of Breach stating that Alexi had pivoted to a competitive legal research platform in violation of the Agreement. SMUF ¶ 342. Alexi responded with a letter disregarding the notice. It stated that Alexi did not intend to make any changes to its infringing uses, and it did not make any attempt to cure the breach identified in the notice within the 30 days provided in the Agreement. SMUF ¶ 343. Fastcase then terminated the Agreement for cause under Section 5.2 and brought this suit for breach of contract. SMUF ¶ 344. Alexi subsequently brought counterclaims alleging multiple theories of breach and tortious interference, as well as new claims of competitive harm. ECF No. 47 at 97–125; *see also* ECF No. 79 at 110–132.

## II.    PROCEDURAL BACKGROUND

This motion follows the expedited discovery process Alexi requested and the Court ordered. Alexi initially moved for a temporary restraining order and preliminary injunction. ECF No. 15-1. After the Court denied Alexi's request for a temporary restraining order but deferred ruling on the preliminary injunction, the parties proceeded under a limited preliminary-injunction discovery schedule. Alexi later withdrew its pending motion for a preliminary injunction, thereby vacating the scheduled preliminary-injunction hearing. ECF No. 55 at 1.

In lieu of further preliminary-injunction proceedings, Alexi asked the Court to order expedited discovery "to resolve liability over the dueling contract claims between Alexi and Plaintiff/Counterclaim Defendant Fastcase, Inc." *Id.* Alexi argued that good cause existed for expedited discovery for two reasons. First, Alexi asserted that the parties had "offered differing interpretations of the Data Licensing Agreement" and that "[r]esolving which party breached the Agreement is a pivotal threshold issue—for both sides—that could negate or narrow the remaining

issues and provide the basis for resolving the case without further judicial intervention." *Id.* at 2. Second, Alexi asserted that it faced a "longer-term threat of irreparable harm" if resolution of the contract dispute were delayed. *Id.*

Alexi attached to its motion a proposed "phased and expedited discovery" schedule. ECF No. 55-1. That proposed schedule defined the scope of the "Expedited Discovery Phase." *Id.* ¶ 1(a). For Fastcase's Complaint, party discovery would be limited to whether Alexi's use of Fastcase data was in breach of the Agreement (Count One). *Id.* ¶ 1(b). For Alexi's Counterclaims, party discovery was limited to liability on Alexi's breach-of-contract claim, implied-covenant claim, and tortious-interference-with-contract claim against vLex and Clio. *Id.* ¶ 1(c). The schedule expressly excluded "questions of damages," Alexi's antitrust counterclaim, Alexi's "remaining tortious interference with existing and prospective business relations claims," and Fastcase's trademark and trade-secret claims. *Id.* ¶ 1(d).

Alexi's proposal provided that the parties would submit cross-motions for partial summary judgment only "on any or all of the claims subject to this Expedited Discovery Phase as set forth in Paragraph 1." *Id.* ¶ 6(a). The schedule also confirmed that "[t]he terms of this expedited schedule and discovery plan are limited to the adjudication of the liability issues for the claims outlined in Paragraph 1" and would not prejudice discovery on other issues after the expedited phase. *Id.* ¶¶ 9(a)–(b). Alexi described the requested process as "phased, contract-focused discovery" and stated that the purpose of the expedited schedule was to resolve "the parties' competing claims of contractual breach." ECF No. 63 at 1, 3. Alexi further argued that the expedited phase should proceed without expert discovery because, in Alexi's view, "expert testimony is not needed to resolve a straightforward contract dispute." *Id.* at 2.

Fastcase opposed Alexi's motion and proposed a broader phased schedule that would have

included additional claims and expert discovery related to Alexi's systems, products, and uses of the Fastcase data.  ECF No. 62.  The Court granted Alexi's motion in a minute order and adopted Alexi's proposed schedule.  Minute Order, 1:25-CV-04159-RJL (Feb. 17, 2026).

The resulting summary-judgment briefing is therefore limited by the scope of the expedited phase that Alexi requested and the Court ordered.  For Fastcase, that means liability on Count One for breach of contract.  For Alexi, that means liability on the counterclaims identified in Paragraph 1(c) of Alexi's proposed schedule.  It does not include damages; Alexi's antitrust counterclaim; Alexi's tortious-interference counterclaims concerning existing and prospective business relations; or Fastcase's trademark and trade-secret claims.  *See* ECF No. 55-1 ¶¶ 1(d), 6(a), 9(a).  Issues outside that Court-ordered expedited phase are not properly before the Court on these motions.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is material only if it "might affect the outcome of the suit under the governing law," and it is genuine only if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Once the moving party has shown the absence of a genuine dispute, the nonmoving party must identify specific admissible evidence showing a triable issue; speculation, metaphysical doubt, or a merely colorable dispute is insufficient. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

