**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FASTCASE, INC.<br><br>Plaintiff,<br><br>v.<br><br>ALEXI TECHNOLOGIES INC.<br><br>Defendant. | C.A. No. 1:25-CV-04159-RJL<br><br>Hon. Richard J. Leon |
| ALEXI TECHNOLOGIES INC.<br><br>Counter-Plaintiff,<br><br>v.<br><br>FASTCASE, INC., VLEX, LLC and THEMIS SOLUTIONS INC.<br><br>Counter-Defendants. | |

**DECLARATION OF CHRISTINA STEINBRECKER JACK IN SUPPORT OF COUNTER-DEFENDANTS' OPPOSITION TO ALEXI TECHNOLOGIES INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CONTRACT-RELATED COUNTERCLAIMS**

I, Christina Steinbrecker Jack, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I submit this declaration in support of Counter–Defendants Fastcase, Inc., vLex, LLC ("vLex"), and Themis Solutions Inc.'s ("Clio") (collectively, "Fastcase") Opposition to Defendant and Counter-Plaintiff Alexi Technologies Inc.'s ("Alexi") Motion for Partial Summary Judgment. I am over 18 years of age and make this declaration based on my personal knowledge. If called as a witness, I could and would testify competently to the facts set forth herein.

***Background and Role at Fastcase, vLex, and Clio***

2. I have worked at Fastcase, and subsequently vLex and now Clio, for approximately 17 years. During the period of contract negotiations with Alexi (2019–2021), I served as Fastcase's Vice President, Product and Content, and from 2021 until spring 2023, I served as

Fastcase's Chief Product Officer. After the Fastcase/vLex merger, I became vLex's Managing Director, vLex US. In this role, I was responsible for vLex's outbound sales efforts in the US, which included the 2025 outbound sales team described below. In my various roles, I have been responsible for, among other things, Fastcase's product strategy and have worked closely with its content, licensing, and sales teams.

***The State of AI Technology During the 2019–2021 Negotiations***

3. Although I was not the primary negotiator of Fastcase's Data Licensing Agreement ("Agreement") with Alexi, I was involved in the contract negotiation process, which spanned 2019–2021.

4. Throughout this 2019–2021 contract negotiation period, Alexi consistently described itself to our team as a legal memorandum-writing service. Alexi's stated concept was to combine human attorneys or researchers with technology that would assist in drafting legal research memoranda, which would then be delivered to lawyers. Alexi emphasized that the output of its system was legal memoranda. At no point did Alexi inform us that it intended to develop or launch an artificial intelligence ("AI") legal research platform or chatbot interface that end users would operate themselves.

5. Alexi did refer, in a general way, to using AI or machine-learning concepts to help speed up or improve the efficiency of its memo–writing process. Those references were high-level and somewhat vague, and they also predated the public availability of generative AI systems such as ChatGPT. At no point during the negotiations or related discussions did I hear Alexi describe—and I had never myself heard of at the time—autonomous "AI agents" or "agentic AI" systems that would independently perform legal research at the direction of Alexi's customers. Technology

of that kind was not part of our discussions and, to my understanding, was not even available at the time.

6. During contracting and throughout the majority of parties' relationship, I did not anticipate—nor did I have a basis to anticipate—that Alexi would use the Fastcase data to pivot from its memo product offering to powering an AI system, research platform, or chatbot interface that Alexi's customers would operate directly.

***Fastcase Did Not Authorize Alexi to Host or Display Fastcase Cases***

7. I understand Alexi has asserted that, before it began linking to and displaying the full-text of Fastcase cases, Mr. Doble purportedly obtained my permission to do so on a telephone call at some point in January 2022—shortly after the Agreement was executed. I do not recall any such communication, by telephone or otherwise, in which I told Mr. Doble, or anyone else at Alexi for that matter, that Fastcase had no objection to Alexi hosting or displaying the full text of Fastcase cases, or in which I otherwise gave Alexi permission to do so.

