# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FASTCASE, INC.<br>Plaintiff,<br>v.<br>ALEXI TECHNOLOGIES INC.<br>Defendant. | C.A. No. 1:25-CV-04159-RJL<br>Hon. Richard J. Leon |
| ALEXI TECHNOLOGIES INC.<br>Counter-Plaintiff,<br>v.<br>FASTCASE, INC., VLEX, LLC and THEMIS SOLUTIONS INC.<br>Counter-Defendants. | |

**DECLARATION OF NIAMH POLLAK IN SUPPORT OF COUNTERCLAIM DEFENDANTS' OPPOSITION TO ALEXI'S MOTION TO COMPEL**

I, Niamh Pollak, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I submit this declaration in support of the Opposition filed by Counterclaim Defendants Fastcase, Inc. ("Fastcase"), vLex, LLC ("vLex"), and Themis Solutions Inc.'s ("Clio") to Defendant Alexi Technologies Inc.'s ("Alexi") Motion to Compel. I am over 18 years of age. I have personal knowledge of the facts stated in this declaration and could competently testify to them if called as a witness.

2. I am Clio's Vice President of Legal. I have worked at Clio for approximately six and a half years and have served as a member of Clio's executive team for nearly four years. In my current role, I oversee legal matters affecting Clio and participated substantially in Clio's

acquisition of the corporate group that included vLex and Fastcase, the parties' pre-closing integration planning, and legal matters arising during that process.

3. On June 30, 2025, Clio's acquisition subsidiary and the owners of Felix Spain Bidco, S.L., the parent company of vLex and Fastcase, entered into a binding Agreement for the Sale and Purchase of Felix Spain Bidco, S.L. (the "SPA"). Clio guaranteed the purchaser's obligations under the SPA. The acquisition closed on November 5, 2025.

4. Before the SPA was executed, I understood generally that vLex had identified a potential breach by Alexi of its Data Licensing Agreement with Fastcase (the "Agreement"). Before execution of the SPA, however, I did not receive or review any draft breach notice, counsel's analysis of Alexi's conduct, or details concerning the steps vLex was considering in response.

5. On or about August 26, 2025, Lluis Faus confidentially shared with me, Jack Newton, Clio's Chief Executive Officer, and Ronnie Gurion, Clio's President and Chief Operating Officer, a copy of the document bearing internal document number C2051288_SLACK00025271, which was a June 2025 draft notice of breach concerning Alexi. I had not previously seen that document, and I am not aware of anyone at Clio having received it before that date.

6. Jack, Ronnie, and I were included because we had responsibility for the legal and executive decisions implicated by the Alexi matter and the acquisition and integration of vLex and Fastcase. The document was provided on a limited, need-to-know basis so that Clio's and vLex's legal teams could coordinate legal advice concerning Fastcase's rights under the Agreement, the proposed breach notice, and the dispute and potential litigation expected to follow.

7. The draft was not provided to negotiate the SPA, establish or modify the acquisition price, persuade Clio to enter into the SPA, or allow Clio to decide whether to proceed with the

acquisition. The SPA had been executed nearly two months earlier. Nor did our discussion concern amending or renegotiating the SPA. Rather, the discussion concerned how Fastcase's contractual rights should be preserved and enforced and how Clio and vLex should prepare for Alexi's anticipated response.

8. At that time, I understood that Clio and vLex shared a legal and strategic interest, with respect to the Alexi matter, in preserving Fastcase's rights under the Agreement, issuing a legally supportable breach notice, and preparing for the resulting dispute. Although Clio and vLex remained separately represented parties to the acquisition before closing, I did not understand them to be adverse with respect to the anticipated dispute with Alexi.

9. I received the draft and related communications with the understanding that they were confidential and would not be disclosed outside the limited group involved in the legal effort. That understanding was based on the nature and purpose of the communications, the limited group of recipients, and the SPA's confidentiality provisions. I also understood that Sections 5.6 and 5.7 of the SPA contemplated the sharing of information needed to implement the transaction, including potentially privileged information, in a manner designed to preserve confidentiality and legal privilege, and that Sections 18.2 and 18.3 imposed strict and continuing confidentiality obligations on transaction-related information and information concerning claims.

10. In October 2025, I participated in additional confidential communications among a limited number of members of the Clio and vLex legal and executive teams concerning the notice of breach that Fastcase sent to Alexi on October 27, 2025. Those communications concerned legal advice regarding Alexi's breach, Fastcase's contractual rights, the contents and timing of the notice, and preparation for the dispute we anticipated would follow.

11. The August and October communications were limited to individuals who needed the information to provide legal advice or make decisions concerning the Alexi matter. I understood and expected that each participant would maintain the confidentiality of those communications and would not disclose them to Alexi or any other person adverse to Fastcase, vLex, or Clio.

12. Neither I nor anyone acting at my direction disclosed C2051288_SLACK00025271, the confidential communications concerning that draft, or the confidential October communications to Alexi or any other actual or potential adversary. I did not authorize anyone to make any such disclosure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 21, 2026 in Vancouver, British Columbia, Canada.

Signed by:
Niamh Pollak
2FF1E57F626041C...

Niamh Pollak