**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FASTCASE, INC.,

Plaintiff,

v.

ALEXI TECHNOLOGIES INC.,

Defendant.

ALEXI TECHNOLOGIES INC.

Counterclaim Plaintiff,

v.

FASTCASE, INC., VLEX, LLC, &
THEMIS SOLUTIONS INC.,

Counterclaim Defendants.

C.A. No. 1:25-CV-04159-RJL

**ALEXI'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL COUNTERCLAIM DEFENDANTS TO PRODUCE DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED**

## INTRODUCTION

As Alexi demonstrated in its motion (Dkt. 108), [redacted] vLex shared drafts of its breach letter with Clio at a time when the two were separate companies; [redacted] No privilege applies under these circumstances. Counterclaim Defendants' arguments as to why vLex did not waive any privilege it might have had over these documents should be rejected across the board.

***Attorney-client privilege does not apply***. vLex waived any attorney-client privilege that may have attached to the challenged documents. vLex shared four of the challenged documents with Clio without a common-interest agreement and when the parties were on opposite sides of the bargaining table with respect to the attempt to extinguish Alexi's contractual rights. At the time vLex shared the challenged documents with Clio, Clio's concern about the backfile remained unresolved, [redacted] Clio's opposition relies on caselaw involving the garden-variety common-interest fact pattern where two sets of plaintiffs have asserted similar claims against a common adversary. The opposite is true here: Clio could not have had ***any*** claim against Alexi at the time the

challenged documents were shared, as Clio was not a party to the Agreement and possessed a purely commercial interest in shoring up the value of the vLex/Fastcase "data moat" it was seeking to acquire. [redacted]

***No work-product privilege exists.*** vLex's assertion of work-product privilege for four of the challenged documents fails at the starting gate. The undisputed evidence shows that vLex would have drafted the breach letter regardless of whether it anticipated litigation against Alexi, [redacted] Because the breach letter at issue here would have been prepared irrespective of whether it resulted in litigation, the work-product privilege does not apply under well-settled law.

There are seven challenged documents at issue in this motion[1]:

| Doc. | Date | Logged Privilege | Shared with Clio? |
|---|---|---|---|
| CTRL0000000273 | 6/27/2025 | Attorney-Client; Work Product | No |
| CTRL0000000730 | 6/27/2025 | Attorney-Client; Work Product | No |
| CTRL0000000715 | 6/27/2025 | Attorney-Client | No |
| C2051288_SLACK00025271 | 8/26/2025 | Attorney-Client | Yes |
| C2051288_SLACK00025283 | 10/21/2025 | Attorney-Client | Yes |
| C2051288_SLACK00025281 | 10/21/2025 | Attorney-Client; Work Product | Yes |
| C2051288_SLACK00025282 | 10/21/2025 | Attorney-Client; Work Product | Yes |

[1] Alexi withdraws its motion as to CTRL0000000661, which Clio previously produced.

Neither the work-product privilege nor the attorney-client privilege shields any of these documents from discovery. Further, because vLex waived attorney-client privilege with respect to the four breach notice documents it shared with Clio, it waived attorney-client privilege with respect to all documents on that specific subject matter (i.e., vLex's breach notice to Alexi). Indeed, subject-matter waiver is particularly clear here: vLex shared with Clio the same draft breach notice that vLex circulated internally on June 27, 2025 (i.e., the first three documents in the chart above).

The Court should compel Counterclaim Defendants to produce these documents.

## ARGUMENT

### A. vLex waived attorney-client privilege by sharing the challenged documents with Clio despite the lack of any common-interest agreement between them

Counterclaim Defendants' assertion that the challenged documents are protected by the attorney-client privilege fails because vLex waived any attorney-client privilege that might have existed by sharing the documents with Clio. Counterclaim Defendants have not met their burden to show the existence of a common-interest agreement and, regardless, vLex and Clio did not have a common legal interest as it related to Alexi's contractual rights at the time the challenged documents were shared [redacted]

There is no dispute that vLex intentionally shared four draft breach letter documents with Clio when they were separate companies operating independently (i.e., before the November 5, 2025 "Closing Date"). Those documents are C2051288_SLACK00025271, C2051288_SLACK00025283, C2051288_SLACK00025281, and C2051288_SLACK00025282.