The Agreement contains a choice-of-law provision stating that it "shall be governed by and construed in accordance with the laws of the District of Columbia."  Agreement § 12.5; SMUF ¶ 27.  District of Columbia law therefore governs the parties' contract-based claims.  Under D.C. law, a breach-of-contract claim requires "(1) a valid contract between the parties; (2) an obligation

or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (quotations omitted). Contract interpretation is a question of law when the contract is unambiguous. *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., Inc.*, 857 F. Supp. 2d 97, 102 (D.D.C. 2012).  In determining whether a contract is ambiguous, courts consider the contract as a whole and give effect to all its provisions.  A contract is not ambiguous merely because the parties dispute its meaning. *Id.*

The terms of the Agreement are clear in all respects material to this motion.  But even if the Court were to consider extrinsic evidence, that evidence confirms Fastcase's interpretation: the Agreement was negotiated, framed, and priced for internal research supporting Alexi's then-existing human-reviewed legal memo service, not for a customer-facing subscription legal-research platform that copies, hosts, and displays Fastcase caselaw.

## ARGUMENT

Fastcase is entitled to summary judgment on its breach-of-contract claim.  The Agreement is valid and undisputed.  It imposed clear duties and restrictions on Alexi:  Section 1.7 limited Alexi's use of Fastcase data to "internal research purposes" and prohibited any use "for commercial purposes" or "for any purpose which is competitive with Fastcase"; Section 2.2 separately prohibited Alexi from "sell[ing], licens[ing], publish[ing], copy[ing], or otherwise distribut[ing] any part of the Fastcase Data" without Fastcase's written consent.  Agreement §§ 1.7, 2.2; SMUF ¶¶ 28–30.

Alexi breached both provisions.  It breached Section 1.7 when it knowingly and without notice changed the way it was using Fastcase data, not for internal research supporting human review, but to power a customer-facing, subscription-based legal-research platform.  It separately breached Section 1.7 when it pivoted from a memo-writing service to a customer-facing legal-

-21-

research and chat service. ███████████████████-██████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. Those

uses are external, commercial, and competitive with Fastcase, all in breach of the Agreement.

Alexi also breached Section 2.2 by copying, publishing, and distributing Fastcase data, on

its own website, and to end users. ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Alexi had no

written consent from Fastcase to do so.

There is no material dispute of fact regarding Alexi's breaches of these plain contractual

restrictions. The relevant facts come from the Agreement, Alexi's own documents, Alexi's own

witnesses, and example outputs from Alexi's product. Nor can Alexi create a triable issue by

offering self-serving, after-the-fact arguments that its customer-facing AI legal research platform

merely produces "legal memos" in unlimited forms or that research is being done "internally" at

Alexi, because the consumer-facing software is controlled by the company. The Agreement's text

is not ambiguous about the limited use Alexi was allowed. Further, if the Court considers extrinsic

evidence on this point, that evidence confirms the same conclusion: Fastcase licensed its data for

Alexi's then-existing internal memo-support research team, not for a commercial legal-research

platform that copies, hosts, displays, and distributes Fastcase caselaw to end users. The Court

should therefore enter summary judgment in Fastcase's favor.

**I.     ALEXI BREACHED SECTION 1.7 BY USING FASTCASE DATA OUTSIDE THE AGREEMENT'S LIMITED PURPOSE.**

Section 1.7 defines the only purpose for which Alexi may use Fastcase data.  It provides: "'Purpose' means the limited purpose for which [Alexi] may use the Fastcase Data, namely for internal research purposes.  In no event can the data be used for commercial purposes or for any purpose which is competitive with Fastcase."   Agreement § 1.7; SMUF ¶ 28.   Section 2.2 reinforces that limitation, providing that Alexi "will not use the Fastcase Data at any time in a way which is inconsistent with the Purpose."  Agreement § 2.2; SMUF ¶ 30.  And Section 5.2 confirms the consequence of material breach:  if a party fails to cure after 30 days' written notice, the Agreement may be terminated for cause.  Agreement § 5.2; SMUF ¶¶ 340–41, 344.