8. I have also seen no communications or documents memorializing any such purported permissions. In fact, I have only seen communications between Fastcase and Mr. Doble in June 2022 where Alexi requested from Fastcase access to its API, but was informed by the Fastcase team that API access would require increasing its licensing tier to the 50-state feed under the Agreement (and thus to pay more) in order to obtain API access, and Alexi declined such tier (and pricing) increase at that time. And, notably, at no point during those June 2022 discussions did Mr. Doble claim that I had nevertheless provided permission for Alexi to link to the Fastcase caselaw contrary to the Agreement or without paying or negotiating specific terms to do so.

9. The reason is because I would not have granted any such licensing permissions, including related to the display of Fastcase cases, in the fashion Mr. Doble claims. Giving such

permission, particularly to a for-profit data license partner and when such permission conflicted with the terms of the partner's licensing agreement, would have been contrary to Fastcase's practices and policies regarding licensed data and licensee entitlements.

10. A licensee's ability to link to, host, or display Fastcase content was governed by the terms of its license, and entitlements of that kind were addressed through the licensing process—not granted informally over the phone.

11. *At most*, I would have discussed with Mr. Doble whether and under what circumstances and terms such caselaw linking and display rights could be obtained through the licensing process. But I would not have granted those rights informally over a telephone call, and certainly not without any memorialization.

12. Overall, permitting a for-profit licensee—which was treated differently than Fastcase's subscribers—to host and display the full text of Fastcase cases to its own users would have been a departure from Fastcase's practices, and it is not something I would have authorized in the manner Alexi purports. I am also not aware of any instance where Alexi asserted that I had given them such permission to link or host the Fastcase licensed data until this litigation.

***vLex's 2025 Expansion into the Small–Firm Market and Discovery of Alexi's Shift***

13. During my time at Fastcase, I understood that different types of license issues were treated differently within the company. For example, administrative issues, such as late payment, were distinct from questions involving whether a licensee's use of the Fastcase data exceeded the scope of its license. The latter type of issue required review by Fastcase's legal team to assess whether a particular use constituted a breach of the applicable agreement. Consistent with that practice, I would not have viewed myself as authorized to make any formal determinations that a

licensee's use of Fastcase data complied with, or was permitted under, its license—including as it relates to Alexi's breach of the Agreement, which I discovered in approximately early May 2025.

14. Until approximately May 2025, I also did not view Alexi as a competitor of Fastcase. Until this time, I had consistently understood Alexi to be operating the same memorandum–writing service it had described during our contract negotiations.

15. In or around early 2025, however, vLex began expanding its outbound sales efforts to reach solo practitioners and small law firms—a segment that vLex had not previously targeted through any kind of direct outreach. As part of that effort, members of the newly hired outbound sales team who reported to me, and who were calling on solo and small–firm lawyers, reported hearing that Alexi was being described in the market as competitive to Fastcase and that Alexi's representatives were telling prospective customers that Alexi was "backed by the Fastcase database." Not only were these reports the first time we had encountered Alexi in the market, but these reports were also the first indication I received that Alexi was presenting itself as a legal-research provider in a manner inconsistent with the internal research, memo-focused use case Alexi had described, and contracted to support, during the 2019–2021 timeframe.

16. It was at this point that I then reviewed Alexi's website and marketing materials for myself, which described something akin to a self-service, user-facing legal-research platform, rather than the internal memo-writing service I had understood Alexi to operate. From there, the matter was escalated to the vLex legal team to assess Alexi's breach and determine appropriate next steps.

17. Notably, the content I viewed on Alexi's website regarding Alexi being a legal research provider was, at some point, later removed.

Docusign Envelope ID: 0088E3A3-70C4-84E8-827C-17033C8BFE2A


18. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on June 22, 2026 in Grafton, Wisconsin.

Signed by:

Christina Jack

E783A090ADCA4AA...

Christina Steinbrecker Jack