As an initial matter, Clio and vLex do not identify any actual common-interest agreement between them. "A written agreement is the most effective method of establishing the existence of

a joint defense agreement, although an oral agreement whose existence, terms and scope are proved by the party asserting it, may be enforceable as well." *Minebea Co. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005).

Here, Counterclaim Defendants' opposition did not identify any written common-interest agreement, nor did they produce any evidence of an oral common-interest agreement that proved its terms and scope. At most, they submitted declarations from Clio and vLex's in-house counsel saying they understood the shared breach letter materials would be kept confidential. Dkt. 112-2 ¶ 9; Dkt. 112-1 ¶ 12. But confidentiality is not the same thing as privilege, and an understanding that materials will be kept confidential does not establish a specific common interest ***agreement*** with respect to litigation against Alexi. *Evans v. Nat'l R.R. Passenger Corp.*, 2025 WL 3496416, at *3 (D.D.C. Dec. 5, 2025) ("[T]he 'mere impression' of one party that a common interest agreement existed is not sufficient." (quoting *Minebea*, 228 F.R.D. at 16 (citation modified)).

The lack of evidence showing any common-interest agreement between vLex and Clio relating to potential litigation against Alexi is sufficient, standing alone, to find waiver of the attorney-client privilege with respect to the challenged documents. *Evans*, 2025 WL 3496416, at *3 (rejecting common-interest privilege where "Evans has failed to produce evidence to support the existence of such an agreement"); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2485382, at *9 (N.D. Cal. June 8, 2017) ("[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception. Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." (quoting *In re Pa. Pictures Corp.,* 679 F.3d 1121, 1129 (9th Cir. 2012))).

Counterclaim Defendants' argument (at 9–10) that the SPA contained a confidentiality clause does not move the needle. The SPA's confidentiality provisions cited by Clio (Section 5.6 and 5.7, Dkt. 112-2 ¶ 8) say nothing about a common legal defense, much less a common legal defense against Alexi. Section 5.6 required vLex to provide Clio with business information necessary to close the transaction, not privileged information to execute a joint legal defense. Dkt. 98-18 at 8–9 (§5.6). And Section 5.7 says vLex is ***not*** obligated to provide Clio with attorney-client privileged information or attorney work product. *Id.* at 9 (§5.7) ("The obligations of the Sellers under subclause 5.6 . . . shall not extend to providing information . . . which is or may be subject to legal or professional privilege."). Those provisions do not create a common-interest agreement; to the contrary, they recognize that the exchange of privileged information between two "across the table" parties would result in a waiver.

Even "[i]f a joint defense agreement has been proved to exist and the scope of the agreement is clear, the party seeking to claim privilege still must demonstrate that the specific communications at issue were designed to facilitate a common legal interest; a business or commercial interest will not suffice." *Minebea*, 228 F.R.D. at 16. Here, the common-interest privilege does not apply because the parties were on opposite sides of the bargaining table in resolving Clio's purely commercial interest in negating Alexi's contractual rights and the backfile purchase option prior to the Closing Date.

Counterclaim Defendants' opposition largely ignores the undisputed record evidence showing that, until the Closing Date, Clio and vLex had an adversarial relationship as it related to resolving Clio's concern over Alexi's contractual rights. *See generally* Alexi Mot. (Dkt. 108) at 4-6. [redacted], Dkt. 97 ¶ 148 [redacted]

[redacted], *id.* ¶ 149. [redacted]

The idea that parties could have an identical legal interest in a provision which gives one party a unilateral option to make or break a deal is risible. [redacted]. *Id.* This unrebutted record shows beyond any dispute that, at the time the breach letter documents were shared, vLex and Clio were on opposite sides of the bargaining table as it related to Alexi and its contractual rights, [redacted] *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 337–38 (D. Del. 2020) (finding no common interest where the parties "were not engaged in legal strategy sessions but instead were negotiating a commercial transaction from the opposite sides of a bargaining table").[2]

Contrary to Counterclaim Defendants' argument (at 8), Alexi is not treating Clio and vLex as "categorically adverse until the moment of closing." Rather, they were adverse with