Alexi's expected response does not create a material factual dispute.  In its counterclaims, Alexi alleges that Fastcase and its affiliates "manufactured" the breach claim as a "pretext" to terminate the Agreement after Clio allegedly sought to remove the Agreement's backfile purchase provision.  ECF 47 ¶¶ 93–103.  Alexi also alleges that Fastcase "was scrambling for a pretext to sue" and that Fastcase's real concern was the backfile provision, not Alexi's use of Fastcase data. *Id.* ¶¶ 111, 114.  Fastcase strongly disputes that narrative.  But even if the Court assumed it were true for purposes of this motion, it would not defeat summary judgment.  Under D.C. law, a material breach supplies cause to terminate even if the terminating party allegedly had other business reasons for invoking the termination right.  *CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1246–47 (D.C. 2024) (holding that the licensee's material breach gave the licensor "sufficient cause" to terminate and that the licensor had a "right to invoke the Title VII violation as cause to terminate the license agreement … even if that invocation was pretextual").  The relevant question is therefore not whether Alexi can point to record evidence supporting its pretext theory, or whether it can identify separate disputes about the backfile

provision. Even if Alexi could do both, *CorpCar* holds that pretext does not defeat a contractually authorized termination where the record establishes an unforced material breach. *See id.* at 1243 n.10 ("[A]llegations of 'pretext' [a]re 'irrelevant' to whether [a party] has cause to terminate."); *see also Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990) (Easterbrook, J.) ("Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.'"). The question is whether Alexi materially breached the Agreement and failed to cure after notice. If it did, Fastcase had cause to terminate under Section 5.2.

The operative provisions are plain and unambiguous. The Agreement permitted Alexi to use Fastcase data for internal research purposes. It did not permit Alexi to use Fastcase data externally in a customer-facing legal research product. It did not permit Alexi to use Fastcase data to power a commercial subscription service. And it did not permit Alexi to use Fastcase data for any purpose competitive with Fastcase. Those restrictions govern regardless of Alexi's allegations about Fastcase's supposed motives for enforcing them.

The Agreement's recitals confirm that narrow use case. Fastcase is identified as "a legal publishing company that provides an advanced online legal research system for research over a comprehensive multi-million dollar federal and state database of primary law." Agreement Recital 1; SMUF ¶ 25. Alexi, by contrast, was licensing Fastcase data for "Alexi's legal memos." Agreement Recital 3; SMUF ¶ 26. Under District of Columbia law, recitals may properly inform the Court's reading of the Agreement where, as here, they are consistent with the operative terms. *See Trilon Plaza, Inc. v. Comptroller of State of New York*, 788 A.2d 146, 151 (D.C. 2001). And the Agreement must be read as a whole, giving effect to all provisions. *See Steele Foundations,*

*Inc. v. Clark Const. Grp., Inc.*, 937 A.2d 148, 154 (D.C. 2007); *2200 M St. LLC v. Mackell*, 940 A.2d 143, 157 (D.C. 2007).

Read as a whole, the Agreement permitted a straightforward, limited use:  Alexi employees could use Fastcase data internally to support its legal memo service.  That limited use matched Alexi's product at the time.  ██████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████

Alexi's own later documents confirm that the bargain reflected the earlier, narrower use case.  ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████  That is the only real issue in this case. The Agreement was negotiated and priced before Alexi's pure-AI offerings existed; it was not a forward-looking license to use Fastcase data in any future customer-facing legal-research product Alexi might develop.

Alexi's current use is materially different.  To this day, Alexi uses Fastcase data in a customer-facing, subscription-based AI legal research platform.  ██████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████    That use

violates Section 1.7 in four independent ways: it is not "internal research"; it is not limited to

Alexi's "legal memos"; it is commercial, and it is competitive with Fastcase.

**A.      Alexi's Customer-Facing Legal Research Platform Is Not "Internal Research."**

The phrase "internal research purposes" has a plain meaning.  It means research conducted

by the Alexi team—not research conducted directly by Alexi's customers through a customer-

facing product.   Alexi's contrary interpretation would read "internal" out of the Agreement.

According to Alexi, any use of Fastcase data by Alexi's software would be "internal," even if the

software were a commercial legal research platform being used directly by Alexi's customers to

perform that research.  That is not a reasonable reading.  *See Carome v. Carome*, 293 A.3d 1122,

1127 (D.C. 2023) (under D.C. law, courts look to the "ordinary and accepted" meaning of terms

used in a contract) (quotations omitted); *see also Sabre Int'l Sec.*, 857 F. Supp. 2d at 102.  D.C.

law requires courts to give effect to all contract language and to avoid interpretations that render

terms meaningless.  *District of Columbia v. Young*, 39 A.3d 36, 40 (D.C. 2012); *Cap. City Mortg.*

*Corp. v. Habana Vill. Art & Folklore, Inc.*, 747 A.2d 564, 569 (D.C. 2000).

Alexi's original memo service exemplifies the internal-research model the Agreement

authorized.  ███████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████    And they could not

themselves use Alexi's system to conduct iterative research across Fastcase caselaw. The research process was performed by and remained within Alexi.