[2] Counterclaim Defendants' sole factual rebuttal to this overwhelming record evidence is the self-serving deposition testimony of their executives that Clio's concern over the Alexi backfile purchase option and the breach letter were "distinct workstreams" (at 4). [redacted] Alexi SMUF (Dkt. 97), ¶¶ 153-55. [redacted]

respect to specific issue of [redacted]

To be sure, the SPA may have created a common interest between Clio and vLex with respect to some issues—like enacting a joint strategy to clear antitrust review with the DOJ—that are not at issue in this motion. But that says nothing about whether they had a common legal defense against Alexi prior to the Closing Date. *Chabot v. Walgreens Boots All., Inc.*, 2020 WL 3410638, at *10 (M.D. Pa. June 11, 2020) (noting that parties to merger had common interest with respect to "how both recipient and sender can achieve FTC merger approval" but "[a]ny adversarial communications with these third parties relating to negotiations between themselves, or any subject other than FTC approval of the merger, IS NOT protected").

In a similar vein, the argument (at 8) that Clio was on the verge of acquiring vLex/Fastcase—and thus had a common interest in any "litigation exposure" affecting their value—proves too much. Courts have rejected the argument that "the common interest privilege covers any discussions between a company and a prospective purchaser of the company or the company's assets about litigation or potential litigation that could affect the company or the assets if the contemplated purchase were consummated." *10x Genomics*, 505 F. Supp. 3d at 338; *see id.* 339 n. 3 (collecting cases). Tellingly, Clio doesn't cite any contrary cases (or any cases at all) to support its argument that it had a common interest regarding any potential litigation that could affect vLex's business.

Moreover, the common-interest privilege "arises out of the need for a common [legal] defense, as opposed merely to a common problem." *Minebea*, 228 F.R.D. at 16. At the time the challenged documents were shared, Clio had no conceivable common legal defense with vLex/Fastcase as it related to the Alexi agreement, because Clio was not a party to that contract

and had no rights, obligations, or legal exposure under it. *In re United Mine Workers of Am. Employee Ben. Plans Litig.,* 159 F.R.D. 307, 314 (D.D.C. 1994) (common-interest analysis "is concerned with the relationship . . . at the time that the confidential information is disclosed"); *Chatbot*, 2020 WL 3410638, at *10 ("To apply, the common interest must be shared at the time of the communications' sharing."). At the relevant time, Clio simply could not have been a joint plaintiff or joint defendant with Fastcase in contract-related litigation against Alexi. *Parker v. John Moriarty & Assocs. of Virginia, LLC*, 332 F. Supp. 3d 220, 237 (D.D.C. 2018) ("Generally, a stranger to a contract may not bring a claim on the contract." (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008))). Clio's interest, instead, was purely commercial—protecting the value of the asset it was seeking to acquire.

Counterclaim Defendants repeatedly (at 2, 7 & 10) cite *Georgia v. United States Department of Justice*, for the proposition that legal interests need not be "entirely congruent" for the common-interest privilege to apply, 148 F.4th 724, 740 (D.C. Cir. 2025), but that case merely underscores why there is no common interest here. In that case, the DOJ and six private parties had all sued Georgia over its election law, in actions there were consolidated in a single proceeding. *Id.* at 739–41. The D.C. Circuit held that, where plaintiffs brought similar claims against a common adversary, "modest variations" in the asserted legal theories do not defeat the common-interest privilege. *Id.* at 740; *id.* (parties were "proceeding on overlapping issues against a common adversary" and "shared common interests in developing legal theories . . . where they both made the same claims" (citation modified)). In contrast, at the time the challenged documents were shared, Clio and vLex did not have similar legal claims against Alexi subject to "modest variations" like in *Georgia*. On the contrary, Clio had ***no*** conceivable

legal claim against Alexi whatsoever, as it was not a party to the contract and had no legal relationship with Alexi at all.[3]