Alexi's ALR platform, introduced in early 2025, is different. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮

That is external, customer-facing legal research. To be sure, as with Alexi's original memo service, the user still poses the legal research question. But unlike the original memo service, the user now engages directly with ALR in an iterative research process, asking follow-up questions, refining inquiries, and conducting back-and-forth legal research without an Alexi researcher serving as the intermediary. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮

The record confirms that ALR is designed to facilitate the user's own legal research, not research conducted internally by Alexi. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ In the memo-based service contemplated when the Agreement was executed, Alexi personnel conducted the research internally and delivered a finished work product in a single, self-contained document. In ALR, by contrast, the platform is designed to help external end users conduct and refine their own research directly. If the research is being conducted by the customer through Alexi's platform, rather than by Alexi personnel within Alexi, it is not "internal research" within the meaning of Section 1.7.

Alexi has previously argued that its use remains "internal" because the software operations occur within Alexi's platform and that it should be allowed "programmatic access" under the Agreement. *See* Alexi's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 14-1 at 5-6, 11-12. But Section 1.7 does not say Alexi may use Fastcase data for any automated, programmatic, or software-mediated purpose. It says Alexi may use Fastcase data for "internal research purposes" only. Agreement § 1.7. Automation does not convert customer-facing and performed research into internal research. Nor does the presence of AI remove the "internal use" restriction from the Agreement. The line is whether Fastcase data is being used internally by Alexi to support its authorized memo service, or externally by customers through Alexi's commercial chat-interface research platform. Alexi knowingly crossed that line.

**B.    Alexi Uses Fastcase Data Well Beyond the Permitted Use in Legal Memos.**

The Agreement's recitals state that Fastcase was licensing data to Alexi to create the company's "legal memos." Agreement Recital 3; SMUF ¶ 26. That use case describes the product Alexi offered when the Agreement was signed and the purpose for which Fastcase agreed to license

its data at heavily discounted pricing.  SMUF ¶¶ 9, 18–22, 26, 33–34, 39–41.  Alexi's current chat-interface platform is not limited to that use.

A legal memo is a finished legal research work product. ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

ALR's chat interface is not confined to that format—indeed, it is an entirely different medium than a memorandum. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

The record confirms that ALR uses Fastcase data for outputs that are not memos. ██

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Those are not legal memos in any ordinary sense of that phrase.  *See Re'ese Adbarat Debre Selam Kidest Mariam Ethiopian Orthodox Tewahedo Church, Inc. v. Habte*, 300 A.3d 784, 797 (D.C. 2023) (courts will "'honor the plain, ordinary and usual meaning of the language and turn to extrinsic evidence only when faced with ambiguity, i.e., with terms that will bear more than one reasonable interpretation.'" (quoting *Sanders v. Molla*, 985 A.2d 439, 441–42 (D.C. 2009))).

Alexi's own documents and testimony confirm the distinction.  ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████

The point is not that ALR can never produce something resembling a memo.  It can.  ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████[2]  The Agreement did not give

---

[2] Alexi cannot avoid that conclusion by arguing, as it now does, that "memo" means virtually any written output.  ████████████████████████████████████████████

Alexi a license to use Fastcase data for any future product that might include legal analysis. It authorized use for a limited purpose: internal research supporting Alexi's legal memo service. Alexi's flexible, iterative, customer-facing legal-research platform far exceeds that purpose.

### C.    Alexi Uses Fastcase Data for Commercial Purposes.

██████████████████████████████████████████████████████████████████

████████████████████████    Alexi's current use violates that restriction as well.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████████████████████████████

---

██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████    That boundless, litigation-driven position is not a reasonable interpretation of the Agreement. Contract terms are interpreted according to ordinary meaning and the understanding of a reasonable person in the parties' position. *See Red Sage Ltd. P'ship v. Despa Deutsche Sparkassen Immobilien-Anlage-Gesellschaft MBH*, 254 F.3d 1120, 1132 (D.C. Cir. 2001); *Intercounty Const. Corp. v. District of Columbia*, 443 A.2d 29, 32 (D.C. 1982). A customer-facing legal-research chatbot is, plainly, not a "legal memo." Doble's post hoc interpretive efforts cannot rewrite the Agreement, manufacture ambiguity, or defeat summary judgment in the face of the Agreement's text, Alexi's own documents distinguishing its chat interface from memos, and the testimony of other Alexi witnesses. *See Johnson v. District of Columbia*, 947 F. Supp. 2d 123, 132–33 (D.D.C. 2013).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

No reasonable jury could find that using Fastcase data to power a paid, subscription-based legal research platform is not a commercial use. Alexi is monetizing Fastcase data as part of its customer-facing software product. That is conduct that Section 1.7 directly forbids.