Similarly, *United States v. Gulf Oil Corp.*, 760 F.2d 292 (Temp. Emer. Ct. App. 1985), is no help to Counterclaim Defendants: that case concerned whether the parties had waived work-product privilege, not attorney-client privilege. *Id.* at 295.[4] As *Gulf Oil* describes—and Counterclaim Defendants' opposition itself notes (at 6)—the work-product privilege, unlike the attorney-client privilege, may not be waived if attorney work product is confidentially shared with a third party even in the absence of a common-interest agreement. *Id.* Accordingly, the court's analysis in *Gulf Oil* as to whether the parties waived work-product privilege says nothing about whether the court would have found they waived the attorney-client privilege. Here, the challenged documents are not protected by the work product doctrine in the first place. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 580 (N.D. Cal. 2007) ("Of course, this more restrictive rule on waiver applies only to communications which constitute attorney work product

[3] Counterclaim Defendants' attempt (at 10) to distinguish *10x Genomics* on the grounds that the Third Circuit applies a different standard than the D.C. Circuit—requiring "identical" legal interests for the common-interest privilege to apply—is incorrect. The "identical interest" phrasing is common shorthand, but the "Third Circuit has not specifically adopted such a stringent approach," *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309–10 (D.N.J. 2008), and the *10x Genomics* court itself only required the parties to identify "*an* identical legal interest," 505 F. Supp. 3d at 338—not that the legal interests must be entirely congruent. There is simply no distinction between the common-interest standard applied by the D.C. Circuit and the Third Circuit.

[4] The Temporary Emergency Court of Appeals was a specialized federal court established in December 1971 to hear appeals in cases arising under the wage, energy, and price control programs of the Economic Stabilization Act. It was abolished in 1992, and its jurisdiction and its pending cases transferred to the U.S. Court of Appeals for the Federal Circuit. *See* Pub. L. 102–572, 106 Stat. 4506.

in the first instance.”). And vLex waived any attorney-client privilege by sharing the documents with Clio without a common interest agreement.

Because no common interest agreement existed between vLex and Clio at the time those documents were shared, any attorney-client privilege that may otherwise have existed within vLex has been waived and they should be produced in unredacted form.

**B. Work-product doctrine does not shield the challenged documents because they would have been prepared regardless of anticipated litigation and in some cases were shared with Clio**

Counterclaim Defendants’ argument (at 5–7) that the challenged documents are protected by the attorney work-product privilege fails because the breach letter documents would have been created regardless of whether they resulted in litigation against Alexi.

The work-product doctrine only applies if the documents at issue would only have been created ***because of*** anticipated litigation. *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010). Under the “because of” test, courts in this Circuit ask “whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.” *Id.*

Here, the challenged documents were not prepared or obtained because of the prospect of litigation. [redacted]

Accordingly, vLex would have sent drafts of the breach notice to Clio—and Clio would have obtained them—regardless of whether either party anticipated litigation at the time or whether that notice later resulted in litigation, [redacted] Counterclaim Defendants thus cannot meet the fundamental predicate for the work-product privilege to apply. *FTC v. Match Grp., Inc.*, 2024 WL 1509180, at *14 (D.D.C. Mar. 12, 2024) (“Where a document

would have been created 'in substantially similar form' regardless of the litigation . . . work product protection is not available." (citation modified)), *report and recommendation adopted*, 2025 WL 1734765 (D.D.C. June 23, 2025); *United States v. Adlman*, 134 F.3d 1194, 1203–04 (2d Cir. 1998) (work-product doctrine turns on whether the material "would have been prepared irrespective of the expected litigation" and does not apply if "substantially the same [document] would have been prepared in any event").

The only evidence Counterclaim Defendants offer in support of their work-product assertion is the declaration of vLex's in-house counsel, Octavia Radulescu, who simply repeated the top-line legal standard and said that the breach letter documents "would not have been prepared in substantially the same form absent the prospect of that dispute and litigation." Dkt. 112-1 ¶ 6. But that conclusory, self-serving statement falls far short. For example, Ms. Radulescu said nothing about how the "form" of the breach letter (which, again, vLex was contractually obligated to send regardless of whether it resulted in litigation) would have somehow changed based on anticipated litigation. *Match Group*, 2024 WL 1509180, at *17 ("[T]he party claiming work product protection must explain with reasonable particularity how the documents withheld as work product were prepared in their particular form because of the prospect of litigation or why they would have been prepared in a different form in the ordinary course of business." (citation modified)). If anything, Counterclaim Defendants' declarations just illustrate why the same breach letter would have been drafted and sent regardless of potential litigation: Clio's general counsel, Niamh Pollak, noted that the SPA "contemplated the sharing of information ***needed to implement the transaction***," Dkt. 112-2 ¶ 8 (emphasis added)—further highlighting that the breach letter was required by Clio to close the transaction and would have been drafted regardless of whether litigation was contemplated.