**D.      Alexi Uses Fastcase Data for a Purpose Competitive with Fastcase.**

Section 1.7 also prohibits using Fastcase data "for any purpose which is competitive with Fastcase." Agreement § 1.7. This provision must be read in light of the Agreement's description of Fastcase as a legal publishing company that provides an advanced online legal-research system over a comprehensive database of primary law. Agreement Recital 1; SMUF ¶ 1. The competitive boundary is therefore clear: Alexi could not use Fastcase data to build or support a competing legal-research service.

Alexi now does exactly that—and says so in its own words. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ Together, these documents show that Alexi understood both sides of the problem:  its product had evolved into a competitive AI legal-research offering, while its Fastcase license remained an older, low-priced agreement negotiated for a materially different use case.

The product functionality matches that market positioning. ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████ That is core legal research functionality.

Alexi's internal documents confirm that Alexi understood the competitive implication.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Alexi's conduct is competitive in both market and functional terms.  It competes in the market because Alexi sells legal research software to lawyers and law firms.  It competes functionally because Alexi's platform performs legal research tasks that legal research platforms perform. █████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████

That is a breach of Section 1.7.  The Agreement did not allow Alexi to use Fastcase data to become an alternative to incumbent legal-research providers, and Alexi's own documents show it understood that its product and pricing posture had changed materially from the use case that supported the original license.  The Agreement allowed Alexi to use Fastcase data for internal research supporting legal memos.  Alexi's current use is external, commercial, competitive, and well beyond the preparation of legal memos.  Fastcase is therefore entitled to summary judgment that Alexi breached Section 1.7.[3]

## II.    ALEXI BREACHED SECTION 2.2 BY COPYING, PUBLISHING, AND DISTRIBUTING FASTCASE DATA.

Alexi also breached Section 2.2.  That provision imposes restrictions independent of Section 1.7's Purpose limitation.  It provides that Alexi "may not sell, license, publish, copy, or otherwise distribute any part of the Fastcase Data," and may not permit any employee or third party to do so, "without written consent from Fastcase."  Agreement § 2.2; SMUF ¶ 30.

---

[3] To be clear, Alexi is entitled to compete with Fastcase.  It may create external, direct-to-customer software, and it may create answers that do not look like memos.  But it is not permitted under its data license to use Fastcase's data for any of those purposes, and it is in breach of the Agreement as a matter of law.

That language is broad and unambiguous.  It does not only prohibit wholesale resale of the Fastcase database.  It prohibits Alexi from copying, publishing, or distributing "any part" of the Fastcase data.  Agreement § 2.2.  Alexi violated each of those restrictions.

### A.    Alexi Copied Fastcase Data.

Section 2.2 prohibits Alexi from "copy[ing] … any part of the Fastcase Data."  Agreement § 2.2.  Alexi did exactly that.

Alexi also copied Fastcase cases for hosting and user access.

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Alexi's own witnesses recognized that this copying and hosting required authorization from Fastcase. ████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████

Regardless, that testimony (while also notably disputed) does not avoid breach. Section 2.2 does not permit copying based on an internal belief, oral assurance, or permission supposedly "implicit" in correspondence. None of those amends Section 2.2. ████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ Alexi has identified no written consent authorizing it to copy Fastcase cases, host them in Alexi repositories, and make them available through Alexi's customer-facing legal-research platform. At most, Alexi's testimony confirms that Alexi understood it needed Fastcase's permission for that conduct. The Agreement required that permission to be written. It was not.

---

[4] Alexi has not produced chat messages corroborating any such testimony.

Those facts establish copying under any ordinary understanding of the word. Alexi received Fastcase data, reproduced it in Alexi systems, stored it in databases and repositories, and used those copies to support Alexi's products. Section 2.2 prohibits that copying except as otherwise authorized by the Agreement. And the Agreement did not authorize Alexi to create user-facing repositories and AI-system copies to power a commercial legal-research platform.[5]

### B.    Alexi Published Fastcase Data.

Section 2.2 also prohibits Alexi from "publish[ing] … any part of the Fastcase Data." Agreement § 2.2. Alexi breached that restriction by making full-text Fastcase cases available to users through Alexi's own platform.



---

[5] Doble's contrary testimony only underscores the absence of a genuine factual dispute. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This brand of attempting to create "disputes" cannot create a triable issue. ▮▮▮▮▮▮▮▮▮▮▮ it is copying within the ordinary meaning of Section 2.2 as a matter of law.

That is publication. Alexi is not merely citing cases in a memo. It is presenting the full text of Fastcase-provided opinions to users inside Alexi's own legal research interface. The fact that Alexi displays those cases through its own hosted links and viewing panes confirms that Alexi is making Fastcase data available to its users as part of Alexi's product.