In short, work-product protection does not apply to any of the documents at issue in this motion. And in any event, on their privilege log, Counterclaim Defendants did not assert the work-product privilege—and instead only asserted attorney-client privilege—for three of the seven challenged documents (CTRL0000000715, C2051288_SLACK00025271, and C2051288_SLACK00025283). Work-product privilege has thus been waived with respect to those three documents, *see Banks v. Off. of Senate Sergeant-at-Arms*, 233 F.R.D. 1, 9 (D.D.C. 2005), and they should be produced because vLex waived the attorney-client privilege by sharing those documents with Clio for the reasons described below.

### C. vLex's disclosure of the breach letter drafts to Clio results in subject-matter waiver with respect to the prior breach drafts

Under settled law, vLex's voluntary disclosure of the draft breach notices to Clio waives attorney-client privilege with respect to all documents on that same subject matter. Mot. (Dkt. 109) at 10. Accordingly, the Court should compel Counterclaim Defendants to produce the three June 27, 2025, breach notice documents (CTRL0000000273, CTRL0000000730, CTRL0000000715) in addition to the later iterations that vLex shared with Clio prior to the Closing Date. Indeed, subject matter waiver here is especially clear: As Counterclaim Defendants' own declarations show, vLex shared with Clio the same breach notice at issue in the three June 27, 2025, documents. Dkt. 112-1 ¶ 10.

Counterclaim Defendants' argument (at 11) that subject-matter waiver would not apply to attorney work product does not hold water because, for the reasons described earlier, those documents are not protected by the work-product privilege in the first place.[5] Nor does Federal

[5] With respect to the June 27, 2025, internal vLex documents, Counterclaim Defendants did not assert work-product privilege for CTRL0000000715 on their privilege log, so the work product argument does not apply to that document.

Rule of Evidence 502(a) help Counterclaim Defendants. Under that rule, subject-matter waiver applies if privilege was intentionally waived, the documents "concern the same subject matter," and they "ought in fairness to be considered together." *Trs. of Elec. Workers Loc. No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc.*, 266 F.R.D. 1, 11 (D.D.C. 2010). All those factors are met here. vLex intentionally shared the breach letter documents with Clio—this is not a case involving an inadvertent disclosure to a third party—and all seven documents plainly concern the same subject matter. And the breach letter correspondence "ought in fairness to be considered together," as they will show the evolution of vLex's breach notice—especially since vLex shared the June breach notice with Clio and thus did not maintain the strict attorney-client confidentiality necessary for the attorney-client privilege to apply with respect to the earlier iterations.

## CONCLUSION

The Court should compel Counterclaim Defendants to produce the documents cited above.

Dated: July 28, 2026

By: */s/ Johanna Rae Hudgens*
Johanna Rae Hudgens (*pro hac vice*)
WINSTON TAYLOR LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Fax: (212) 294-4700
johanna.hudgens@winstontaylor.com

Benjamin L. Rudofsky (DC Bar No. 1029844)
Allie A. Dodd (*pro hac vice*)
Melissa A. Iannuzzi (*pro hac vice*)
WINSTON TAYLOR LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 282-5017
Fax: (202) 282-5100
ben.rudofsky@winstontaylor.com

allie.dodd@winstontaylor.com
melissa.iannuzzi@winstontaylor.com

Joshua Hafenbrack (D.C. Bar No. 1017128)
HAFENBRACK LAW
818 18th St. NW
Suite 810
Washington, DC 20006
jhafenbrack@hafenbracklaw.com

*Counsel for Defendant Counterclaim-Plaintiff Alexi Technologies Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 28th day of July 2026, a copy of the foregoing Alexi Technologies Inc.'s Reply to Counterclaim Defendants' Opposition to Alexi's Motion to Compel was filed electronically with the Clerk of Court, using the CM/ECF system, which sent notification of the filing to counsel of record in this case.

*/s/ Johanna Rae Hudgens*
Johanna Rae Hudgens (pro hac vice)