Section 2.2 was not inserted into the Agreement to serve as a technicality. ███████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████ That security obligation makes sense only if Fastcase retained control over where and how its data could be copied, hosted, accessed, and disclosed. Fastcase operates a legal-research platform and licenses access to its caselaw data; protecting control over copies of that data is central to the value of the licensed materials. If licensees are free to create and host their own user-facing repositories of Fastcase data, the risk of scraping, redistribution, and unauthorized third-party use would increase, diminishing the value and marketability of Fastcase's licensed materials. Alexi did precisely what the Agreement forbids: it used Fastcase-provided caselaw to create its own user-facing access point to the same underlying materials and hosted separate copies of that content on Alexi systems. Section 2.2 forbids Alexi from publishing Fastcase data in that way.

### C.   Alexi Distributed Fastcase Data.

Section 2.2 also prohibits Alexi from "otherwise distribut[ing] any part of the Fastcase Data." Agreement § 2.2. The ordinary meaning of "distribute" includes delivering, disseminating, or making something available to others. And Section 2.2's phrasing—"sell, license, publish, copy, or otherwise distribute"—confirms that the distribution prohibition is not limited to sales, sublicenses, or formal publication. The word "otherwise," particularly when paired with the disjunctive "or," is commonly used to reach conduct beyond the specifically enumerated examples. *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 103 F.4th 45, 51 (D.C. Cir. 2024)

(explaining that "otherwise," when paired with "or," can indicate that a provision reaches beyond the listed examples and operates as a catch-all); *United States v. Bingert*, 605 F. Supp. 3d 111, 125 (D.D.C. 2022) (similar).  Thus, even apart from Alexi's copying and publication, Alexi breached Section 2.2 by making Fastcase data available to users and non-users through Alexi-hosted case links.



That is distribution.  Fastcase provided data to Alexi for a limited internal purpose.  Alexi then used that data to provide case access to Alexi users—and, through shareable links, even to non-users.  Section 2.2 does not permit Alexi to become a conduit for delivering Fastcase data to people outside the Agreement.

### D. Section 10 and Alexi's Removal of Fastcase Links Confirm the Practical Effect of Alexi's Copying and Distribution.

Section 10 of the Agreement confirms that Fastcase data was not to be surfaced externally through an Alexi-controlled legal-research interface.  That provision reinforces the Agreement's structure, which tied access to Fastcase data to internal purposes, not exposed to Alexi's customers as part of a user-facing legal-research platform.

Alexi's user-facing case viewer did not comply with that limitation. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

Alexi's later decision to stop linking to Fastcase confirms the same point. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Alexi was no longer helping users reach Fastcase's

platform, but instead was replacing Fastcase's platform as the place where users could access the

full text of Fastcase-provided caselaw.

*    *    *    *    *

For these reasons, Alexi breached Section 2.2 as a matter of law. The undisputed record

shows that Alexi copied Fastcase data into its own systems and repositories, published full-text

Fastcase cases to users through its own interface, and distributed access to those cases through

Alexi-hosted links. And it did so without Fastcase's written consent. Section 2.2 prohibits each

of those acts. Fastcase is therefore entitled to summary judgment that Alexi breached Section 2.2.

## III.    ALEXI'S CONTRACT-RELATED COUNTERCLAIMS FAIL AS A MATTER OF LAW.

The same undisputed facts that establish Fastcase's breach-of-contract claim also defeat

Alexi's contract-related counterclaims. Alexi's breach-of-contract, implied-covenant, and

tortious-interference counterclaims all rest on the premise that Fastcase wrongfully terminated or

ceased performance under the Agreement. That premise fails because Alexi materially breached

-40-

the Agreement, failed to cure after notice, and thereby gave Fastcase cause to terminate under Section 5.2.

### A. Alexi's Breach-of-Contract Counterclaim Fails Because Fastcase's Performance Was Excused and Termination Was Contractually Authorized.

Under District of Columbia law, a party that materially breaches a contract cannot recover based on the other party's subsequent nonperformance. *See The Cuneo Law Grp., P.C. v. Joseph*, 669 F. Supp. 2d 99, 125 (D.D.C. 2009) ("[T]he party that first breaches the contract may not recover for the subsequent failure of the other party to perform"), *aff'd sub nom.*, *Joseph v. Cuneo Law Grp., P.C.*, 428 F. App'x 6 (D.C. Cir. 2011); 14 Williston on Contracts § 43:5 (4th ed.) ("[T]he party first in default under a bilateral contract cannot recover for the subsequent failure of the other party to perform."). The rule follows from the "central principle of contract law that one party's material breach of an agreement allows the other party to stop performing under the agreement, or to put it another way, to terminate the agreement entirely." *Hto7, LLC v. Elevate, LLC*, 319 A.3d 368, 375–76 (D.C. 2024); *see also Noble Energy, Inc. v. Salazar*, 671 F.3d 1241, 1243 n.3 (D.C. Cir. 2012) ("Under the common law rule of discharge, one party's material breach of a contract will excuse the other party's performance.").

That rule disposes of Alexi's mirror-image contract claim. Alexi materially breached Sections 1.7 and 2.2 by using Fastcase data outside the Agreement's limited purpose and by copying, publishing, and distributing Fastcase data without written consent. Fastcase then provided written notice of breach and contractually mandated time to cure, Alexi failed to cure within the contractually required 30-day period, and Fastcase terminated for cause under Section 5.2. Agreement § 5.2; SMUF ¶¶ 340–44. Because Alexi's uncured breach excused Fastcase's continued performance and triggered Fastcase's contractual termination right, Alexi cannot recover on a counterclaim premised on Fastcase's refusal to continue performing the Agreement.

-41-

That conclusion is reinforced by *CorpCar Services Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235 (D.C. 2024). Alexi will likely argue that Fastcase's termination was pretextual because Fastcase (or vLex or Clio) had business reasons to want the Agreement terminated. Fastcase does not concede that assertion and strongly disputes it. But even accepting the premise for argument's sake, it does not defeat summary judgment in Fastcase's favor. In *CorpCar*, the D.C. Court of Appeals held that a licensor had cause to invoke a termination-for-cause provision based on the licensee's material breach, even though the licensee argued that the stated basis for termination was "pretextual" and that the licensor really wanted to appropriate the licensee's market position. *Id.* at 1246–47. The court explained that, absent evidence that the licensor induced the breach or interfered with the licensee's ability to perform, an "unforced" material breach supplied cause to terminate "even if that invocation was pretextual." *Id.* at 1247. The same principle applies here. Alexi materially breached Sections 1.7 and 2.2; Fastcase did not induce those breaches or prevent Alexi from complying with the Agreement; Fastcase provided the contractually required notice and opportunity to cure; and Alexi did not cure. Alexi is completely wrong about Fastcase's reasons, but whatever Alexi may say about Fastcase's motives, Fastcase had cause to terminate under Section 5.2 as a matter of law.

**B.      Alexi's Implied-Covenant Counterclaim Fails Because the Covenant Cannot Override Fastcase's Express Termination Rights.**

Alexi's implied-covenant claim fails for the same reason. Under D.C. law, the implied covenant of good faith and fair dealing cannot "contradict, modify, negate, or override the express terms of a contract." *Africare, Inc. v. Xerox Complete Document Sols. Md., LLC*, 436 F. Supp. 3d 17, 33 (D.D.C. 2020) (internal quotation marks omitted). Nor does a party breach the implied covenant by failing to do something it had no contractual obligation to do. *See Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014).

Once Alexi materially breached and failed to cure, Fastcase had no obligation to continue licensing data to Alexi. Section 5.2 expressly authorized termination for cause after 30 days' written notice and failure to cure. Agreement § 5.2; SMUF ¶ 339. The implied covenant cannot be used to rewrite that bargain, eliminate Fastcase's termination right, or require Fastcase to continue supplying data to a licensee that was using the data outside the Agreement's limited purpose. *See Africare*, 436 F. Supp. 3d at 38 n.16 (granting summary judgment on implied-covenant claim because it rested on the same facts and arguments as the dismissed breach-of-contract claim).

*CorpCar* confirms the point. There, the D.C. Court of Appeals rejected an implied-covenant theory based on alleged pretext because the licensor had cause to terminate and had not induced or interfered with the licensee's ability to perform. 325 A.3d at 1246–47. The court held that, "[a]bsent such purposeful sabotage, … a termination for cause cannot breach the implied covenant, even if motivated for reasons unrelated to cause." *Id.* at 1247 (quoting *Thompson v. Advanced Armament Corp.*, 614 F. App'x 523, 525 (2d Cir. 2015)). So too here. Fastcase did not sabotage Alexi's performance or force Alexi to breach. Alexi's own uncured breaches gave Fastcase cause to terminate. The implied covenant cannot convert that contractually authorized termination into breach.

**C.    Alexi's Tortious-Interference Counterclaim Fails Because Alexi Had No Valid Entitlement to Continued Performance After Its Uncured Breach.**

Alexi's tortious-interference claim against vLex and Clio likewise fails. To the extent Alexi asserts tortious interference with contract, D.C. law requires Alexi to prove "(1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach." *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. 2008) (internal quotation marks omitted). D.C. law

treats "a breach of contract [as] an essential element" of that tort. *Id.* (internal quotation marks omitted). Because Fastcase did not breach the Agreement by terminating for cause after Alexi's uncured material breach, Alexi cannot show that vLex or Clio procured any breach by Fastcase.

To the extent Alexi instead frames the claim as interference with a prospective business relationship or expectancy, that theory fails too. A tortious-interference claim under D.C. law requires, among other things, a valid contractual relationship or business expectancy, intentional interference, and resulting breach or termination of that relationship or expectancy. *See Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995). For a business expectancy, the expectancy must be commercially reasonable and more than speculative. *See Herron v. Fannie Mae*, 861 F.3d 160, 171–72 (D.C. Cir. 2017) (expectancy must be "commercially reasonable to anticipate" and must show "a probability of future contractual or economic relationship and not a mere possibility" (internal quotation marks omitted)); *Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 60 (D.D.C. 2012) ("[I]magined economic gain from a nonexistent business is nothing but speculation.").

Alexi cannot satisfy those elements. Its asserted expectancy depends on the assumption that Fastcase was obligated to continue performing the Agreement or renew or continue the relationship despite Alexi's own breach. But once Alexi materially breached and failed to cure, Fastcase had a contractual right to terminate for cause. SMUF ¶ 339. Alexi therefore had no valid entitlement or reasonable expectancy in continued access to Fastcase Data under the Agreement. And because Fastcase's termination was contractually authorized, Alexi cannot show that vLex or Clio procured a breach or otherwise interfered with a legally protected expectancy. At most, Alexi complains that vLex and Clio encouraged Fastcase to exercise a right the Agreement already gave it. That is not tortious interference.

Perhaps Alexi has pursued its contract-related counterclaims as a way of creating leverage for settlement of this case. But those counterclaims are without merit as a matter of law, and the Court should dismiss them in summary judgment.

## CONCLUSION

For the foregoing reasons, Fastcase respectfully requests that the Court grant its Motion for Partial Summary Judgment on Fastcase's breach-of-contract claim and on Alexi's contract-related counterclaims. The undisputed record establishes that Alexi materially breached Sections 1.7 and 2.2 of the Agreement by using Fastcase data outside the Agreement's limited purpose and by copying, publishing, and distributing Fastcase data without written consent, failed to cure after notice, and thereby gave Fastcase cause to terminate under Section 5.2. The Court should therefore enter summary judgment that Alexi breached the Agreement, that Fastcase properly terminated for cause, and that Alexi's breach-of-contract, implied-covenant, and tortious-interference counterclaims fail as a matter of law.

DATED: June 3, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Paul J. Sampson*
Paul N. Harold (D.C. Bar No. 1032578)
Brendan J. Coffman (D.C. Bar No. 988370)
1700 K Street NW, Fifth Floor
Washington, DC 20006-3814
Telephone: (202) 973-8800
PHarold@wsgr.com
BCoffman@wsgr.com

Jess M. Krannich (*pro hac vice*)
Paul J. Sampson (D.C. Bar No. 1010457)
Rebecca J. Nelson (*pro hac vice*)
Andrew P. Follett (*pro hac vice*)
Isabella Ang (*pro hac vice*)
95 S State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510
JKrannich@wsgr.com
PSampson@wsgr.com
RNelson@wsgr.com
AFollett@wsgr.com
IAng@wsgr.com

*Counsel for Plaintiff Fastcase Inc. and Counter-Defendants Fastcase Inc., vLex, LLC, and Themis Solutions Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2026, the foregoing was electronically filed through this

Court's CM/ECF system and additionally all counsel of record were served via electronic mail.


Respectfully submitted,

*/s/ Paul J. Sampson*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 S State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510
PSampson@wsgr.com

*Counsel for Plaintiff Fastcase Inc. and Counter-Defendants Fastcase Inc., vLex, LLC, and Themis Solutions Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FASTCASE, INC. | |
| Plaintiff, | C.A. No. 1:25-CV-04159-RJL |
| v. | Hon. Richard J. Leon |
| ALEXI TECHNOLOGIES INC. | **(REDACTED VERSION)** |
| Defendant. | |

ALEXI TECHNOLOGIES INC.

Counter-Plaintiff,

v.

FASTCASE, INC., VLEX, LLC and THEMIS
SOLUTIONS INC.

Counter-Defendants.

**COUNTER–DEFENDANTS' STATEMENT OF MATERIAL FACTS
NOT IN GENUINE DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT ON FASTCASE'S BREACH-OF-CONTRACT CLAIM AND
ALEXI'S CONTRACT-RELATED COUNTERCLAIMS**